UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| IN RE: WESTERN STATES WHOLESALE NATURAL GAS ANTITRUST LITIGATION, _____ <br><br> LEARJET, INC., et al., <br><br>         Plaintiffs, <br><br> v. <br><br> ONEOK, INC., et al., <br><br>         Defendants. _____ | 2:06-CV-0233-PMP-PAL <br><br><br> 2:03-CV-1431-PMP-PAL <br> BASE FILE <br><br> <u>ORDER</u> |

Presently before the Court is Defendant CenterPoint Energy Inc.'s Motion to Dismiss and Memorandum of Points and Authorities in Support (2:03-CV-1431-PMP-PAL, Doc. #429), filed on September 29, 2006. On November 14, 2006, Plaintiffs filed a Response to Defendants'[1] Motions to Dismiss for Lack of Personal Jurisdiction (2:06-CV-0233-PMP-PAL, Doc. #70). Defendants filed a Reply (2:03-CV-0233-PMP-PAL, Doc. #450) on December 22, 2006.

**I.    BACKGROUND**

This case is one of many in consolidated Multi District Litigation arising out of the energy crisis of 2000-2001. During that time, the national energy and natural gas

---

[1] Four different Defendants filed motions to dismiss for lack of personal jurisdiction in this case raising similar issues and making similar arguments. Plaintiffs filed a consolidated response addressing all four motions to dismiss based on personal jurisdiction. The moving Defendants subsequently filed a joint Reply.

markets became mutually dysfunctional, and, feeding off each other spiraled into a nationwide energy crisis. Amendments to Blanket Sales Certificates, 105 F.E.R.C. ¶ 61,217, at ¶ 12 (2003). The Federal Energy Regulatory Commission ("FERC") undertook a fact finding investigation of the market crisis in which it concluded, "spot gas prices rose to extraordinary levels, facilitating the unprecedented price increase in the electricity market." Id. FERC found the dysfunctions in the natural gas market stemmed from efforts to manipulate price indices compiled by private trade publications, including reporting of false data and wash trading.[2] Id.

Plaintiffs originally filed the above action in the District Court of Wyandotte County, Kansas. (Notice of Removal, Am. Compl. [2:06-CV-0233-PMP-PAL, Doc. #1].) Defendants removed the case to the United States District Court for the District of Kansas. (Id.) The Judicial Panel on Multidistrict Litigation entered a Transfer Order pursuant to 28 U.S.C. § 1407 centralizing the foregoing action in this Court for coordinated or consolidated pretrial proceedings. (Letter dated June 14, 2006 [2:06-CV-0233-PMP-PAL, Doc. #41-1].)

In this litigation, Plaintiffs seek to recover damages on behalf of natural gas rate payers. In the First Amended Complaint, Plaintiffs allege Defendants conspired to engage in anti-competitive activities with the intent to manipulate and artificially increase the price of natural gas for consumers. (Am. Compl. at 30-32.) Specifically, Plaintiffs allege Defendants knowingly delivered false reports concerning trade information and engaged in wash trades, which conduct violated Kansas Statutes Annotated § 50-101, et. seq ("Kansas antitrust statutes"). (Id.)

///

---

[2] A "wash trade" is a prearranged offsetting trade of the same product between the same parties, which involves no net change in ownership and no economic risk. Such trades create a false price for use in indices. Amendments to Blanket Sales Certificate, 105 F.E.R.C. ¶ 61,217, ¶ 38, ¶ 53.

