UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| IN RE: WESTERN STATES WHOLESALE NATURAL GAS ANTITRUST LITIGATION, | 2:06-CV-0233-PMP-PAL |
| LEARJET, INC., et al., Plaintiffs, | 2:03-CV-1431-PMP-PAL BASE FILE |
| v. | ORDER |
| ONEOK, INC., et al., Defendants. | |

Presently before the Court is Defendant CMS Energy Corporation's Motion to Dismiss for Lack of Personal Jurisdiction (2:06-CV-0233-PMP-PAL, Doc. #59), filed on September 29, 2006. On November 14, 2006, Plaintiffs filed a Response to Defendants'[1] Motions to Dismiss for Lack of Personal Jurisdiction (2:06-CV-0233-PMP-PAL, Doc. #70). Defendants filed a Reply (2:03-CV-1431-PMP-PAL, Doc. #450) on December 22, 2006.

**I.    BACKGROUND**

This case is one of many in consolidated Multi District Litigation arising out of the energy crisis of 2000-2001. Plaintiffs originally filed the above action in the District Court of Wyandotte County, Kansas. (Notice of Removal, Am. Compl. [2:06-CV-0233-

---

[1] Four different Defendants filed motions to dismiss for lack of personal jurisdiction in this case raising similar issues and making similar arguments. Plaintiffs filed a consolidated response addressing all four motions to dismiss based on personal jurisdiction. The moving Defendants subsequently filed a joint Reply.

PMP-PAL, Doc. #1].)  Defendants removed the case to the United States District Court for the District of Kansas.  (Id.)  The Judicial Panel on Multidistrict Litigation entered a Transfer Order pursuant to 28 U.S.C. § 1407 centralizing the foregoing action in this Court for coordinated or consolidated pretrial proceedings.  (Letter dated June 14, 2006 [2:06-CV-0233-PMP-PAL, Doc. #41-1].)

In this litigation, Plaintiffs seek to recover damages on behalf of natural gas rate payers.  In the First Amended Complaint, Plaintiffs allege Defendants engaged in anti-competitive activities with the intent to manipulate and artificially increase the price of natural gas for consumers.  (Am. Compl. at 30-32.)  Specifically, Plaintiffs allege Defendants knowingly delivered false reports concerning trade information and engaged in wash trades, which conduct violated Kansas Statutes Annotated § 50-101, et. seq ("Kansas antitrust statutes").  (Id.)

Plaintiff Learjet, Inc. ("Learjet") is a Delaware corporation with its principal place of business in Wichita, Kansas.  (Id. at 3.)  Plaintiff Cross Oil Refining & Marketing, Inc. ("Cross Oil") is a Delaware corporation with offices located in Kansas.  (Id.)  Plaintiff Topeka Unified School District 501 ("Topeka"), is a local government unit, organized under the laws of the State of Kansas with its headquarters in Kansas.  (Id. at 4.)  Plaintiffs allege they purchased natural gas directly from one or more Defendants, and from other natural gas sellers in the State of Kansas, during the years 2000-2002.  (Id. at 3-4.)

According to the Amended Complaint, Defendant CMS Energy Corporation ("CMS") is a Michigan corporation with its principle place of business in Jackson, Michigan.  (Id. at 19.)  Plaintiffs allege during the relevant time period in which CMS allegedly engaged in conspiratorial misconduct, CMS wholly controlled and dominated its subsidiaries CMS Marketing Services & Trading Company ("CMS Marketing") and CMS Field Services ("CMS Field").  (Id.)  Plaintiffs allege that CMS, directly and through affiliates, entered into a conspiracy which tended to prevent full and free competition or

which tended to advance or control the market prices of natural gas.  (Id.)  Plaintiffs allege Defendants' alleged conspiracy was "intended to have, and did have, a direct, substantial and reasonably foreseeable effect on United States commerce and on commerce in the State of Kansas."  (Id.)  Plaintiffs allege CMS's officers or directors made, in furtherance of the conspiracy,

> strategic marketing policies and decisions concerning natural gas and the reporting of natural gas trade information to reporting firms for use in the calculation of natural gas price indices that affected the market prices of natural gas which was sold, and those policies and decisions were implemented on an operational level by affiliates, such as CMS Marketing Services & Trading Company and CMS Field Services, in the United States and in the State of Kansas.

(Id. at 20.)

