1

2

3

4                          UNITED STATES DISTRICT COURT

5                                DISTRICT OF NEVADA

6                                      * * *

IN RE: WESTERN STATES                )        MDL 1566
7    WHOLESALE NATURAL GAS            )        2:03-CV-01431-PMP-PAL
ANTITRUST LITIGATION                 )        BASE FILE
8    _____ )
                                     )
9    ARANDELL CORP., et al.,         )
                                     )
                                     )        2:07-CV-01019-PMP-PAL
10                   Plaintiffs,     )
                                     )
11   v.                              )
                                     )
12   XCEL ENERGY, INC., et al.,      )        O R D E R
                                     )
13                   Defendants.     )
     _____ )

14

15          Presently before this Court are Defendants' Motion to Dismiss on Grounds of

16   Lack of Standing and the Filed Rate Doctrine (Doc. #653;[1] Doc. #114 in 2:07-CV-01019-

17   PMP-PAL) with supporting memorandum of law (Doc. #654), and Defendants' Motion for

18   Summary Judgment (Doc. #655; Doc. #116 in 2:07-CV-01019-PMP-PAL), filed on

19   September 10, 2007.  Plaintiffs filed an Opposition (Doc. #143 in 2:07-CV-01019-PMP-

20   PAL) with supporting declaration (Doc. #144 in 2:07-CV-01019-PMP-PAL) on October 26,

21   2007.  Plaintiffs also filed two declarations (Doc. #744 & Doc. #745) on November 9, 2007.

22   Defendants filed a Reply (Doc. #759; Doc. #162 in 2:07-CV-01019-PMP-PAL) on

23   November 27, 2007.

24   ///

25   ///

26   _____

[1] Document numbers refer to the base file, 2:03-CV-01431-PMP-PAL, unless otherwise noted.

Also before the Court is Plaintiffs' Motion for Leave to Amend Pleadings (Doc. #138 in 2:07-CV-01019-PMP-PAL) with supporting memorandum of law (Doc. #139 in 2:07-CV-01019-PMP-PAL), filed on October 26, 2007.  Defendants filed an Opposition (Doc. #757; Doc. #165 in 2:07-CV-01019-PMP-PAL) on November 27, 2007.  Plaintiffs filed a Reply (Doc. #788) with supporting declarations and exhibits (Doc. #789, Doc. #791) on December 11, 2007.  Defendants filed a Response to Plaintiffs' Reply Brief (Doc. #171 in 2:07-CV-01019-PMP-PAL) on December 26, 2007.

Also before the Court is Plaintiffs' Motion Pursuant to Federal Rule of Civil Procedure 56(f) (Doc. #140 in 2:07-CV-01019-PMP-PAL) with supporting memorandum of law and affidavit (Doc. #141, Doc. #142), filed on October 26, 2007.  Defendants filed an Opposition (Doc. #758; Doc. #166 in 2:07-CV-01019-PMP-PAL) on December November 27, 2007.  Plaintiffs filed a Reply (Doc. #792) on December 11, 2007.

I.      BACKGROUND

This case is one of many in consolidated Multidistrict Litigation arising out of the energy crisis of 2000-2001.  Plaintiffs originally filed this action in the Circuit Court, Dane County, Wisconsin.  (Notice of Removal [Doc. #2], Compl.)  Defendants removed the case to the United States District Court for the District of Wisconsin.  (Id.)  The Judicial Panel on Multidistrict Litigation entered a Transfer Order pursuant to 28 U.S.C. § 1407 centralizing the foregoing action in this Court for coordinated or consolidated pretrial proceedings.