1  Plaintiff Learjet, Inc. ("Learjet") is a Delaware corporation with its principal
2 place of business in Wichita, Kansas. (Id. at 3.) Plaintiff Cross Oil Refining & Marketing,
3 Inc. ("Cross Oil") is a Delaware corporation with offices located in Kansas. (Id.) Plaintiff
4 Topeka Unified School District 501 ("Topeka"), is a local government unit, organized
5 under the laws of the State of Kansas with its headquarters in Kansas. (Id. at 4.) Plaintiffs
6 allege they purchased natural gas directly from one or more Defendants, and from other
7 natural gas sellers in the State of Kansas, during the years 2000-2002. (Id. at 3-4.)
8  According to the Amended Complaint, Defendant CenterPoint Energy, Inc.
9 ("CenterPoint") is a Texas corporation in good standing with its principal place of business
10 in Houston, Texas. (Id. at 22.) Plaintiffs allege that as part of a corporate restructuring of
11 former Reliant Energy, Inc. (former "REI") in January 2002, CenterPoint became the parent
12 of Defendant Reliant Energy Services, Inc. ("RES") and Reliant Resources, Inc ("RRI").
13 (Id.) Plaintiffs aver that Centerpoint wholly controls and dominates RES and is therefore
14 liable for RES's illegal acts. In addition, Plaintiffs allege Centerpoint, through its affiliates,
15 "buys and sells natural gas, including its own or its affiliates' production, in the United
16 States and in the State of Kansas." (Id.)
17  Under Federal Rule of Civil Procedure 12(b)(2), CenterPoint moves to dismiss
18 for lack of personal jurisdiction because Plaintiffs' allegations are insufficient, incorrect,
19 and are based on a misunderstanding of the relationship between CenterPoint and RES and
20 REI. In support of its motion to dismiss, CenterPoint filed a Declaration of Richard B.
21 Dauphin, Assistant Corporate Secretary and Senior Counsel of CenterPoint. Dauphin's
22 Declaration states that former REI was separated into two independent publicly traded
23 companies, CenterPoint and RRI, in September 2002. (CenterPoint Energy Inc.'s Mot. to
24 Dismiss & Memo. of Points & Authorities in Support, Ex. A, Decl. of Richard Dauphin
25 ["Dauphin Decl."], at 1.) Dauphin states that CenterPoint became the holding company of
26 virtually all the Public Utility Commission-regulated utility subsidiaries of former REI.

(Id.)

Dauphin states that in April 2004, RRI changed its name to Reliant Energy, Inc. ("New REI"). Id. Dauphin also states "CenterPoint has no corporate relationship with, or ownership interest in RES, its parent New REI, or any of New REI's direct or indirect subsidiaries." (Id. at 2.) In addition, Dauphin declares that CenterPoint is a public utility holding company and therefore has no operations of its own; has never conducted any business in Kansas; has never bought, sold, or traded natural gas or reported natural gas prices; does not have any offices, employees, telephone listings or mailing addresses in Kansas; has never paid taxes to or owned any real property in Kansas; does not have, and has never been required to have, a resident agent in Kansas; and has never held board or shareholder meetings in Kansas. (Id. at 2-3.) Consequently, CenterPoint argues the Court should dismiss it for lack of personal jurisdiction because it is not liable for Defendant RES's alleged illegal acts, Plaintiffs failed to allege CenterPoint participated in a conspiracy with the other Defendants, and exercising jurisdiction would violate due process.

## II.    DISCUSSION

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006). To meet this burden, a plaintiff must demonstrate that personal jurisdiction over a defendant is permitted under the applicable state's long-arm statute and that the exercise of jurisdiction over the defendant does not violate federal due process. Id.

Under the Kansas long-arm statute, "[a]ny person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person and, if an individual, the individual's personal representative, to the jurisdiction of the courts of this state . . . ." Kan. Stat. Ann. § 60-308(b). Examples of enumerated acts include transacting business within

4

Kansas, committing a tortious act within Kansas, and owning, using, or possessing real estate in Kansas. Id. "The Kansas long arm statute . . . is liberally construed to assert personal jurisdiction over nonresident defendants to the full extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." In re Heston Corp., 870 P.2d 17, 25 (Kan. 1994).

To satisfy due process, a nonresident defendant must have "minimum contacts" with the forum state so that the assertion of jurisdiction does not offend traditional notions of fair play and substantial justice. Pebble Beach Co., 453 F.3d at 1155 (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 315 (1945)). A federal district court may exercise either general or specific personal jurisdiction. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984). For general jurisdiction to exist over a nonresident defendant, the defendant must engage in continuous and systematic contact with the state in which the forum is located. Id. at 415-16. A nonresident defendant's contacts with the forum state may permit the exercise of specific jurisdiction if: (1) the defendant has performed some act or transaction within the forum or purposefully availed himself of the privileges of conducting activities within the forum, (2) the plaintiff's claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction over the defendant is reasonable. Pebble Beach Co., 453 F.3d at 1155-56. "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 270 (9th Cir. 1995).

Under the three-prong test for establishing specific personal jurisdiction, the plaintiff bears the burden of satisfying the first two prongs of the test and if the plaintiff does so, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004) (quoting Burger King Corp. v. Rudzewicz, 471 U.S.

462, 476-78 (1985)). Where the issue is before the Court on a motion to dismiss based on affidavits and discovery materials without an evidentiary hearing, the plaintiff must make "a prima facie showing of facts supporting jurisdiction through its pleadings and affidavits to avoid dismissal."[3] Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1119 (9th Cir. 2002). The Court accepts as true any uncontroverted allegations in the Complaint and resolves any conflicts between the facts contained in the parties' evidence in the plaintiff's favor. Id. However, for personal jurisdiction purposes, a court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." Alexander v. Circus Circus Enter., 972 F.2d 261, 262 (9th Cir. 1992).