According to the Amended Complaint, CMS is subject to personal jurisdiction in Kansas "based upon the activities of its corporate affiliates, in particular CMS Marketing, Services & Trading Company and CMS Field Services, that traded and sold natural gas in the United States and in the State of Kansas during the relevant period."  (Id.)  Plaintiffs also allege that in November, 2003, CMS, CMS Marketing and CMS Field paid $16 million in civil penalties to the United States Commodity Futures Trading Commission "to settle charges of false reporting and attempted manipulation of natural gas prices."  (Id.)

Under Federal Rule of Civil Procedure 12(b)(2), Defendant CMS[2] moves to dismiss for lack of personal jurisdiction because it has not had any contacts with the State of Kansas to support either general or specific jurisdiction under federal due process.  CMS also argues it cannot be subjected to personal jurisdiction in Kansas under an alter ego theory, agency theory, or conspiracy theory of personal jurisdiction.  In support of its Motion, CMS submitted a Declaration of Michael VanHemert ("VanHemert"), CMS's Corporate Secretary.

---

[2] Defendants CMS Marketing (now called CMS Energy Resources Management) and CMS Field do not contest personal jurisdiction in this case.

In his Declaration, VanHemert states that CMS is a holding company and does not have any daily operations of its own. (Def. CMS Energy Corp.'s Mot. to Dismiss for Lack of Personal Jurisdiction, Decl. of Michael VanHemert ["VanHemert Decl."], at 2.) VanHemert states that CMS's subsidiaries, CMS Marketing and CMS Field, are separate business entities that operate independently from CMS and that CMS is not involved in, and did not control, the day-to-day operations of either subsidiary. (Id. at 3-5.) In addition, VanHemert states both subsidiaries adhere to separate corporate formalities, were not undercapitalized, maintained separate bank accounts, maintained separate books and records, and conducted operations that were substantially separate from CMS. (Id.)

VanHemert also states that while its subsidiaries engaged in activities relating to natural gas trading and reporting, CMS itself conducts no business in Kansas; has never been qualified to do business in Kansas; has never aimed or targeted activities toward Kansas; has never maintained a registered agent in Kansas; and has never had an office, mailing address, telephone number, bank account, or real or personal property in Kansas. (Id.) VanHemert further states that CMS has never employed anyone in Kansas; has never paid taxes in Kansas; and has never manufactured products, performed services, or made sales in Kansas. (Id.) Regarding natural gas transactions, VanHemert declares that CMS does not, and did not during the relevant time period, engage in natural gas trading, production, sales, distribution, or transportation anywhere, including the State of Kansas. (Id.) In addition, VanHemert states CMS has never reported or published natural gas price or volume information to any trade publication anywhere, including Kansas. (Id. at 3.)

Plaintiffs respond that they have met their prima facie burden under the Kansas long-arm statute because the Amended Complaint alleges CMS's affiliates transacted business in Kansas in furtherance of a conspiracy to which CMS was a party. In addition, Plaintiffs contend the Kansas long-arm statute covers tortious conduct occurring outside of Kansas that causes injury in Kansas and that CMS's antitrust violations constitute a tort.

Moreover, Plaintiffs argue CMS is subject to jurisdiction in Kansas under the conspiracy theory of jurisdiction. Plaintiffs did not present any evidence to support their jurisdictional allegations in the Amended Complaint.

**II.     DISCUSSION**

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006). To meet this burden, a plaintiff must demonstrate that personal jurisdiction over a defendant is (1) permitted under the applicable state's long-arm statute and (2) that the exercise of jurisdiction does not violate federal due process. Id. In diversity cases such as this, "a federal court applies the personal jurisdiction rules of the forum state provided the exercise of jurisdiction comports with due process." Scott v. Breeland, 792 F.2d 925 (9th Cir. 1986). However, "federal law is controlling on the issue of due process under the United States Constitution." Data Disc, Inc. v. Sys. Tech. Assoc., Inc., 557 F.2d 1280, 1286 n.3 (9th Cir. 1977). Therefore, the Court will apply Kansas law in deciding whether personal jurisdiction is appropriate under the Kansas long-arm statute and the Court will apply Ninth Circuit law in deciding whether jurisdiction is appropriate under the due process clause. See In re Korean Air Lines Disaster of Sept. 1, 1983, 829 F.2d 1171, 1174 (D.C. Cir. 1987) (concluding that "the transferee court [should] be free to decide a federal claim in the manner it views as correct without deferring to the interpretation of the transferor circuit."); Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir. 1993) (holding that "a transferee federal court should apply its interpretations of federal law, not the constructions of federal law of the transferor circuit").