Plaintiffs Arandell Corporation, Merrick's, Inc., Safety-Kleen Systems, Inc., and Sargento Foods, Inc. are Wisconsin corporations.  (Am. Compl. [Doc. #542] at 5-6.) According to the Amended Complaint, Defendants are natural gas companies that buy, sell, transport, and store natural gas, including their own and their affiliates' production, in the United States and in the State of Wisconsin.  (Id. at 6-55.)  In this litigation, Plaintiffs allege Defendants conspired to engage in anti-competitive activities with the intent to manipulate

and artificially increase the price of natural gas for consumers.  (Id.)  Specifically, Plaintiffs allege Defendants, directly and through their affiliates, conspired to manipulate the natural gas market by knowingly delivering false reports concerning trade information to trade indices and engaging in wash trades, which conduct violated Wisconsin Statutes ch. 133. (Id.)  The Amended Complaint asserts two causes of action.  Count one arises under Wisconsin Statutes § 133.14, which voids contracts to which an antitrust conspirator is a party and allows recovery of payments made pursuant to such a contract.  (Id.)  Count two seeks trebled actual damages under Wisconsin Statutes § 133.18 for Defendants' alleged antitrust violations.  (Id.)

Defendants Duke Energy Carolinas, LLC; Duke Energy Trading and Marketing, LLC; Reliant Energy, Inc.; CMS Energy Corporation; CMS Energy Resources Management Co. (formerly known as CMS Marketing Services & Trading Co.); Cantera Gas Company; ONEOK Inc.; Centerpoint Energy Inc.; Dynegy Inc.; Dynegy GP Inc.; and DMT Holdings, LP move to dismiss count one of Plaintiffs' Amended Complaint.  These Defendants argue Plaintiffs lack standing to assert a claim against them under Wisconsin Statute § 133.14 because the Amended Complaint does not allege any named Plaintiff purchased natural gas directly from any of these moving Defendants.

Defendants Coral Energy Resources, LP; Xcel Energy, Inc.; ePrime, Inc.; El Paso Marketing, LP (formerly known as El Paso Merchant Energy, LP); El Paso Corporation; ONEOK Energy Services Company, LP (formerly known as ONEOK Energy Marketing & Trading Company, LP); The Williams Companies; Williams Merchant Services Company, Inc.; and Williams Power Company, Inc. (formerly known as Williams Energy Marketing & trading Company) move for summary judgment on count one of the Amended Complaint.  These Defendants argue Plaintiffs lack standing to assert a claim against them under Wisconsin Statute § 133.14 because no named Plaintiff purchased natural gas directly from

*///*

any of these moving Defendants.[2]  The Defendants moving for summary judgment provide affidavits to the effect that the companies have searched their records and find no sales of natural gas to any named Plaintiff in this action.[3]

Plaintiffs respond that the Amended Complaint identifies at least one named Plaintiff, Safety-Kleen Systems, Inc., which has purchased natural gas directly from at least one named Defendant, Northern States Power Company.  Additionally, Plaintiffs request leave to amend to add another Plaintiff, Ladish Co., Inc., which purchased natural gas directly from at least one current Defendant, Reliant Energy Services, Inc., and a proposed new named Defendant, CenterPoint Energy Services, Inc.  Plaintiffs further argue that § 133.14 does not require a direct privity of contract relationship between a plaintiff and a defendant and indirect purchasers have standing to sue under § 133.14.  Plaintiffs also suggest that because they have named at least one Plaintiff who directly purchased natural gas from one Defendant, all Defendants are liable for their alleged co-conspirator's conduct.  Alternatively, Plaintiffs request the Court delay ruling on Defendants' motions until Plaintiffs have had an opportunity to conduct discovery regarding from which companies Plaintiffs and unnamed class members have purchased natural gas in Wisconsin.

## II.        MOTION TO DISMISS

Defendants Duke Energy Carolinas, LLC; Duke Energy Trading and Marketing, LLC; Reliant Energy, Inc.; CMS Energy Corporation; CMS Energy Resources Management

---

[2]  Plaintiff Safety-Kleen purchased natural gas directly from Defendant Northern States Power Company, and therefore Defendant Northern States Power Company does not join in the motions.

[3]  All moving Defendants also moved for judgment on count two of the Amended Complaint, but Defendants have withdrawn those arguments based on the United States Court of Appeals for the Ninth Circuit's decisions in E & J Gallo Winery v. Encana Corp., 503 F.3d 1027 (9th Cir. 2007); Sierra Pac. Res. v. El Paso Corp., Slip Copy, No. 05-15127, 2007 WL 2753048 (9th Cir. Sept. 21, 2007) (unpublished); and Texas-Ohio Energy, Inc. v. AEP Energy Serv., Inc., et al., Slip Copy, No. 05-15919, 2007 WL 2806331 (9th Cir. Sept. 24, 2007) (unpublished).