Plaintiffs' Amended Complaint alleges CenterPoint is a Texas corporation with its principal place of business in Houston, Texas that wholly controls and dominates RES and is responsible for RES's illegal acts in Kansas. It also alleges CenterPoint, through its affiliates, buys and sells natural gas, including its own or its affiliates' production, in the United States and in the State of Kansas.

Assuming without deciding that Plaintiffs' allegations in the Amended Complaint satisfy the Kansas long-arm statute, they do not satisfy the requirements of due process. Plaintiffs do not allege or present any evidence showing that CenterPoint itself had continuous and systematic contacts in the state of Kansas to satisfy the requirements of general jurisdiction. Further, Plaintiffs do not allege or present any evidence to show that

---

[3] The law in the Tenth Circuit is the same. See Behagen v. Amateur Basketball Ass'n of U.S.A., 744 F.2d 731, 733 (10th Cir. 1984) (explaining that a plaintiff need only make a prima facie showing and the court takes as true plaintiff's allegations only to the extent they are not contradicted by the defendant's affidavits); Richardson v. Fowler Envelope Co., 288 F. Supp. 2d 1215, 1219 (D. Kan. 2003) (stating that if a defendant challenges a plaintiff's jurisdictional allegations, the "plaintiff must support the jurisdictional allegations in a complaint by competent proof of the supporting facts"); Dodson Int'l Parts, Inc. v. Altendorf, 181 F. Supp. 2d 1248, 1254 (D. Kan. 2001) (holding that the plaintiff did not meet its threshold burden of establishing personal jurisdiction where the plaintiff "failed to controvert defendants' affidavits other than by conclusory allegations in its complaint and briefs").

CenterPoint purposefully availed itself of the privilege of conducting activities in Kansas or that Plaintiffs' claims arise out of CenterPoint's contacts with Kansas.  However, even if Plaintiffs had made such allegations, in the face of contradictory evidence by CenterPoint, Plaintiffs could not rest on the allegations in the Amended Complaint to satisfy their burden to establish personal jurisdiction.

Instead of alleging facts to support either general or specific jurisdiction over CenterPoint based on CenterPoint's contacts with Kansas, Plaintiffs allege CenterPoint is subject to personal jurisdiction in Kansas under what appears to be an agency, alter-ego, or conspiracy theory based on RES's allegedly illegal activities within the forum.  However, because CenterPoint submitted evidence directly contradicting Plaintiffs' allegation that CenterPoint is RES's parent, and Plaintiffs did not submit any competing evidence, Plaintiffs have not met their burden to establish CenterPoint is subject to personal jurisdiction in Kansas.[4]  The Court may not assume the truth of Plaintiffs' allegations in the Amended Complaint when CenterPoint submitted evidence directly controverting such allegations.  Moreover, the Court only resolves factual conflicts in Plaintiffs' favor when the conflict is based on the parties' evidence.

Finally, while Plaintiffs have alleged other Defendants in this action entered into a conspiracy to affect natural gas prices, and that those Defendants are subject to personal jurisdiction in Kansas based upon the activities of co-conspirators, Plaintiffs have made no allegations that CenterPoint entered into a conspiracy and therefore CenterPoint is not subject to personal jurisdiction in Kansas based on a conspiracy theory.[5]

---

[4] In fact, Plaintiffs' response to Defendants' motion to dismiss acknowledges that "Plaintiffs have no facts at this early stage to contradict . . . [Dauphin's] Declaration."  (Pls.' Response to Defs.' Mots. to Dismiss for Lack of Personal Jurisdiction [2:06-CV-0233-PMP-PAL, Doc. #70], at 13.)

[5] Because Plaintiffs did not allege CenterPoint entered into a conspiracy, the Court need not rule on the viability of the conspiracy theory of personal jurisdiction at this time.

Accordingly, Plaintiffs have not met their burden by making a prima facie showing of facts supporting jurisdiction through their pleadings or supporting evidence. Dismissal of CenterPoint for lack of personal jurisdiction therefore is appropriate.

**IV.     CONCLUSION**

IT IS THEREFORE ORDERED that Defendant CenterPoint Energy Inc.'s Motion to Dismiss and Memorandum of Points and Authorities in Support (2:03-CV-1431-PMP-PAL, Doc. #429) is hereby GRANTED.  Plaintiffs' Amended Complaint is hereby dismissed without prejudice against Defendant CenterPoint Energy Inc. for lack of personal jurisdiction.

DATED:  August 3, 2007.

PHILIP M. PRO
United States District Judge