Under the Kansas long-arm statute, "[a]ny person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person and, if an individual, the

individual's personal representative, to the jurisdiction of the courts of this state . . . ." Kan. Stat. Ann. § 60-308(b).  Examples of enumerated acts include transacting business within Kansas, committing a tortious act within Kansas, and owning, using, or possessing real estate in Kansas.  Id.  "The Kansas long arm statute . . . is liberally construed to assert personal jurisdiction over nonresident defendants to the full extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution."  In re Heston Corp., 870 P.2d 17, 25 (Kan. 1994).

To satisfy due process, a nonresident defendant must have "minimum contacts" with the forum state so that the assertion of jurisdiction does not offend traditional notions of fair play and substantial justice.  Pebble Beach Co., 453 F.3d at 1155 (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 315 (1945)).  A federal district court may exercise either general or specific personal jurisdiction.  See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984).  Because Plaintiffs do not contend general jurisdiction applies, the Court will determine whether specific jurisdiction is appropriate in this case.

A nonresident defendant's contacts with the forum state may permit the exercise of specific jurisdiction if: (1) the defendant has performed some act or transaction within the forum or purposefully availed himself of the privileges of conducting activities within the forum, (2) the plaintiff's claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction over the defendant is reasonable.  Pebble Beach Co., 453 F.3d at 1155-56.  "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law."  Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 270 (9th Cir. 1995).

Under the first prong of the "minimum contacts test," the plaintiff must establish either that the defendant "(1) purposefully availed himself of the privilege of conducting his activities in the forum, or (2) purposefully directed his activities toward the forum."  Pebble Beach, 453 F.3d at 1155.  "Evidence of availment is typically action taking place in the

forum that invokes the benefits and protections of the laws in the forum." Id. Evidence of direction usually consists of conduct taking place outside the forum that the defendant directs at the forum. Id. at 1155-56.

The purposeful direction aspect of the first prong is satisfied when a foreign act is both aimed at and has effect in the forum. Id. In other words, the defendant "must have (1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state." Id. To satisfy the third element of this test, the plaintiff must establish the defendant's conduct was "expressly aimed" at the forum; a "mere foreseeable effect" in the forum state is insufficient. Id. The "express aiming" requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct "individually targeting a known forum resident." Bancroft & Masters, Ins. v. Augusta Nat. Inc., 223 F.3d 1082, 1087 (9th Cir. 2000).

The second prong of the specific jurisdiction test requiring that the contacts constituting purposeful availment or purposeful direction give rise to the current action, is measured in terms of "but for" causation. Id. at 1088. Under the last prong of the specific jurisdiction test, courts generally consider a variety of factors to determine whether exercising jurisdiction would be reasonable:

> (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.

Id. A court must balance all seven factors and no factor is determinative. Core-Vent Corp. v. Nobel Indus., 11 F.3d 1482, 1488 (9th Cir. 1993).

Where the issue is before the Court on a motion to dismiss based on affidavits and discovery materials without an evidentiary hearing, the plaintiff must make "a prima

7

facie showing of facts supporting jurisdiction through its pleadings and affidavits to avoid dismissal." Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1119 (9th Cir. 2002).  The Court accepts as true any uncontroverted allegations in the complaint and resolves any conflicts between the facts contained in the parties' evidence in the plaintiff's favor. Id.  However, for personal jurisdiction purposes, a court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." Alexander v. Circus Circus Enter., 972 F.2d 261, 262 (9th Cir. 1992).

### A. Transacting Business under Agency or Alter Ego Theory

Business is transacted within Kansas when a person is within or enters the state in person or by agent and deals with another within the state and thereby "effectuates or attempts to effectuate a purpose to improve his economic conditions and satisfy his desires." Volt Delta Resources, Inc. v. Devine, 740 P.2d 1089, 1092 (Kan. 1987). However, "mere ownership of all stock of a subsidiary will not, in and of itself, subject the parent corporation to the jurisdiction of the state where the subsidiary is doing business. The test is whether the local corporation's identity as a distinct corporate identity is observed." Farha v. Signal Companies, Inc., 532 P.2d 1330, 1337 (Kan. 1975) (citing Cannon Mfg. Co. v. Cudahy Co., 267 U.S. 333 (1925)). "[W]hen a corporation exercises such control and domination over its subsidiary that it no longer has a will, mind, or existence of its own, and operates merely as a department of the parent corporation, both corporations should be treated as a single economic entity." Id. at 1338; see also Snowden By & Through Victor v. Connaught Labs., Inc., 793 F. Supp. 1040, 1043 (D. Kan. 1992) (concluding that "the degree and direction of control exerted by one corporation over the other and the flow of benefits from the forum are all relevant in determining the nature of the relationship").