1    Co. (formerly known as CMS Marketing Services & Trading Co.); Cantera Gas Company;

2    ONEOK Inc.; Centerpoint Energy Inc.; Dynegy Inc.; Dynegy GP Inc.; and DMT Holdings,

3    LP contend Plaintiffs' Amended Complaint does not allege Plaintiffs purchased natural gas

4    directly from Defendants, and therefore dismissal of count one is appropriate because only

5    direct purchasers may recover under § 133.14.  Plaintiffs respond that the Amended

6    Complaint sufficiently alleges Plaintiffs purchased natural gas from Defendants, and, in any

7    event, Defendants' construction of § 133.14 is incorrect.

8            In considering a motion to dismiss, "[a]ll allegations and reasonable inferences

9    are taken as true, and the allegations are construed in the light most favorable to the non-

10   moving party, but conclusory allegations of law and unwarranted inferences are insufficient

11   to defeat a motion to dismiss."  Adams v. Johnson, 355 F.3d 1179, 1183 (9th Cir. 2004)

12   (internal citation omitted).  There is a strong presumption against dismissing an action for

13   failure to state a claim.  See Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir.

14   1997) (citation omitted).  The issue is not whether the plaintiff ultimately will prevail, but

15   whether he may offer evidence in support of his claims.  Id. (quoting Scheuer v. Rhodes,

16   416 U.S. 232, 236 (1974)).

17           The liberal rules of notice pleading set forth in the Federal Rules of Civil

18   Procedure do not require a plaintiff to set out in detail the facts supporting his claim.  See

19   Yamaguchi v. United States Dep't of the Air Force, 109 F.3d 1475, 1481 (9th Cir. 1997).

20   All the Rules require is a "short and plain statement" that adequately gives the defendant

21   "fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Id.

22   (citations and internal quotations omitted).  A claim is sufficient if it shows that the plaintiff

23   is entitled to any relief which the court can grant, even if the complaint asserts the wrong

24   legal theory or asks for improper relief.  See United States v. Howell, 318 F.2d 162, 166

25   (9th Cir. 1963).  However, the alleged facts "must be enough to raise a right to relief above

26   the speculative level."  Bell Atl. Corp. v. Twombly, --- U.S. ----, 127 S. Ct. 1955, 1965

(2007).  Facts must be sufficient to "nudge [the plaintiff's] claims across the line from conceivable to plausible."  Id. at 1974.

The Amended Complaint alleges Defendants are sellers of natural gas who, during the relevant time period, conspired to restrain trade relating to natural gas.  (Am. Compl. at ¶ 7.)  The Amended Complaint asserts Defendants' contracts for the sale of natural gas made while in the conspiracy and which are related to the conspiracy are void pursuant to Wis. Stat. § 133.14.  (Id.)  Plaintiffs further allege they are entitled to recover from Defendants the payments Plaintiffs made for natural gas to the full extent Defendants benefitted from those payments.  (Id. at ¶ 8.)  Moreover, Plaintiffs allege that while members of the conspiracy, Defendants:

> made agreements to sell natural gas which was purchased by one or more of the plaintiffs, and those agreements either directly or indirectly were the result of, grew out of or were connected with a violation of Wis. Stat. § 133.03.  Specifically, each of the defendants during the Relevant Time Period conspired to restrain trade or commerce relating to natural gas and they received or benefitted from the payments made by the plaintiffs pursuant to the plaintiffs' natural gas purchase agreements.

(Id. at ¶ 97.)

Taking all allegations and reasonable inferences therefrom as true, and construing the allegations in the light most favorable to Plaintiffs as the non-moving parties, Plaintiffs sufficiently have alleged they purchased natural gas from Defendants.  Plaintiffs need not allege in detail which Plaintiff purchased natural gas directly from which Defendant at this stage of the proceedings.  The Amended Complaint adequately gives Defendants fair notice of Plaintiffs' § 133.14 claim and the grounds upon which it rests.  Discovery will inform whether particular Plaintiffs purchased natural gas from particular Defendants, and the legal ramifications of such factual issues are better suited to summary judgment than a motion to dismiss.  Because Plaintiffs adequately pled their § 133.14 claim, the Court will deny Defendants' motion to dismiss, without prejudice to raise similar arguments on summary

judgment.