Under the alter ego theory, Kansas law will not extend the fiction of separate corporate identities where some fraud or injustice would result. Dean Operations, Inc. v.

One Seventy Assocs., 896 P.2d 1012, 1016 (Kan. 1995). "The ultimate test for imposing alter ego status is whether, from all of the facts and circumstances, it is apparent that the relationship between the parent and subsidiary is so intimate, the parent's control over the subsidiary is so dominating, and the business and assets of the two are so mingled that recognition of the subsidiary as a distinct entity would result in an injustice to third parties." Doughty v. CSX Transp., Inc., 905 P.2d 106, 111 (Kan. 1995).

In making this determination, Kansas courts weigh ten factors: (1) whether the parent corporation owns all or a majority of the capital stock of the subsidiary; (2) whether the corporations have common directors or officers; (3) whether the parent corporation finances the subsidiary; (4) whether the parent corporation subscribed to all of the capital stock of the subsidiary or otherwise caused its incorporation; (5) whether the subsidiary has grossly inadequate capital; (6) whether the parent corporation pays the salaries or expenses or losses of the subsidiary; (7) whether the subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation; (8) whether the parent corporation's papers and its officers' statements refer to the subsidiary as a department or division; (9) whether the subsidiaries' directors or executives do not act independently in the subsidiaries' interest but take direction from the parent corporation; and (10) whether the formal legal requirements of the subsidiary as a separate and independent corporation are not observed. Id.

Plaintiffs have not satisfied their burden of establishing personal jurisdiction over CMS based on an agency theory. Subjecting CMS to jurisdiction in Kansas based upon CMS Marketing or CMS Field's alleged business transactions in Kansas would be inappropriate because Plaintiffs have not sufficiently alleged or shown that CMS exercises such domination and control over its subsidiaries that they no longer have a will, mind, or existence of their own. The allegations in the Amended Complaint do not support, and VanHemert's Declaration directly controverts, Plaintiffs' conclusory allegations that CMS

"dominates and controls" its affiliates and that CMS "made strategic marketing policies and decisions concerning natural gas and the reporting of natural gas" which were "implemented on an operational level by affiliates." (Am. Compl. at 19-20.) VanHemert states:

> CMS . . . did not direct any affiliated company during the Relevant Time Period to engage in any of the conduct alleged in this action or participate in such conduct. CMS . . . did not control any affiliated company's day to day operational policies with respect to any of the conduct alleged in this action during the Relevant Time Period.

(VanHemert Decl. at 3.) VanHemert also states CMS was not involved in its subsidiaries' day-to-day operations, that each subsidiary's own management controlled its day-to-day operations, and that CMS only concerned itself with major policy issues related to its subsidiaries. (Id. at 3-5.) VanHemert further declares CMS's control over its subsidiaries was "no greater than would be expected by a parent holding company." (Id.) Plaintiffs did not offer any evidence to contradict VanHemert's Declaration. Consequently, in light of VanHemert's Declaration, Plaintiffs allegations in the Amended Complaint, without more, do not establish CMS is subject to jurisdiction in Kansas based upon its own or its affiliates' alleged contacts under an agency theory.

Further, Plaintiffs have failed to satisfy their burden under the alter ego theory of jurisdiction. Plaintiffs made no attempt to allege facts supporting jurisdiction under the ten-factor test and have not shown that CMS's relationship with its subsidiaries is so intimate and dominating, and that the business and assets of CMS and its subsidiaries are so mingled, that recognition of CMS Marketing and CMS Field as separate entities would result in an injustice. However, even if Plaintiffs had made such allegations, VanHemert's Declaration would contradict them. VanHemert states that CMS's subsidiaries functioned in all respects and were treated as separate business entities from CMS. (Id.) VanHemert also states that CMS's subsidiaries maintained separate bank accounts and funds from CMS, were self-sustaining business entities, were not undercapitalized, adhered to separate

corporate formalities, and maintained separate corporate books and records.  (Id.)
Moreover, Plaintiffs failed to produce any competing evidence.  For all of these reasons,
Plaintiffs failed to meet their burden of establishing personal jurisdiction over CMS under
the alter ego theory.