## III.        MOTION FOR SUMMARY JUDGMENT

Defendants Coral Energy Resources, LP; Xcel Energy, Inc.; ePrime, Inc.; El Paso Marketing, LP (formerly known as El Paso Merchant Energy, LP); El Paso Corporation; ONEOK Energy Services Company, LP (formerly known as ONEOK Energy Marketing & Trading Company, LP); The Williams Companies; Williams Merchant Services Company, Inc.; and Williams Power Company, Inc. (formerly known as Williams Energy Marketing & trading Company) move for summary judgment on count one of Plaintiffs' Amended Complaint.  Defendants provide affidavits from employees of each moving Defendant asserting they searched company records for sales between each Defendant and any named Plaintiffs and discovered no evidence of any such direct sales.  Defendants argue no genuine issue of material fact remains that no named Plaintiff purchased natural gas directly from any of the moving Defendants.  Defendants argue that under § 133.14, a plaintiff may recover payments only on a contract it had directly with a member of the alleged antitrust conspiracy.  Defendants argue that because no genuine issue of material fact remains that no named Plaintiff purchased natural gas directly from any moving Defendant, Plaintiffs lack standing to assert a § 133.14 claim against these moving Defendants.

Plaintiffs respond that Defendants' interpretation of § 133.14 misconstrues the statute and inappropriately narrows the statute's meaning.  Plaintiffs note that Defendants concede at least one named Plaintiff, Safety-Kleen Systems, Inc., purchased natural gas directly from at least one named Defendant, Northern States Power Company.  Plaintiffs contend that so long as they name at least one Plaintiff who purchased natural gas directly from at least one named Defendant, Plaintiffs have standing to recover under § 133.14. Plaintiffs further argue that pursuant to the conspiracy theory of liability and class representation principles, once one Plaintiff has standing as against one Defendant, Plaintiffs have standing to recover against all Defendants on a class wide basis.  Moreover,

1   Plaintiffs argue that even as indirect purchasers, they have standing to void Defendants'

2   contracts and recover from any Defendants that benefitted from Plaintiffs' payments on

3   related contracts to third party intermediaries, even if Plaintiffs and Defendants were not in

4   a direct contractual relationship.  Alternatively, Plaintiffs request the Court defer ruling on

5   summary judgment until Plaintiffs have conducted discovery aimed at uncovering from

6   which Defendants Plaintiffs purchased natural gas directly, either in Plaintiffs' own names

7   or through Plaintiffs' agents.

8           Summary judgment is appropriate if "the pleadings, depositions, answers to

9   interrogatories, and admissions on file, together with the affidavits, if any" demonstrate

10   "there is no genuine issue as to any material fact and . . . the moving party is entitled to a

11   judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The substantive law defines which

12   facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All

13   justifiable inferences must be viewed in the light most favorable to the non-moving party.

14   County of Tuolumne v. Sonora Cmty. Hosp., 236 F.3d 1148, 1154 (9th Cir. 2001).

15           The party moving for summary judgment bears the initial burden of showing the

16   absence of a genuine issue of material fact.  Fairbank v. Wunderman Cato Johnson, 212

17   F.3d 528, 531 (9th Cir. 2000).  The burden then shifts to the non-moving party to go beyond

18   the pleadings and set forth specific facts demonstrating there is a genuine issue for trial.  Id.;

19   Far Out Prods., Inc. v. Oskar, 247 F.3d 986, 997 (9th Cir. 2001).

20           In interpreting a state statute, a federal court applies the relevant state's rules of

21   statutory construction.  In re Lieberman, 245 F.3d 1090, 1092 (9th Cir. 2001).  Under

22   Wisconsin law, statutory construction is aimed at determining the legislative intent behind

23   the provision at issue.  State v. Whistleman, 633 N.W.2d 249, 252 (Wis. App. 2001).  In