### B. Tortious Act

The Kansas long-arm statute allows a plaintiff to bring suit in Kansas to recover for injuries occurring in Kansas that resulted from tortious conduct outside the state. Ling v. Jan's Liquors, 703 P.2d 731, 734 (Kan. 1985).  A plaintiff's injury may be either physical or economic.  Merriman v. Crompton Corp., 146 P.3d 162, 180 (Kan. 2006).   Under Kansas law, "a price-fixing conspiracy may be a tortious act under K.S.A. 60-308(b)(2)." Id. at 181.

In Merriman, the Kansas Supreme Court held that a Kansas plaintiff could sue a group of non-resident defendants in Kansas because the plaintiff paid an inflated price for tires purchased in Kansas as a result of an out-of-state price-fixing agreement between the defendants. Id. at 167.  The Kansas Supreme Court reasoned that a price-fixing conspiracy constituted tortious conduct under the Kansas long-arm statute and that at the time the defendants entered into the price-fixing conspiracy, they reasonably could have expected the conspiracy to reach Kansas consumers. Id. at 181, 187.

Plaintiffs allege CMS "entered into a combination and conspiracy between the defendants which tended to prevent full and free competition in the trading and sale of natural gas, or which tended to advance or control the market prices of natural gas." (Am. Compl. at 19.)  Plaintiffs allege Defendants' conspiracy injured them because they paid more for natural gas than they would have paid absent Defendants' conspiracy, were deprived of the benefit of full and free competition, and were deprived of the right to make risk management, resource allocation and other financial decisions in a full and free competitive market.  (Id. at 37-38.)  Based on Kansas law, CMS's participation in an

alleged conspiracy to advance or control prices and to report falsely gas trade information is a tortious act under Kan. Stat. Ann. § 60-308(b)(2).  Further, Kansas law permits Plaintiffs to bring suit in Kansas to recover for their injuries occurring in Kansas that resulted from an alleged antitrust conspiracy outside the state.

However, exercising specific jurisdiction over CMS based on the tortious act provision of the Kansas long-arm statute would violate due process.  Under the first prong of the specific jurisdiction test, Plaintiffs have not sufficiently alleged or shown that CMS purposefully availed itself of the privilege of conducting activities in Kansas.  Plaintiffs have failed to show CMS itself took actions inside Kansas invoking the benefits and protections of its laws.  However, even if Plaintiffs' had made such allegations, VanHemert's Declaration would contradict them.  Instead, Plaintiffs alleged CMS is subject to personal jurisdiction in Kansas based on its affiliates' activities within the forum.

Plaintiffs have also failed to satisfy the purposeful direction test because the "express aiming" prong requires Plaintiffs to allege CMS engaged in wrongful conduct targeted at a plaintiff whom CMS knows to be a resident of the forum state.  Plaintiffs did not make such an allegation.  Under Ninth Circuit law, Plaintiffs' broad allegations that CMS's actions "tended" to prevent free competition or tended to advance or control "the market prices of natural gas" do not satisfy the express aiming requirement.  Likewise, Plaintiffs' allegation that CMS's actions "were intended to have, and did have, a direct, substantial and reasonably foreseeable effect on United States commerce and on commerce in the State of Kansas" does not pass the express aiming requirement.  Broad allegations that CMS's participation in a conspiracy tended to affect market prices of natural gas generally and that it was reasonably foreseeable that such conspiracy would affect commerce throughout the United States and commerce in Kansas is insufficient to establish the express aiming necessary to satisfy the first prong of the specific jurisdiction test.  Consequently, because Plaintiffs have not met their burden of establishing the first prong of

the specific jurisdiction test, exercising jurisdiction under a tortious act theory would violate due process.

### C.  Conspiracy Theory

Plaintiffs also argue that they may use the conspiracy theory of personal jurisdiction as an alternative basis for establishing personal jurisdiction over CMS. Plaintiffs contend the Kansas Supreme Court expressly adopted the conspiracy theory in Merriman and that pursuant to the theory, where a co-conspirator commits a tort that has foreseeable consequences in Kansas, a defendant who is a participant in the conspiracy is also subject to personal jurisdiction in Kansas.  CMS responds that while Kansas may accept the conspiracy theory of jurisdiction, the Ninth Circuit rejects the conspiracy theory because it violates due process principles.  In addition, CMS argues Plaintiffs failed to produce any factual support for their conspiracy theory allegations.