24   making this determination, the Court begins with the statute's plain language, "taking into

25   consideration the context in which the provision under consideration is used."  Burbank

26   Grease Serv., LLC v. Sokolowski, 717 N.W.2d 781, 788 (Wis. 2006).  "Statutory language

is given its common, ordinary, and accepted meaning." Id. (quotation omitted).  If the statute's language is "clear on its face,"  that language controls, and the Court need not refer to extrinsic sources to determine legislative intent.  State v. Peters, 665 N.W.2d 171, 174 (Wis. 2003).  However, the Court may use extrinsic sources to confirm an interpretation based on the statute's plain language.  Burbank, 717 N.W.2d at 788.

If the statutory language is ambiguous, the Court may consider extrinsic sources, such as legislative history, to assist in interpreting the statute.  Id.  A statute is ambiguous "if it is capable of being understood by reasonably well-informed persons in either of two or more ways."  Cuellar v. Ford Motor Co., 723 N.W.2d 747, 753 (Wis. App. 2006).  When a statute is ambiguous, the Court consults the statute's scope, subject matter, and purpose to determine legislative intent.  Id.  In interpreting the statute, the Court must avoid absurd or unreasonable results, and should give effect to every word if possible.  Id.

Section 133.14 provides as follows:

> All contracts or agreements made by any person while a member of any combination or conspiracy prohibited by s. 133.03, and which contract or agreement is founded upon, is the result of, grows out of or is connected with any violation of such section, either directly or indirectly, shall be void and no recovery thereon or benefit therefrom may be had by or for such person.  Any payment made upon, under or pursuant to such contract or agreement to or for the benefit of any person may be recovered from any person who received or benefitted from such payment in an action by the party making any such payment or the heirs, personal representative or assigns of the party.

Section 133.03 makes illegal every contract, combination, or conspiracy in restraint of trade or commerce.  The statute's first sentence is plain and unambiguous.  Any contract made by a member of an illegal antitrust conspiracy which is connected to the antitrust conspiracy is void and the antitrust conspirator who is a party to that contract may not recover or benefit therefrom.  Section 133.14 therefore operates to void only contracts made by a member of the antitrust conspiracy, and as to a conspirator's contracts, it voids only those that are related, directly or indirectly, to the antitrust violation.

Section 133.14's second sentence also is unambiguous.  It permits the party making a payment "under or pursuant to such contract" to recover those payments.  The term "such contract" in the second sentence unambiguously refers to the antitrust conspirator's void contract as defined in the first sentence.  Consequently, the party seeking the recovery must have been a party to the void contract, or at least have made payments based on the contractual obligation set forth in the conspirator's contract.[4]  Further, § 133.14 unambiguously defines from whom the innocent contracting party may recover as "any person who received or benefitted from such payment."

Consequently, although Wisconsin permits indirect purchasers to recover actual damages and to treble those damages under § 133.18,[5] § 133.14 "is a different type of claim than the punitive-remedial claim [in the treble damages provision and] is limited to the return of what was paid by the injured party upon the illegal contract and that contract alone."  Open Pantry Food Marts of S.E. Wis., Inc. v. Falcone, 286 N.W.2d 149, 152 (Wis. App. 1979).  Plaintiffs' argument that as indirect purchasers they may void Defendants' contracts with intermediaries to whom Defendants sold natural gas which Plaintiffs then purchased from the intermediaries, and then recover directly from Defendants any payments Plaintiffs made to the intermediaries is therefore contrary to § 133.14's plain language.

Additionally, Wisconsin has not applied co-conspirator liability principles to § 133.14.  Although not directly addressing the question, the Wisconsin Supreme Court has

---

[4]  Conceivably, a person not a party to the contract with the antitrust conspirator could have made payments under the void contract on behalf of the innocent party to the void contract.  Plaintiffs make no such allegations here.

[5]  Section 133.18(1)(a) provides:
Except as provided under par. (b), any person injured, directly or indirectly, by reason of anything prohibited by this chapter may sue therefor and shall recover threefold the damages sustained by the person and the cost of the suit, including reasonable attorney fees.  Any recovery of treble damages shall, after trebling, be reduced by any payments actually recovered under s. 133.14 for the same injury.

discussed the nature of and differences between the treble damages provision and the refund

of contract payments provision.  In <u>City of Madison v. Hyland, Hall & Co.</u>, the Wisconsin

Supreme Court evaluated whether certain claims, defendants, and plaintiffs properly were

joined in a single action.  243 N.W.2d 422 (Wis. 1976).  In ruling that the plaintiffs properly

joined all defendants where the plaintiffs sought both treble damages and contract

payments, the Wisconsin Supreme Court stated:

> all of the defendants are jointly liable for treble damages under the
> claim for relief based on [the treble damages provision], and are
> properly joined as defendants.  Although [the provision] for the
> contract payments, would only concern the individual liability of
> particular defendants to particular plaintiffs, this does not affect the
> propriety of the joinder, for but one cause of action is stated in the
> complaint.

<u>Id.</u> at 431.  The Wisconsin Supreme Court thus recognized co-conspirator joint liability for

claims brought pursuant to the treble damages provision, but did not extend similar co-

conspirator joint liability under the contract repayment provision.  Further, the Wisconsin

Supreme Court indicated the plaintiffs and claims properly were joined "[e]ven though each

defendant is not equally affected under the recoupment of contract payments . . . ."  <u>Id.</u>  If

joint liability for co-conspirators applied to the contract repayment provision, all the

defendants would have been affected equally under the provision, as each would be liable

for the other's obligation to repay contract payments.

    The Wisconsin legislature has altered the provision providing for contract

payments since the Wisconsin Supreme Court issued <u>City of Madison</u>.  When the

Wisconsin Supreme Court considered the provision, it read as follows:

> All contracts or agreements made by any person while a member of
> any combination, conspiracy, trust or pool prohibited by s. 133.01 or
> 133.21, and which contract or agreement is founded upon, or is the
> result of, or grows out of, or is connected with, any violation of said
> sections, either directly or indirectly, shall be void and no recovery
> thereon or benefit therefrom shall be had by or for any such person.
> Any payments made upon, under or pursuant to such contract or
> agreement to or for the benefit of such person, may be recovered in an
> action by the party making any such payment, his heirs, personal

representatives or assigns; provided that suit for such recovery is
brought within 6 years after the making of said contract or agreement.

Wis. Stat. § 133.23 (1976).  In the 1979 legislative session, Wisconsin altered the section as it now reads in § 133.14.  The legislature made two alterations to the language regarding the recovery of contract payments.  First, it changed the scope of payments covered from payments made under the contract "to or for the benefit of such person," to payments made under the contract "to or for the benefit of any person."  Second, it added language delineating that payments could be recovered "from any person who received or benefitted from such payment."

The Wisconsin Supreme Court has not addressed whether these changes in the statutory language operate to extend co-conspirator liability under § 133.14 where it did not exist before.  Where a state has not addressed a particular issue, a federal court must use its best judgment to predict how the highest state court would resolve it "using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." Strother v. S. Cal. Permanente Med. Group, 79 F.3d 859, 865 (9th Cir. 1996) (quotation omitted); Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc., 306 F.3d 806, 812 (9th Cir. 2002).  In making that prediction, federal courts look to existing state law without predicting potential changes in that law. Orkin v. Taylor, 487 F.3d 734, 741 (9th Cir. 2007).  Although federal courts should not predict changes in a state's law, they "are not precluded from affording relief simply because neither the state Supreme Court nor the state legislature has enunciated a clear rule governing a particular type of controversy." Air-Sea Forwarders, Inc. v. Air Asia Co., Ltd., 880 F.2d 176, 186 (9th Cir. 1989) (quotation omitted).

The Court concludes Wisconsin would not extend co-conspirator liability to § 133.14 claims as a general matter.  The statute's plain language sets forth from whom recovery under the provision may be had: "any person who received or benefitted from

such payment."  Nothing in the statutory text supports the conclusion that Wisconsin departed from its prior understanding that § 133.14 dealt with the individual liability of a particular defendant to a particular plaintiff.  Such a construction does not render superfluous the language permitting recovery from any person who benefitted from the payment.  A person may benefit from a payment under a contract without actually receiving the payment, such as where a corporation who is a party to the contract directs that payment be made to its subsidiary, agent, or some other third party on its behalf.

While the Court concludes the principles of joint liability for co-conspirators does not automatically attach to a § 133.14 claim, a co-conspirator may receive or benefit from a particular payment even though not a party to the contract and thus be a proper defendant to such a claim under certain factual circumstances.  Here, however, Plaintiffs make no allegation that part of the antitrust conspiracy was to share ill-gotten profits or pool and divide contract payments amongst co-conspirators.  While co-conspirators may have benefitted from the conspiracy generally, no allegations in the Amended Complaint support the conclusion that co-conspirators benefitted from "such payment" under any void contracts.

Finally, Plaintiffs cannot rely on the fact that one named Plaintiff is capable of asserting a § 133.14 claim against one named Defendant to support class wide relief on behalf of all Plaintiffs against all Defendants.  As this Court previously held in Henry v. Circus Circus Casinos, Inc.:

> to establish Article III standing in a class action, at least one named plaintiff must have standing in his own right to assert a claim against each named defendant before he may purport to represent a class claim against that defendant.  This is not to say that each named plaintiff must have a claim against each named defendant, for, as Plaintiffs argue, standing would be quite difficult to achieve if that were the rule. Rather, what is required is that for every named defendant there be at least one named plaintiff who can assert a claim directly against that defendant.  At that point, Article III standing is satisfied and only then will the inquiry shift to a Rule 23 analysis.

223 F.R.D. 541, 544 (D. Nev. 2004).  Plaintiffs "'may not establish standing through the back door of a class action.'"  <u>Id.</u> (quoting <u>Allee v. Medrano</u>, 416 U.S. 802, 828-829 (1974) (Burger, C.J., concurring in part and dissenting in part)).  Consequently, Plaintiffs may not rely on the fact that one named Plaintiff has standing to assert a claim against one named Defendant.  Nor may Plaintiffs rely on unnamed potential class members who may have purchased natural gas directly from the moving Defendants to establish standing as to those Defendants.

Absent these theories of holding all Defendants liable, Plaintiffs contend further discovery is necessary before the Court rules on summary judgment because Plaintiffs have not had the opportunity to conduct discovery regarding from whom they made natural gas purchases.  Plaintiffs contend Plaintiff Arandell used an agent, Kaztex Energy Management ("Kaztex"), to purchase gas, and consequently Defendants' affidavits attesting that they made no sales to Arandell would not have uncovered sales as between Defendants and Arandell's agent.  Additionally, Plaintiffs argue they may have purchased from Defendants' subsidiaries or affiliates, and because Defendants use complicated corporate structures and employ frequent name changes using similar sounding names, Plaintiffs should be given the opportunity to explore whether any of the named Defendants benefitted from Plaintiffs' payments even if they are not the named contracting party in the gas purchase agreements.  Plaintiffs include an affidavit describing the type of discovery they wish to conduct.

Defendants respond that Plaintiff Arandell did not have an agency agreement with Kaztex, as reflected by Defendants' contracts with Kaztex which do not indicate Kaztex was acting as an agent when it purchased gas from Defendants.  Defendants also argue discovery is not needed because Plaintiffs should have within their possession information regarding from whom Plaintiffs purchased natural gas.

In the interest of justice, the Court may grant additional time for discovery where the opposing party to a motion for summary judgment has presented by affidavit, compliant

with Rule 56(f), that they cannot obtain facts essential to the opposition of the motion.  Fed. R. Civ. P. 56(f).  A party seeking further discovery under Rule 56(f) bears the burden of identifying "by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment."  <u>Tatum v. City & County of San Francisco</u>, 441 F.3d 1090, 1100 (9th Cir. 2006).  Where a party has not had "any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule 56(f) motion fairly freely."  <u>Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation</u>, 323 F.3d 767, 773 (9th Cir. 2003).  Whether to permit discovery under Rule 56(f) lies within the district court's discretion.  <u>United States v. Kitsap Physicians Serv.</u>, 314 F.3d 995, 1000 (9th Cir. 2002).

The Court, in its discretion, will grant Plaintiffs' motion for Rule 56(f) discovery. Plaintiffs have not had an opportunity to conduct discovery in this matter.  Although Plaintiffs would have within their possession some information regarding from whom Plaintiffs purchased natural gas, if Plaintiffs used a purchasing agent, those details may rest within the agent's hands.  Defendants' affidavits denying contracts with the named Plaintiffs would not address any purchases made through a purchasing agent, and may not address Plaintiffs' concerns regarding which companies actually benefitted from contract payments given Defendants' complex corporate structures and frequent name changes.  The parties' disagreement regarding whether Plaintiffs actually used a purchasing agent also would be informed by further discovery.  The Court therefore will deny Defendants' motion for summary judgment, without prejudice to renew upon the completion of discovery.

## IV.      MOTION TO AMEND

Plaintiffs move to amend the Amended Complaint, seeking to add a new named Plaintiff, Ladish Co., Inc., to add a new named Defendant, CenterPoint Energy Services, Inc., and to add allegations Ladish Co., Inc. purchased natural gas directly from proposed new Defendant CenterPoint Energy Services, Inc. and existing named Defendant Reliant

Energy Services, Inc.  Defendants oppose amendment, arguing Plaintiffs should not be permitted to amend to avoid the Court granting Defendants' summary judgment motion. Defendants also argue Plaintiffs seek to add allegations, parties, and theories which Plaintiffs could have added when they filed the initial Complaint.  Finally, Defendants argue amendment is futile because the added parties would prevail on summary judgment.

Generally, a plaintiff may amend his or her complaint once "as a matter of course at any time before a responsive pleading is served . . . ."  Fed. R. Civ. P. 15(a).  If a responsive pleading has been filed, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a); see also Foman v. Davis, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded.").  Courts consider five factors to assess whether to grant leave to amend: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment[,] and (5) whether plaintiff has previously amended his complaint."  Allen v. City of Beverly Hills, 911 F.2d 367, 373 (9th Cir. 1990) (citing Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989)).  Whether to grant leave to amend lies within the district court's discretion.  Zivkovic v. Southern Cal. Edison Co., 302 F.3d 1080, 1087 (9th Cir. 2002).

The Court, in its discretion, will grant Plaintiffs leave to amend.  No scheduling order has been entered and no deadline has been established for adding parties.  No evidence in the record supports a finding of bad faith.  Because general discovery has not commenced in this case, the case will not be unduly delayed and no party would be prejudiced by amendment.  Although Defendants argue amendment would be futile, the reasons Defendants offer for futility are, like the claims regarding direct purchasers discussed above, best addressed in motions for summary judgment following discovery rather than on a motion to amend the complaint.  Finally, although Plaintiffs have amended

16

once previously, they did so in response to a prior court order.  This is Plaintiffs' first request to amend, the case is still in its beginning stages, and no party would be prejudiced by the amendment.  The Court therefore will grant Plaintiffs' motion to amend.

**V.      CONCLUSION**

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss on Grounds of Lack of Standing and the Filed Rate Doctrine (Doc. #653; Doc. #114 in 2:07-CV-01019-PMP-PAL) is hereby DENIED without prejudice to renew on summary judgment.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment (Doc. #655; Doc. #116 in 2:07-CV-01019-PMP-PAL) is hereby DENIED without prejudice to renew upon the close of discovery.

IT IS FURTHER ORDERED that Plaintiffs' Motion Pursuant to Federal Rule of Civil Procedure 56(f) (Doc. #140 in 2:07-CV-01019-PMP-PAL) is hereby GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Leave to Amend Pleadings (Doc. #138 in 2:07-CV-01019-PMP-PAL) is hereby GRANTED.

IT IS FURTHER ORDERED that the Clerk of this Court shall detach and file separately in 2:03-CV-01431-PMP-PAL and in 2:07-CV-01019-PMP-PAL Plaintiffs' Second Amended Complaint (see Doc. #138 in 2:07-CV-01019-PMP-PAL, Ex. A).

DATED: February 18, 2008

_____
PHILIP M. PRO
United States District Judge