Kansas law recognizes that "if one conspirator commits acts in Kansas in furtherance of the conspiracy and that conspirator falls under the act, jurisdiction can be obtained as to all conspirators."  Merriman, 146 P.3d at 181.  In Merriman, the Kansas Supreme Court concluded that because the alleged conspiracy resulted in alleged economic injury to the plaintiff in Kansas, jurisdiction over the defendants' tortious conduct could be based on the defendants' deliberate choice to enter into a conspiracy.  Id. at 187.  The policy behind the conspiracy theory is to allow a court "to assert jurisdiction over [those] whom jurisdiction would otherwise be lacking."  Id. at 182.  The Kansas Supreme Court has noted that "asymmetry would result if coconspirators are allowed to enjoy the benefits and protections of the forum state's laws without being subject to personal jurisdiction in that forum."  Id. at 186.

However, "[m]ere allegation of conspiracy, without some sort of prima facie factual showing of a conspiracy, cannot be the basis of personal jurisdiction of co-conspirators outside the territorial limits of the court."  Dodson Int'l Parts, Inc. v.

Altendorf, 181 F. Supp. 2d 1248, 1254 (D. Kan. 2001).  "[C]ourts faced with allegations of a conspiracy to commit a 'business tort' which has foreseeable consequences in the forum state [should] uphold jurisdiction unless the allegations of conspiracy are too conclusory, too unsupported to be given credence."  Prof'l Investors Life Ins. Co. v. Roussel, 445 F. Supp. 687, 696 (D. Kan. 1978).

Although the Ninth Circuit has not expressly accepted or rejected the conspiracy theory of personal jurisdiction, it rejected the conspiracy theory in the venue context, and federal district courts in the Ninth Circuit have rejected the theory as applied to personal jurisdiction.  Piedmont Label Co. v. Sun Garden Packing Co., 598 F.2d 491, 492 (9th Cir. 1979) (rejecting conspiracy theory of venue); Kipperman v. McCone, 422 F. Supp. 860, 873 n.14 (N.D. Cal. 1976) (finding that "personal jurisdiction over any non-resident individual must be premised upon forum-related acts personally committed by the individual" and that "imputed conduct is a connection too tenuous to warrant the exercise of personal jurisdiction"); Karsten Mfg. Corp. v. U.S. Golf Ass'n, 728 F. Supp. 1429, 1434 (D. Ariz. 1990) (same); see also Steinke v. Safeco Ins. Co. of Am., 270 F. Supp. 2d 1196, 1200 (D. Mont. 2003); Silver Valley Partners, LLC v. De Motte, 400 F. Supp. 2d 1262, 1268 (W.D. Wash. 2005).

Regardless of whether the Ninth Circuit would accept or reject the conspiracy theory of personal jurisdiction, for the same reason Plaintiffs failed to establish specific jurisdiction under a tortious act theory, Plaintiffs have failed to establish specific jurisdiction under a conspiracy theory.  Plaintiffs broad and conclusory allegations that CMS entered into a "combination and conspiracy" with the other Defendants in this action "which tended to advance or control the market prices of natural gas" or which "tended to prevent full and free competition" or which effected United States commerce or commerce in Kansas do not satisfy the express aiming requirement under the due process analysis.  Further, Plaintiffs' allegation that all of the Defendants in this action conspired to commit

unlawful acts that they could reasonably foresee would injure Plaintiffs and others in the State of Kansas is insufficient under the express aiming requirement. A "forseeable effect" in the forum state is inadequate to show the purposeful direction necessary to establish specific jurisdiction. The Ninth Circuit requires an allegation that CMS engaged in wrongful conduct, whether a conspiracy or some other conduct, that individually targets a known forum resident. Because Plaintiffs failed to make such an allegation, specific jurisdiction is lacking in this case and subjecting CMS to jurisdiction in Kansas under a conspiracy theory would violate due process. The Court therefore will grant Defendant CMS's motion to dismiss for lack of personal jurisdiction.

## III.  CONCLUSION

IT IS THEREFORE ORDERED that Defendant CMS Energy Corporation's Motion to Dismiss for Lack of Personal Jurisdiction (2:06-CV-0233-PMP-PAL, Doc. #59) is hereby GRANTED. Plaintiffs's Amended Complaint is hereby dismissed without prejudice against Defendant CMS Energy Corporation for lack of personal jurisdiction.

DATED: August 16, 2007.

　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　PHILIP M. PRO
　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge