# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | | |
|---|---|---|
| **IN RE: WESTERN STATES WHOLESALE NATURAL GAS ANTITRUST LITIGATION.** | ) ) ) ) | **MDL Docket No. 1566**<br><br>**Base Case File No. CV-S-03-1431-PMP (PAL)** |

| | | |
|---|---|---|
| **THIS DOCUMENT RELATES TO:** | ) | **Case No. CV-S-07-987-PMP (PAL)** |
| | ) | |
| **HEARTLAND REGIONAL MEDICAL CENTER , PRIME TANNING CORP., NORTHWEST MISSOURI STATE UNIVERSITY, and** | ) ) ) ) | **CLASS ACTION** |
| **All Other Similarly Situated Direct Purchasers of Natural Gas for Their Own Use or Consumption in Missouri,** | ) ) ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Plaintiffs, | ) ) | |
| | ) | |
| v. | ) ) | |
| | ) | |
| **ONEOK INC., ONEOK ENERGY MARKETING AND TRADING COMPANY, L.P., KANSAS GAS MARKETING CO., THE WILLIAMS COMPANIES, INC., WILLIAMS MERCHANT SERVICES COMPANY, INC., WILLIAMS ENERGY MARKETING & TRADING, AMERICAN ELECTRIC POWER COMPANY, AEP ENERGY SERVICES, INC., DUKE ENERGY CORPORATION, DUKE ENERGY TRADING AND MARKETING COMPANY, L.L.C., DYNEGY MARKETING & TRADE, EL PASO CORPORATION, EL PASO MERCHANT ENERGY, L.P., CMS ENERGY CORPORATION, CMS MARKETING SERVICES & TRADING COMPANY, CMS FIELD SERVICES, RELIANT ENERGY, INC.,** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

1

**RELIANT ENERGY SERVICES, INC.,**    )
**CORAL ENERGY RESOURCES, L.P.,**    )
**XCEL ENERGY, INC. and**    )
**E PRIME INC.,**    )
    )
                         **Defendants.**    )

## AMENDED COMPLAINT FOR DAMAGES

Plaintiffs, Heartland Regional Medical Center ("Heartland Regional"), Prime Tanning Corp., and Northwest Missouri State University ("NMSU"), on behalf of themselves and all others similarly situated, by and through their attorneys, bring this action for damages under the Missouri Antitrust Law, R.S.Mo. § 416.010 *et seq*., and allege as follows:

## JURISDICTION AND DAMAGES

1.      Plaintiffs bring this Amended Complaint For Damages pursuant to the Missouri Antitrust Law, R.S.Mo. § 416.010 *et seq*. to obtain damages and injunctive and other equitable relief which plaintiffs and other members of the class have sustained due to violations of these statutes by defendants.

2.      Venue is proper in the Western District of Missouri for purposes of trial. The action was originally filed in Buchanan County, Missouri, pursuant to R.S.Mo. § 416.131 because one or more of the defendants maintains an office, transacts business, has an agent or is found in Buchanan County, Missouri. Many of the unlawful acts done pursuant to the arrangements, contracts, agreements, combination and conspiracy alleged herein, had a direct and substantial effect on plaintiffs and other members of the class within Missouri, and within Buchanan County. The trade and commerce hereinafter described is carried on, in part, within Missouri, including Buchanan County. Defendants, directly and through affiliates they dominate and control, performed unlawful acts in furtherance of their illegal arrangements, contracts, agreements, combination and conspiracy within Missouri and the United States that were intended to have, and did have, a direct and

2

substantial and reasonably foreseeable effect on plaintiffs and other members of the class in Missouri and Buchanan County.  Personal jurisdiction exists over all defendants, in part, based upon the activities of their corporate affiliates, upon certain defendants' registration as foreign corporations doing business in Missouri and their role in a conspiracy that they reasonably could expect to affect commerce and harm purchasers in Missouri.

3.      Defendants removed this action from the Circuit Court of Buchanan County, Missouri to the United States District Court for the Western District of Missouri  pursuant to the Class Action Fairness Act, 28 U.S.C. § 1711 et seq.  The Judicial Panel on Multidistrict Litigation then transferred this action from the Western District of Missouri to the District of Nevada for coordinated and consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407.  At an appropriate time, Plaintiffs intend to seek remand to the United States District Court for the Western District of Missouri.

## PLAINTIFFS

4.      Plaintiff, Heartland Regional, is a not-for-profit Missouri company with its principal place of business in St. Joseph, Missouri.  Heartland purchased natural gas for use at its facilities located in Missouri directly from one or more of the defendants, and from other sellers of natural gas in Missouri, during the Relevant Time Period ("January 1, 2000 through October 31, 2002").  Plaintiff's purchases of natural gas during the Relevant Time Period were affected by the defendants' manipulations.

5.      Plaintiff, Prime Tanning Corp., is a Missouri corporation with its principal place of business in St. Joseph, Missouri.  Prime Tanning Corp. purchased natural gas for use at its facilities located in Missouri directly from one or more of the defendants, and from other sellers of natural gas in Missouri, during the Relevant Time Period.  Plaintiff's purchases of natural gas during the Relevant Time Period were affected by the defendants' manipulations.

2426641.01

6.      Plaintiff, NMSU, is a publicly-funded university with its principal location in Maryville, Missouri.  NMSU purchased natural gas for use at its facilities located in Missouri directly from one or more of the defendants, and from other sellers of natural gas in Missouri, during the Relevant Time Period.  Plaintiff's purchases of natural gas during the Relevant Time Period were affected by the defendants' manipulations.

**DEFENDANTS**

7.      Defendant ONEOK Inc. is a Delaware corporation in good standing and has its principal place of business in Tulsa, Oklahoma. ONEOK Inc., wholly controls and dominates ONEOK Energy Marketing and Trading Company, L.P., and other affiliates or divisions that regularly conduct business in Missouri.  ONEOK Inc. buys, sells, transports, and stores natural gas, including its own and its affiliates' production, in the United States and in Missouri.

8.      Defendant ONEOK Inc. directly and through affiliates it dominates and controls, made arrangements, contracts, and agreements, and entered into a combination and conspiracy between the defendants which tended to prevent full and free competition in the trading and sale of natural gas, or which tended to advance or control the market prices of natural gas.  ONEOK Inc.'s actions were intended to have, and did have, a direct, substantial and reasonably foreseeable effect on United States commerce and on commerce in Missouri during the Relevant Time Period. In furtherance of such unlawful arrangements, contracts, agreements, and combination and conspiracy, ONEOK Inc.'s officer(s) and/or director(s), including "Senior Management Team" member Christopher R. Skoog, President of ONEOK Energy Marketing and Trading Company, agreed to arrangements, contracts, agreements, and a combination and conspiracy which tended to prevent full and free competition in the trading and sale of natural gas, or which tended to advance or control the market prices of natural gas that its affiliates sold in the United States and in Missouri.  During the Relevant Time Period and in furtherance of defendants' unlawful arrangements, contracts,

4

agreements, and combination and conspiracy, ONEOK Inc.'s officer(s) or director(s), including "Senior Management Team" member Christopher R. Skoog, President of ONEOK Energy Marketing and Trading Company, made strategic marketing policies and decisions concerning natural gas and the reporting of natural gas trade information to reporting firms for use in the calculation of natural gas price indices that affected the market prices of natural gas, and those policies and decisions were implemented on an operational level by affiliates, such as ONEOK Energy Marketing and Trading Company, L.P., in the United States and in Missouri.

9.    Personal jurisdiction exists over ONEOK Inc. based upon the activities of its corporate affiliates, in particular ONEOK Energy Marketing and Trading Company, L.P., that traded and sold natural gas in the United States and in Missouri during the Relevant Time Period.  ONEOK, Inc. and its affiliates consistently have presented a common corporate image to customers in the United States and in Missouri through their marketing efforts and materials.  As more fully described in Paragraph 56 below, in October, 2002, ONEOK, Inc. and ONEOK Energy Marketing and Trading, L.P., paid $3 Million in civil penalties to the United States Commodity Futures Trading Commission to settle charges of false reporting of natural gas prices.

10.    Defendant ONEOK Energy Marketing and Trading Company, L.P., is a Delaware limited partnership in good standing and has its principal place of business in Tulsa, Oklahoma. ONEOK Energy Marketing and Trading Company, L.P., is wholly controlled and dominated by defendant ONEOK, Inc. concerning both the conduct of its business generally within Missouri and in particular its conduct in furtherance of defendants' unlawful arrangements, contracts, agreements, combination and conspiracy.  During the Relevant Time Period and in furtherance of defendants' unlawful arrangements, contracts, agreements, combination and conspiracy, officer(s) and/or director(s) of ONEOK, Inc., including "Senior Management Team" member Christopher R. Skoog,

President of ONEOK Energy Marketing and Trading Company, made strategic marketing policies and decisions concerning natural gas and the reporting of natural gas trade information to reporting firms for use in the calculation of natural gas price indices that affected the market prices of natural gas which ONEOK Energy Marketing and Trading Company, L.P. sold in Missouri and elsewhere. ONEOK Energy Marketing and Trading Company, LP., buys, sells, stores, and transports natural gas, including its own or its affiliates' production, in the United States and in Missouri.

11.     Defendant Kansas Gas Marketing Company is a Kansas corporation with its principal place of business in Tulsa, Oklahoma.  Defendant Kansas Gas Marketing Company is wholly controlled and dominated by defendant ONEOK, Inc. concerning both the conduct of its policies and business practices generally and in particular its conduct in furtherance of the Defendant's unlawful arrangements, contracts, agreements, combination, conspiracy, and fraud alleged herein.  Kansas Gas Marketing Company sold natural gas in Missouri, transacted substantial business in Missouri, made contracts in Missouri, and/or committed tortious acts that had actionable consequences within the State of Missouri.

12.     Defendant The Williams Companies, Inc. is a Delaware corporation in good standing and has its principal place of business in Tulsa, Oklahoma.  The Williams Companies, Inc. wholly controls and dominates Williams Energy Marketing & Trading, Williams Merchant Services Company, Inc. and other affiliates or divisions that regularly conduct business in Missouri.  The Williams Companies, Inc. through its affiliates, buys, sells and transports natural gas, including its own or its affiliates' production, in the United States and in Missouri.

13.     Defendant The Williams Companies, Inc. directly and through affiliates it dominates and controls, made arrangements, contracts, and agreements, and entered into a combination and conspiracy between the defendants which tended to prevent full and free competition in the trading

6

and sale of natural gas, or which tended to advance or control the market prices of natural gas.  The Williams Companies, Inc.'s actions were intended to have, and did have, a direct, substantial and reasonably foreseeable effect on United States commerce and on commerce in Missouri during the Relevant Time Period.  In furtherance of such unlawful arrangements, contracts, agreements, and combination and conspiracy, The Williams Companies, Inc.'s officer(s) and/or director(s), such as William E. Hobbs, President and Chief Executive Officer of Williams Energy Marketing & Trading, agreed to arrangements, contracts, agreements, and a combination and conspiracy which tended to prevent full and free competition in the trading and sale of natural gas, or which tended to advance or control the market prices of natural gas that its affiliates sold in the United States and in Missouri. During the Relevant Time Period and in furtherance of defendants' unlawful arrangements, contracts, agreements, and combination and conspiracy, The Williams Companies, Inc.'s officer(s) or director(s), such as William E. Hobbs, President and Chief Executive Officer of Williams Energy Marketing & Trading, made strategic marketing policies and decisions concerning natural gas and the reporting of natural gas trade information to reporting firms for use in the calculation of natural gas price indices that affected the market prices of natural gas, and those policies and decisions were implemented on an operational level by affiliates, such as Williams Energy Marketing & Trading and Williams Merchant Services Company, Inc. in the United States and in Missouri.

14.     Personal jurisdiction exists over The Williams Companies, Inc. based upon the activities of its corporate affiliates, in particular Williams Merchant Services Company, Inc. and Williams Energy Marketing & Trading, that traded and sold natural gas in the United States and in Missouri during the Relevant Time Period.  The Williams Companies, Inc. and its affiliates consistently have presented a common corporate image to customers in the United States and in Missouri through their marketing efforts and materials.  William E. Hobbs, President and Chief

Executive Officer of Williams Energy Marketing & Trading, is "Senior Officer" of The Williams Companies, Inc.  As more fully described in Paragraph 56 below, The Williams Companies, Inc. and Williams Energy Marketing & Trading Company paid $20 Million, in civil penalties in July, 2003 to the United States Commodity Futures Trading Commission to settle charges of attempting to manipulate natural gas price indices.  On December 17, 2004, a former trader of Williams Energy Marketing & Trading Company, Thomas J. Pool, pled guilty to conspiring with other Williams' traders to provide false natural gas price data to reporting firms from mid-1998 through mid-2002 for the purpose of manipulating monthly price indices of natural gas at Southern California Gas, El Paso Natural Gas in the San Juan Basin, and Colorado Interstate Gas in the Rockies.  Mr. Pool admitted creating fictitious natural gas trades at the behest of his supervisor.  On May 20, 2005, a former trader of Williams Energy Marketing & Trading Company, Brion Scott McKenna, pled guilty to conspiring with other Williams' traders to provide false natural gas price data to reporting firms, *Inside FERC's Gas Market Report* and *NGI's Bidweek Survey*, from September, 2000 to June 30, 2002 for the purpose of manipulating published index prices of natural gas in the West Coast, East Coast, Gulf Coast and Rocky Mountain regions of the United States.  Mr. McKenna admitted in his Plea Agreement to successfully manipulating the index prices of natural gas on February 1, 2001 at the following locations: Columbia Gas Transmission Corp. at Appalachia; Florida Gas Transmission Co. pipeline at Zones 2 and 3; Natural Gas Pipeline Co. of America pipeline at Louisiana; Transcontinental Gas Pipeline Corp. at Zone 2; and Transco Zone 6 Market Center.  Mr. McKenna admitted in his Plea Agreement that by reporting false trades, he intended to influence the price published by *Inside FERC* and *NGI* at each location for which he reported, and to the extent that his false trade information was included in the respective index calculations, the published index prices did not reflect the legitimate forces of supply and demand.  Mr. Thomas Pool, another Williams

8

trader, has admitted as part of his plea agreement that he was trained and directed by his supervisors to undertake and cover-up the manipulation of natural gas prices.

15.     Defendant Williams Merchant Services Company, Inc. ("Williams Services"), is a Delaware corporation in good standing and has its principal place of business in Tulsa, Oklahoma. Williams Merchant Services Company, Inc. is wholly controlled and dominated by its parent company, The Williams Companies, Inc. a Delaware corporation with headquarters in Tulsa, Oklahoma. Williams Merchant Services Company, Inc., wholly controls and dominates Williams Energy Marketing & Trading. Williams Merchant Services Company, Inc. is wholly controlled and dominated by The Williams Companies, Inc., concerning both the conduct of its business generally within Missouri and in particular its conduct in furtherance of defendants' unlawful arrangements, contracts, agreements, and combination and conspiracy.  During the Relevant Time Period and in furtherance of defendants' unlawful arrangements, contracts, agreements, and combination and conspiracy, officer(s) and director(s) of The Williams Companies, Inc., such as William E. Hobbs, President and Chief Executive Officer of Williams Energy Marketing & Trading, made strategic marketing policies and decisions concerning natural gas and the reporting of natural gas trade information to reporting firms for use in the calculation of natural gas price indices that affected the market prices of natural gas which Williams Merchant Services Company, Inc. or its affiliate Williams Energy Marketing & Trading sold in Missouri and elsewhere.  Williams Merchant Services Company, Inc. buys, sells, stores and transports natural gas, including its own or its affiliates' production, in the United States and in Missouri.

16.     Defendant Williams Energy Marketing & Trading is a Delaware corporation in good standing and has its principal place of business in Tulsa, Oklahoma.  Defendant Williams Energy Marketing & Trading is wholly controlled and dominated by Williams Merchant Services Company,

Inc., which in turn is wholly controlled and dominated by its parent, defendant The Williams Companies, Inc. Defendant Williams Energy Marketing & Trading is wholly controlled and dominated by defendants, Williams Merchant Services Company, Inc. and The Williams Companies, Inc., concerning both the conduct of its business generally within Missouri and in particular its conduct in furtherance of defendants' unlawful arrangements, contracts, agreements, combination and conspiracy.  During the Relevant Time Period and in furtherance of defendants' unlawful arrangements, contracts, agreements, and combination and conspiracy, officer(s) and director(s) of The Williams Companies, Inc. and Williams Merchant Services Company, Inc., such as William E. Hobbs, President and Chief Executive Officer of Williams Energy Marketing & Trading, made strategic marketing policies and decisions concerning natural gas and the reporting of natural gas trade information to reporting firms for use in the calculation of natural gas price indices that affected the market prices of natural gas which Williams Energy Marketing & Trading sold in Missouri and elsewhere.  Defendant Williams Energy Marketing & Trading buys, sells, and transports natural gas, including its own or its affiliates' production, in the United States and in Missouri.

17.    Defendant American Electric Power Company is a New York corporation in good standing and has its principal place of business in Columbus, Ohio.  The American Electric Company wholly controlled and dominated during the Relevant Time Period its subsidiary AEP Energy Services, Inc., an Ohio corporation with its principal place of business in Columbus, Ohio. Defendant American Electric Power Company buys, sells, transports electricity and natural gas, including its own and its affiliates' production, in the United States and in Missouri.

18.    Defendant American Electric Power Company, directly and through affiliates it dominates and controls, made arrangements, contracts, and agreements, and entered into a

combination and conspiracy between the defendants which tended to prevent full and free competition in the trading and sale of natural gas, or which tended to advance or control the market prices of natural gas. American Electric Power Company's actions were intended to have, and did have, a direct, substantial and reasonably foreseeable effect on United States commerce and on commerce in Missouri during the Relevant Time Period. In furtherance of such unlawful arrangements, contracts, agreements, and combination and conspiracy, American Electric Power Company's officer(s) and/or director(s) agreed to arrangements, contracts, agreements, and a combination and conspiracy which tended to prevent full and free competition in the trading and sale of natural gas, or which tended to advance or control the market prices of natural gas that its affiliates sold in the United States or in Missouri. During the Relevant Time Period and in furtherance of defendants' unlawful arrangements, contracts, agreements, and combination and conspiracy, American Electric Power Company's officer(s) or director(s), made strategic marketing policies and decisions concerning natural gas and the reporting of natural gas trade information to reporting firms for use in the calculation of natural gas price indices that affected the market prices of natural gas, and those policies and decisions were implemented on an operational level by affiliates, such as AEP Energy Services, Inc.

19.     Personal jurisdiction exists over American Electric Power Company based upon the activities of its corporate affiliates, in particular AEP Energy Services, Inc., that sold natural gas in the United States and in Missouri during the Relevant Time Period. American Electric Power Company and its affiliates consistently have presented a common corporate image to customers in the United States and in Missouri through their marketing efforts and materials.

20.     Defendant AEP Energy Services, Inc. is an Ohio corporation in good standing and has its principal place of business in Columbus, Ohio. AEP Energy Services, Inc. is wholly controlled

and dominated by its parent, American Electric Power Company, an Ohio corporation with headquarters in Columbus, Ohio. AEP Energy Services, Inc. is wholly controlled and dominated by defendant American Electric Power Company concerning both the conduct of its business generally within Missouri and in particular its conduct in furtherance of defendants' unlawful arrangements, contracts, agreements, and combination and conspiracy. During the Relevant Time Period and in furtherance of defendants' unlawful agreements, officer(s) and director(s) of American Electric Power Company, Inc. made strategic marketing policies and decisions concerning natural gas and the reporting of natural gas trade information to reporting firms for use in the calculation of natural gas price indices that affected the market prices of natural gas which AEP Energy Services, Inc. sold. AEP Energy Services, Inc. bought, sold and transported natural gas during the Relevant Time Period, including its own or its affiliates' production, in the United States and in Missouri. As more fully described in Paragraph 56 below, in January 2005, American Electric Power Company and AEP Energy Services, Inc. paid $30 Million in civil penalties to the United States Commodity Futures Trading Commission to settle charges of false reporting and attempted manipulation of natural gas prices. AEP Energy Services, Inc. also paid $30 Million in civil penalties to the United States Department of Justice while acknowledging and accepting responsibility for submitting knowingly inaccurate trade information for its Gulf Natural Gas Trading Desk, and for two other trading desks covering the Northeast and Mid-Continent regions.

21. Defendant Duke Energy Corporation is a North Carolina corporation with its principal place of business in Charlotte, North Carolina. Duke Energy Corporation wholly controls and dominates its subsidiary, Duke Energy Trading and Marketing Company, L.L.C., a Delaware limited liability corporation with its principal place of business in Houston, Texas. Duke Energy

Corporation wholly controls and dominates Duke Energy Trading and Marketing Company, L.L.C., and other affiliates that regularly conduct business in Missouri.

22.     Defendant Duke Energy Corporation directly and through affiliates it dominates and controls, made arrangements, contracts, and agreements, and entered into a combination and conspiracy between the defendants which tended to prevent full and free competition in the trading and sale of natural gas, or which tended to advance or control the market prices of natural gas. Duke Energy Corporation's actions were intended to have, and did have, a direct, substantial and reasonably foreseeable effect on United States commerce and on commerce in Missouri during the Relevant Time Period. In furtherance of such unlawful arrangements, contracts, agreements, and combination and conspiracy, Duke Energy Corporation's officer(s) and/or director(s) agreed to arrangements, contracts, agreements, and a combination and conspiracy which tended to prevent full and free competition or which tended to advance or control the market prices of natural gas that its affiliates sold in the United States and in Missouri. During the Relevant Time Period and in furtherance of defendants' unlawful arrangements, contracts, agreements, and combination and conspiracy, Duke Energy Corporation's officer(s) or director(s) made strategic marketing policies and decisions concerning natural gas and the reporting of natural gas trade information to reporting firms for use in the calculation of natural gas price indices that affected the market prices of natural gas, and those policies and decisions were implemented on an operational level by affiliates, such as Duke Energy Trading and Marketing Company, L.L.C., in the United States and in Missouri.

23.     Personal jurisdiction exists over Duke Energy Corporation based upon the activities of its corporate affiliates, in particular Duke Energy Trading and Marketing, L.L.C., that traded and sold natural gas in the United States and in Missouri during the Relevant Time Period. Duke Energy Corporation and its affiliates consistently have presented a common corporate image to customers in

13

the United States and in Missouri, through their marketing efforts and materials.  As more fully described in Paragraph 56 below, in September, 2003, Duke Energy Corporation and Duke Energy Trading and Marketing, L.L.C. paid $28 Million in civil penalties to the United States Commodity Futures Trading Commission to settle charges of false reporting and attempted manipulation of natural gas prices.

24.     Defendant Duke Energy Trading and Marketing Company, L.L.C. is a Delaware limited liability corporation registered as a foreign corporation in Missouri, with its principal place of business in Houston, Texas.  Duke Energy Trading and Marketing Company, L.L.C. is wholly controlled and dominated by its parent, Duke Energy Corporation, a Delaware corporation with its principal place of business in Charlotte, North Carolina.  Duke Energy Trading and Marketing Company, L.L.C. is wholly controlled and dominated by defendant Duke Energy Corporation concerning both the conduct of its business generally within Missouri and in particular its conduct in furtherance of defendants' unlawful arrangements, contracts, agreements, and combination and conspiracy.  During the Relevant Time Period and in furtherance of defendants' unlawful arrangements, contracts, agreements, and combination and conspiracy, officer(s) and director(s) of Duke Energy Corporation made strategic marketing policies and decisions concerning natural gas and the reporting of natural gas trade information to reporting firms for use in the calculation of natural gas price indices that affected the market prices of natural gas which Duke Energy Trading and Marketing Company, L.L.C. sold in Missouri and elsewhere.  On or about February 1, 2005, the Commodity Futures Trading Commission filed a civil action in the United States District Court for the Southern District of Texas, against Michael Whitney, a former energy trader of Duke Energy Trading and Marketing Company, alleging that Whitney submitted or caused to be submitted false or misleading or knowingly inaccurate price and volume information to *Gas Daily* and other price

compilers, concerning natural gas transactions which he executed between June, 2001 and August, 2002. Duke Energy Trading and Marketing Company, L.L.C. buys, sells, stores, and transports natural gas, including its own or its affiliates' production, in the United States and in Missouri.

25.     Defendant Dynegy Marketing & Trade is a Colorado general partnership in good standing with its principal place of business in Houston, Texas. Dynegy Marketing & Trade is wholly controlled and dominated by its general partners, DMT Holdings, L.P. and Dynegy GP Inc. Dynegy Marketing & Trade was one of the largest natural gas marketers in the United States and in 2001, Dynegy Marketing & Trade's natural gas sales averaged 8.2 billion cubic feet per day. Dynegy Marketing & Trade regularly conduct business in Missouri.

26.     Defendant Dynegy Marketing & Trade made arrangements, contracts, and agreements, and entered into a combination and conspiracy between the defendants which tended to prevent full and free competition in the trading and sale of natural gas, or which tended to advance or control the market prices of natural gas.  Dynegy Marketing & Trade's actions were intended to have, and did have, a direct, substantial and reasonably foreseeable effect on United States commerce and on commerce in Missouri during the Relevant Time Period.  In furtherance of such unlawful arrangements, contracts, agreements, and combination and conspiracy, Dynegy Marketing & Trade's officer(s) and/or director(s), such as Stephan W. Bergstrom and Dan W. Ryser, and employees, such as Michelle Valencia, a former senior trader, agreed to arrangements, contracts, agreements, and a combination and conspiracy which tended to prevent full and free competition in the trading and sale of natural gas, or which tended to advance or control the market prices of natural gas that its affiliates sold in the United States and in Missouri.  During the Relevant Time Period and in furtherance of defendants' unlawful arrangements, contracts, agreements, and combination and conspiracy, Dynegy Marketing & Trade's officer(s) or director(s), such as Stephan W. Bergstrom

and Dan W. Ryser, and employees, such as Michelle Valencia, a former senior trader, made strategic marketing policies and decisions concerning natural gas and the reporting of natural gas trade information to reporting firms for use in the calculation of natural gas price indices that affected the market prices of natural gas which Dynegy Marketing & Trade sold in Missouri and elsewhere, and those policies and decisions were implemented on an operational level by Dynegy Marketing & Trade's employees in the United States and in Missouri.   On September 25, 2002, Dynegy announced it had discovered that 15 of its employees had engaged in reporting false data to price compilers. Of those, seven were fired, four were given the opportunity to resign, and four were otherwise disciplined by the company.   As more fully described in Paragraph 56 below, in December, 2002, Dynegy Marketing & Trade and West Coast Power LLC, paid $5 Million in civil penalties to the United States Commodity Future Trading Commission to settle charges of false reporting and attempted manipulation of natural gas prices.

27.     Defendant El Paso Corporation is a Delaware corporation in good standing with its principal place of business in Houston, Texas.  El Paso Corporation wholly controls and dominates its subsidiary, El Paso Merchant Energy, L.P., a Delaware limited partnership with its principal place of business in Houston, Texas. El Paso Corporation buys, sells, stores, and transports natural gas, including its own or its affiliates' production, in the United States and in Missouri.

28.     Defendant El Paso Corporation directly and through affiliates it dominates and controls, made arrangements, contracts, and agreements, and entered into a combination and conspiracy between the defendants which tended to prevent full and free competition in the trading and sale of natural gas, or which tended to advance or control the market prices of natural gas. El Paso Corporation's actions were intended to have, and did have, a direct, substantial and reasonably foreseeable effect on United States commerce and on commerce in Missouri during the

Relevant Time Period. In furtherance of such unlawful arrangements, contracts, agreements, and combination and conspiracy, El Paso Corporation's officer(s) and/or director(s), such as Ralph Eads, Executive Vice President of El Paso, agreed to arrangements, contracts, agreements, and to a combination and conspiracy which tended to prevent full and free competition in the trading and sale of natural gas, or which tended to advance or control the market prices of natural gas that its affiliates sold in the United States and in Missouri. During the Relevant Time Period and in furtherance of defendants' unlawful arrangements, contracts, agreements, and combination and conspiracy, El Paso Corporation's officer(s) or director(s), such as Ralph Eads, Executive Vice President, made strategic marketing policies and decisions concerning natural gas and the reporting of natural gas trade information to reporting firms for use in the calculation of natural gas price indices that affected the market prices of natural gas, and those policies and decisions were implemented on an operational level by affiliates, such as El Paso Merchant Energy, L.P., in the United States and in Missouri.

29.    Personal jurisdiction exists over El Paso Corporation based upon the activities of its corporate affiliates, in particular El Paso Merchant Energy, L.P., that traded and sold natural gas in the United States and in Missouri during the Relevant Time Period. El Paso Corporation and its affiliates consistently have presented a common corporate image to customers in the United States and in Missouri through their marketing efforts and materials. As more fully described in Paragraph 56 below, in March, 2003, El Paso Corporation and El Paso Merchant Energy, L.P., paid $20 Million in civil penalties to the United States Commodity Futures Trading Commission to settle charges of false reporting and attempted manipulation of natural gas prices. In November, 2004, three former natural gas traders of El Paso Merchant Energy, L.P., Donald E. Burwell, James P. Phillips, and Greg Singleton, were charged by the United States Department of Justice, U.S.

17

Attorney's Office for the Southern District of Texas, with indictments of conspiracy, false reporting, and wire fraud related to the transmission of allegedly inaccurate trade reports to industry price compilers which used the reported trades to calculate the index price of natural gas. El Paso trader Todd Gelger was sentenced to two years in federal prison following his conviction for reporting false information related to natural gas trades.

30.     Defendant El Paso Merchant Energy, L.P. is a Delaware limited partnership with its principal place of business in Houston, Texas. El Paso Merchant Energy, L.P. is wholly controlled and dominated by its parent company, El Paso Corporation, a Delaware corporation with its principal place of business in Houston, Texas. El Paso Merchant Energy, L.P. is wholly controlled and dominated by defendant El Paso Corporation concerning both the conduct of its business generally within Missouri and in particular its conduct in furtherance of defendants' unlawful arrangements, contracts, agreements, combination and conspiracy. During the Relevant Time Period and in furtherance of defendants' unlawful agreements, officer(s) and/or director(s) of El Paso Corporation, such as Ralph Eads, Executive Vice President of El Paso Corporation and President of El Paso's Merchant Energy Group, made strategic marketing policies and decisions concerning natural gas and the reporting of natural gas trade information to reporting firms for use in the calculation of natural gas price indices that affected the market prices of natural gas which El Paso Merchant Energy, LP. sold in Missouri and elsewhere. El Paso Merchant Energy, L.P. buys, sells and transports natural gas, including its own or its affiliates' production, in the United States and in Missouri.

31.     Defendant CMS Energy Corporation is a Michigan corporation in good standing with its principal place of business in Jackson, Michigan. CMS Energy Corporation wholly controlled and dominated during the Relevant Time Period its subsidiary CMS Marketing Services & Trading

Company, a Michigan corporation with its principal place of business in Houston, Texas. CMS Energy Corporation wholly controlled and dominated during the Relevant Time Period CMS Field Services, a Michigan corporation with its principal place of business in Tulsa, Oklahoma. CMS Energy Corporation wholly controlled and dominated CMS Marketing Services & Trading Company, CMS Field Services, and other affiliates or divisions that regularly conducted business in Missouri during the Relevant Time Period.

      32.     Defendant CMS Energy Corporation, directly and through affiliates it dominates and controls, made arrangements, contracts, and agreements, and entered into a combination and conspiracy between the defendants which tended to prevent full and free competition in the trading and sale of natural gas, or which tended to advance or control the market prices of natural gas. CMS Energy Corporation's actions were intended to have, and did have, a direct, substantial and reasonably foreseeable effect on United States commerce and on commerce in Missouri during the Relevant Time Period. In furtherance of such unlawful arrangements, contracts, agreements, and combination and conspiracy, CMS Energy Corporation's officer(s) and/or director(s), such as Victor J. Fryling, President and Chief Operating Officer, agreed to arrangements, contracts, agreements, and a combination and conspiracy which tended to prevent full and free competition in the trading and sale of natural gas, or which tended to advance or control the market prices of natural gas which its affiliates sold in the United States and in Missouri. During the Relevant Time Period and in furtherance of defendants' unlawful arrangements, contracts, agreements, and combination and conspiracy, CMS Energy Corporation's officer(s) or director(s), such as Victor J. Fryling, President and Chief Operating Officer, made strategic marketing policies and decisions concerning natural gas and the reporting of natural gas trade information to reporting firms for use in the calculation of natural gas price indices that affected the market prices of natural gas which was sold, and those

policies and decisions were implemented on an operational level by affiliates, such as CMS Marketing Services & Trading Company and CMS Field Services, in the United States and in Missouri.

33.    Personal jurisdiction exists over CMS Energy Corporation based upon the activities of its corporate affiliates, in particular CMS Marketing, Services & Trading Company and CMS Field Services, that traded and sold natural gas in the United States and in Missouri during the Relevant Time Period.  CMS Energy Corporation and its affiliates consistently have presented a common corporate image to customers in the United States and in Missouri through their marketing efforts and materials.  As more fully described in Paragraph 56 below, in November, 2003, CMS Energy Corporation, CMS Marketing, Services & Trading Company, and CMS Field Services paid $16 Million in civil penalties to the United States Commodity Futures Trading Commission to settle charges of false reporting and attempted manipulation of natural gas prices.

34.    Defendant CMS Marketing Services & Trading Company was a Michigan corporation registered as a foreign corporation in good standing in Missouri during the Relevant Time Period with its principal place of business in Houston, Texas.  CMS Marketing Services & Trading Company was wholly controlled and dominated during the Relevant Time Period by its parent, CMS Energy Corporation, a Michigan corporation with its principal place of business in Jackson, Michigan.  CMS Marketing Services & Trading Company was wholly controlled and dominated by defendant CMS Energy Corporation concerning both the conduct of its business generally within Missouri and in particular its conduct in furtherance of defendants' unlawful arrangements, contracts, agreements, combination and conspiracy.  During the Relevant Time Period and in furtherance of defendants' unlawful agreements, officer(s) and/or director(s) of CMS Energy Corporation, such as Victor J. Fryling, President and Chief Operating Officer, made strategic

20

marketing policies and decisions concerning natural gas and the reporting of natural gas trade information to reporting firms for use in the calculation of natural gas price indices that affected the market prices of natural gas which CMS Marketing Services & Trading Company sold.  CMS Marketing Services & Trading Company bought, sold and transported natural gas, including its own or its affiliates' production, during the Relevant Time Period in the United States and in Missouri.

35.     Defendant CMS Field Services was a Michigan corporation in good standing during the Relevant Time Period with its principal place of business in Tulsa, Oklahoma.  CMS Field Services was wholly controlled and dominated during the Relevant Time Period by its parent, CMS Energy Corporation, a Michigan corporation with its principal place of business in Jackson, Michigan.  CMS Field Services changed its name after the Relevant Time Period to CMS Continental Natural Gas, Inc., and later to Cantera Gas Company.  CMS Field Services was wholly controlled and dominated by defendant CMS Energy Corporation concerning both the conduct of its business generally within Missouri and in particular its conduct in furtherance of defendants' unlawful arrangements, contracts, agreements, combination and conspiracy.  During the Relevant Time Period and in furtherance of defendants' unlawful arrangements, contracts, agreements, and combination and conspiracy, officer(s) and/or director(s) of CMS Energy Corporation, such as Victor J. Fryling, President and Chief Operating Officer, made strategic marketing policies and decisions concerning natural gas and the reporting of natural gas trade information to reporting firms for use in the calculation of natural gas price indices that affected the market prices of natural gas which CMS Field Services and CMS Marketing Services & Trading Company sold.  On or about February 1, 2005, the Commodity Futures Trading Commission filed a civil action in United States District Court for the Northern District of Oklahoma, against Jeffrey A. Bradley and Robert L. Martin, former traders of CMS Field Services, alleging that they conspired to submit false or

misleading or knowingly inaccurate price and volume information to *Gas Daily* and other price compilers, between January, 2001 and October, 2002.  In one telephone conversation between Bradley and Martin these men "openly discussed a plan to 'make up some numbers and turn them into the reporting firms.'"  CMS Field Services bought, sold, stored, and transported natural gas, including its own or its affiliates' production, during the Relevant Time Period in the United States and in Missouri.

36.     Defendant Reliant Energy, Inc. is a Delaware corporation in good standing with it principal place of business in Houston, Texas.  In April, 2004, Reliant Energy, Inc. officially changed its name from Reliant Resources, Inc.  Reliant Resources, Inc. wholly controlled and dominated its subsidiary Reliant Energy Services, Inc. during the Relevant Time Period, a Delaware corporation with its principal place of business in Houston, Texas.  Reliant Energy, Inc., f/k/a Reliant Resources, Inc., buys, sells, and transports natural gas in the United States and in Missouri.

37.     Defendant Reliant Energy, Inc., f/k/a Reliant Resources, Inc., directly and through affiliates it dominates and controls, made arrangements, contracts, and agreements, and entered into a combination and conspiracy between the defendants which tended to prevent full and free competition in the trading and sale of natural gas, or which tended to advance or control the market prices of natural gas.  Reliant Energy, Inc., f/k/a Reliant Resources, Inc.'s actions were intended to have, and did have, a direct, substantial and reasonably foreseeable effect on United States commerce and on commerce in Missouri during the Relevant Time Period. In furtherance of such unlawful arrangements, contracts, agreements, and combination and conspiracy, Reliant Energy, Inc., f/k/a Reliant Resources, Inc.'s officer(s) and/or director(s), such as Joe Bob Perkins, Executive Vice President and Group President, Wholesale Businesses in 2000 and 2001, agreed to arrangements, contracts, agreements, and a combination and conspiracy which tended to prevent full

22

and free competition in the trading and sale of natural gas, or which tended to advance or control the market prices of natural gas that its affiliates sold in the United States or in Missouri.  During the Relevant Time Period and in furtherance of defendants' unlawful arrangements, contracts, agreements, and combination and conspiracy, Reliant Energy, Inc., f/k/a Reliant Resources, Inc.'s officer(s) or director(s), such as Joe Bob Perkins, Executive Vice President and Group President, Wholesale Businesses in 2000 and 2001, made strategic marketing policies and decisions concerning natural gas and the reporting of natural gas trade information to reporting firms for use in the calculation of natural gas price indices that affected the market prices of natural gas which was sold, and those policies and decisions were implemented on an operational level by affiliates, such as Reliant Energy Services, Inc.

38.     Personal jurisdiction exists over Reliant Energy, Inc., f/k/a Reliant Resources, Inc. based upon the activities of its corporate affiliates, in particular Reliant Energy Services, Inc., that traded and sold natural gas in the United States and in Missouri during the Relevant Time Period. Reliant Energy, Inc., f/k/a Reliant Resources, Inc. and its affiliates consistently have presented a common corporate image to customers in the United States and in Missouri through their marketing efforts and materials.

39.     Defendant Reliant Energy Services, Inc. is a Delaware corporation registered as a foreign corporation in good standing in Missouri during the Relevant Time Period with its principal place of business in Houston, Texas.  Reliant Energy Services, Inc. is wholly controlled and dominated during the Relevant Time Period by its parent, Reliant Energy, Inc., f/k/a Reliant Resources, Inc., a Delaware corporation with its principal place of business in Houston, Texas. Reliant Energy Services, Inc. is wholly controlled and dominated by defendant Reliant Resources, Inc. concerning both the conduct of it business generally within Missouri and in particular its

23

conduct in furtherance of defendants' unlawful arrangements, contracts, agreements, and combination and conspiracy. Reliant Energy Services, Inc. buys, sells, and transports natural gas in the United States and in Missouri.  As more fully described in Paragraph 56 below, in November, 2003, Reliant Energy Services, Inc. paid a $18 Million civil penalty to the United States Commodity Futures Trading Commission to settle charges of false reporting and attempted manipulation of natural gas prices, including charges of wash sales. In November, 2004, a former natural gas trader of Reliant Energy Services, Inc., Jerry A. Futch, was charged by the United States Department of Justice, U.S. Attorney's Office in the Southern District of Texas, in an indictment for reporting false trades to industry price compilers which used the reported trades to calculate *Inside FERC*'s index price of natural gas.

40.     Defendant Coral Energy Resources, L.P. is a Delaware limited partnership in good standing with its principal place of business in Houston, Texas.  Coral Energy Resources, L.P. is wholly controlled and dominated by Coral Energy Holdings, L.P., and is an affiliate of Shell Oil Company.  Coral Energy Resources, L.P. was one of the largest natural gas marketers in the United States and conducted natural gas marketing operations at eastern and western power and natural gas trading hubs for the Eastern and Western United States during the Relevant Time Period.  Coral Energy Resources sells 100% of its parent companies natural gas production.  Coral Energy Resources, L.P. regularly conducts business in Missouri.

41.     Defendant Coral Energy Resources, L.P. made arrangements, contracts, and agreements, and entered into a combination and conspiracy between the defendants which tended to prevent full and free competition in the trading and sale of natural gas, or which tended to advance or control the market prices of natural gas.  Coral Energy Resources, L.P.'s actions were intended to have, and did have, a direct, substantial and reasonably foreseeable effect on United States

24

commerce and on commerce in Missouri during the Relevant Time Period.  In furtherance of such unlawful arrangements, contracts, agreements, and combination and conspiracy, Coral Energy Resources, L.P.'s officer(s), director(s) and/or employee(s) agreed to arrangements, contracts, agreements, and a combination and conspiracy which tended to prevent full and free competition in the trading and sale of natural gas, or which tended to advance or control the market prices of natural gas that its affiliates sold in the United States and in Missouri.  During the Relevant Time Period and in furtherance of defendants' unlawful arrangements, contracts, agreements, and combination and conspiracy, Coral Energy Resources, L.P.'s officer(s), director(s), and/or employee(s) made strategic marketing policies and decisions concerning natural gas and the reporting of natural gas trade information to reporting firms for use in the calculation of natural gas price indices that affected the market prices of natural gas which Coral Energy Resources, L.P. sold in Missouri and elsewhere, and those policies and decisions were implemented on an operational level by Coral Energy Resources, L.P.'s employees in the United States and in Missouri.  As more fully described in Paragraph 56 below, in July, 2004, Coral Energy Resources, L.P. paid $30 Million in civil penalties to the United States Commodity Futures Trading Commission to settle charges of false reporting and attempted manipulation of natural gas prices.

42.  Defendant Xcel Energy, Inc., is a Minnesota corporation in good standing with its principal place of business in Minneapolis, Minnesota.  Xcel Energy, Inc., wholly controlled and dominated during the Relevant Time Period its subsidiary, E prime Inc., a Colorado corporation with its principal place of business in Denver, Colorado.  Xcel Energy, Inc., and its affiliates or divisions engaged in energy marketing and trading, and transportation, storage, and marketing of natural gas that regularly conducted business in Missouri during the Relevant Time Period.

43.     Defendant Xcel Energy, Inc., directly and through affiliates it dominates and controls, made arrangements, contracts, and agreements, and entered into a combination and conspiracy between the defendants which tended to prevent full and free competition in the trading and sale of natural gas, or which tended to advance or control the market prices of natural gas.  Xcel Energy, Inc.'s actions were intended to have, and did have, a direct, substantial and reasonably foreseeable effect on United States commerce and on commerce in Missouri, during the Relevant Time Period. In furtherance of such unlawful arrangements, contracts, agreements, and combination and conspiracy, Xcel Energy, Inc.'s officer(s) and/or director(s), agreed to arrangements, contracts, agreements, and a combination and conspiracy which tended to prevent full and free competition in the trading and sale of natural gas, or which tended to advance or control the market prices of natural gas which its affiliates sold in the United States and in Missouri.  During the Relevant Time Period and in furtherance of defendants' unlawful arrangements, contracts, agreements, and combination and conspiracy, Xcel Energy, Inc.'s officer(s) or director(s), made strategic marketing policies and decisions concerning natural gas and the reporting of natural gas trade information to reporting firms for use in the calculation of natural gas price indices that affected the market prices of natural gas which was sold, and those policies and decisions were implemented on an operational level by affiliates, such as E prime Inc., in the United States and in Missouri.

44.     Personal jurisdiction exists over Xcel Energy, Inc., based upon the activities of its corporate affiliates, in particular E prime Inc., that traded and sold natural gas in the United States and in Missouri during the Relevant Time Period.  Xcel Energy, Inc., and its affiliates consistently have presented a common corporate image to customers in the United States and in Missouri through their marketing efforts and materials.

26

45.     Defendant E prime Inc. is a Colorado corporation in good standing with its principal place of business in Denver, Colorado.  E prime Inc. is wholly controlled and dominated by its parent company, Xcel Energy, Inc., a Minnesota corporation with its principal place of business in Minneapolis, Minnesota.  E prime Inc. is wholly controlled and dominated by defendant Xcel Energy, Inc., concerning both the conduct of its business generally within Missouri and in particular its conduct in furtherance of defendants' unlawful arrangements, contracts, agreements, combination and conspiracy.  During the Relevant Time Period and in furtherance of defendants' unlawful agreements, officer(s) and/or director(s) of Excel Energy, Inc., made strategic marketing policies and decisions concerning natural gas and the reporting of natural gas trade information to reporting firms for use in the calculation of natural gas price indices that affected the market prices of natural gas which E prime Inc. sold in Missouri and elsewhere.  E prime Inc. provided during the Relevant Time Period natural gas marketing, storage and risk management services to industrial, commercial, and utility energy users and also engaged in energy trading in the United States and in Missouri.  As more fully described in Paragraph 56 below, in January, 2004, Xcel Energy, Inc., and E prime Inc., paid $16 Million in civil penalties to the United States Commodity Futures Trading Commission to settle charges of false reporting and attempted manipulation of natural gas prices.

46.     The unlawful activities of the alleged unlawful arrangements, contracts, agreements, combination and conspiracy set forth in this Amended Complaint For Damages have been committed by defendants and were ordered and performed by their officers, directors, agents, employees or representatives while actively engaged in the management, direction, control or transaction of defendants' business or affairs.  Various other persons, entities, companies and corporations not named as defendants, including some whose identities are presently unknown, participated as co-conspirators with defendants in the violations alleged herein and have made

27

statements and performed acts in furtherance of those violations in the United States and elsewhere that had a direct, substantial, and reasonably foreseeable effect on United States commerce and on commerce in Missouri.  The co-conspirators include, but are not limited to, Enron Energy Services, Inc.; Enron Power Marketing, Inc.; Calpine Energy Services, L.P. which paid a $1.5 Million civil penalty (January, 2004) to the CFTC; Cinergy Marketing & Trading, LP which paid a $3 Million civil penalty (November, 2004) to the CFTC; WD Energy Services Inc., f/k/a EnCana Energy Services, Inc., which paid a $20 Million civil penalty (July, 2003) to the CFTC; Enserco Energy, Inc., which paid a $3 Million civil penalty (July, 2003) to the CFTC; Entergy Koch Trading, L.P., which paid a $3 Million civil penalty (January, 2004) to the CFTC; Mirant, which paid a $12.5 Million civil penalty (December, 2004) to the CFTC; NRG Energy, Inc.; Sempra Energy, including affiliate Sempra Energy Trading, and their respective officers, directors, and employees.

## **NATURE OF THIS ACTION**

47.     Defendants and their co-conspirators during the Relevant Time Period (at least January 1, 2000 through October 31, 2002) marketed natural gas, including their own or their affiliates' production, to plaintiffs and other customers in Missouri, and throughout the United States in a multi-billion dollar industry.  The natural gas purchased by plaintiffs during the Relevant Time Period was deregulated pursuant to various statutory provisions. (*see*, The Natural Gas Policy Act of 1978 (NGPA), 15 U.S.C. § 3301(21) (1994) (first sales are defined in § 2(21)); Section 601(a)(1)(C) of the NGPA, as amended by the Natural Gas Wellhead Decontrol Act of 1989, Pub. L. No. 101-60 (no FERC jurisdiction over first sales); The Energy Policy Act of 1992, 15 U.S. Code § 3431 and pursuant to Federal Energy Regulatory Commission Order No. 547, 61 FERC 61281 (November 30, 1992), Order No. 636, 57 FERC 30939 (April 8, 1992), and Order No. 636-A, 57 FERC 36128 (August 12, 1992).

48.     Reporting firms compiled and published indices of natural gas prices for natural gas trading hubs throughout the United States during the Relevant Time Period.  These reporting firms divided the natural gas traders into groups, referred to as Desks.  Some of the Desks corresponded with geographic regions of the United States: the Gulf Coast, the West, the Northwest, the Northeast, and the Mid-continent Desks.  Missouri was included in the Mid-continent Desk.  The price compilers used prices and volume information in calculating indices of natural gas prices for various hubs throughout the United States.  The price compilers include Platts, a division of The McGraw-Hill Companies, which issues a monthly index for various natural gas hubs entitled *Inside FERC Gas Market Report* ("IFERC"), and a daily index for various natural gas hubs entitled Gas Daily. Other price indices which received false trade information included *National Gas Intelligence* ("NGI"), *Btu Daily*, *Gas Daily* and *Natural Gas Week*.

49.     The indices were calculated based upon market information, including volume and price information, collected by firms, like Platts, from market participants such as the defendants. Participants in the natural gas markets use these indices to price natural gas purchases and to settle commodity transactions.  Further, natural gas purchasers and futures traders refer to the prices published by the reporting firms for price discovery and for assessing price risks.  For example, an increase in the prices at a natural gas trading hub signals either stronger demand or weakened supply, and natural gas purchasers and futures traders take account of both price movements and changes in the supply/demand balance when conducting their purchasing and futures trading.  In fact, natural gas prices between trading hubs are highly correlated.

50.     During the Relevant Time Period, defendants engaged in a pervasive and widespread scheme to violate the Missouri Antitrust Law by knowingly delivering by telephone, by facsimile and via the Internet false or misleading or knowingly inaccurate reports concerning trade

29

information, such as certain trades that did not occur and certain actual trades in which the price and/or volume was not reported accurately, that affected the market prices of natural gas, and by manipulating the prices of natural gas by knowingly delivering false or misleading or knowingly inaccurate information about purported natural gas trades to reporting firms, such as Platts.  Further, defendants CMS Marketing Services & Trading Company, CMS Field Services, Dynegy Marketing & Trade, Reliant Energy Services, Inc., and Williams Energy Marketing & Trading have publicly admitted making wash trades and often bought and sold many times their needs in quick trading bursts which significantly increased the prices of natural gas in that market.  Both wash trades and churning activities by defendants affected or tended to affect the market prices of natural gas.

51.     During the Relevant Time Period, a substantial number of the purported natural gas trades defendants' knowingly delivered to *IFERC* for the defendants' trading desks (*e.g.*, the Gulf Desk, the Mid-Continent Desk, and the Northeast Desk) were false or misleading or knowingly inaccurate.  Further, defendants knowingly delivered hundreds of trades to *Gas Daily*, *NGI*, *Btu Daily*, and *Natural Gas Week* during the Relevant Time Period for their trading desks and a substantial number of those natural gas trades were false or misleading or knowingly inaccurate.

52.     Defendants knowingly delivered false or misleading or knowingly inaccurate information concerning trades that did not occur, submitted actual trades with altered volumes and/or prices, and/or failed to submit other actual trades all in an attempt to skew the price indices and thus, the price of natural gas.

53.     During the Relevant Time Period, defendants knowingly delivered false or misleading or knowingly inaccurate market information and omitted true information from the reports they sent to firms, such as Platts, to manipulate the natural gas price indices in physical and futures marketplaces to financially benefit defendants' trading positions.

30

54.     Defendants' conspiracy directly affected prices for natural gas, including their own or their affiliate's production, traded and sold in the United States and in Missouri.  The anticompetitive effect of defendants' illegal arrangements, contracts, agreements, combination and conspiracy was to distort and artificially inflate the prices that plaintiffs paid for natural gas.

55.     During the Relevant Time Period, the prices of natural gas sold to plaintiff and other class members in Missouri increased as a result of the defendants' unlawful arrangements, contracts, agreements, and combination and conspiracy.

56.     Defendants ONEOK Inc. and ONEOK Energy Marketing and Trading Company, L.P. paid $3 Million civil penalties in October, 2002 to the United States Commodity Futures Trading Commission to settle charges of false reporting of natural gas prices.  Defendants The Williams Companies and Williams Energy Marketing and Trading Company, Inc. paid $20 Million in civil penalties in July, 2003 to the United States Commodity Futures Trading Commission to settle charges of attempting to manipulate natural gas price indices. Defendants American Electric Power Company and AEP Energy Services, Inc. paid $30 Million in civil penalties in January 2005 to the United States Commodity Futures Trading Commission to settle charges of false reporting and attempted manipulation of natural gas prices, and AEP Energy Services, Inc. paid $30 Million in civil penalties in January 2005 to the United States Department of Justice. Defendants Duke Energy Corporation and Duke Energy Trading and Marketing Company, L.L.C. paid $28 Million in civil penalties in September, 2003 to the United States Commodity Futures Trading Commission to settle charges of false reporting and attempted manipulation of natural gas prices.  Defendant Dynegy Marketing & Trade and West Coast Power L.L.C. paid $5 Million in civil penalties in December, 2002 to the United States Commodity Futures Commission to settle charges of false reporting and attempted manipulation of natural gas prices.  Defendants El Paso Corporation and El Paso Merchant

31

Energy, L.P. paid $20 Million in civil penalties in March, 2003 to the United States Commodity Futures Trading Commission to settle charges of false reporting and attempted manipulation of natural gas prices. Defendants CMS Energy Corporation, CMS Marketing, Services & Trading Company and CMS Field Services paid $16 Million in civil penalties in November, 2003 to the United States Commodity Futures Trading Commission to settle charges of false reporting and attempted manipulation of natural gas prices. Defendants Reliant Energy and Reliant Energy Services, Inc. paid $18 Million in civil penalties in November, 2003 to the United States Commodity Futures Trading Commission to settle charges of false reporting and attempted manipulation of natural gas prices, including charges of wash sales. Defendant Coral Energy Resources, L.P. paid $30 Million in civil penalties in July, 2004 to the United States Commodity Futures Trading Commission to settle charges of false reporting and attempted manipulation of natural gas prices. Defendant E prime Inc. paid $16 million in civil penalties to the United States Commodity Futures Trading Commission to settle charges of false reporting and intentional manipulation of natural gas prices.

57.     Defendants' illegal conduct within the United States was intended to have, and did have a direct, substantial, and reasonably foreseeable effect upon business and commerce in the United States and in Missouri. In particular, as a reasonably foreseeable result of defendants' unlawful arrangements, contracts, agreements, and combination and conspiracy, prices paid for natural gas by plaintiffs in Missouri were distorted and artificially inflated.

## CLASS ACTION ALLEGATIONS

58.     This action is brought as a class action, pursuant to Missouri Supreme Court Rule 52.08, on behalf of a class of all persons and entities in Missouri defined as follows:

> Plaintiffs bring this action both on behalf of themselves and on behalf of a class consisting of all industrial and commercial direct purchasers of natural gas for their own use or consumption during the Relevant Time Period, and which gas was used

32

or consumed by them in Missouri.  Excluded from the Class are (a) entities that purchased natural gas for resale (to the extent of such purchase for resale); (b) entities that purchased natural gas for generation of electricity for the purpose of sale (to the extent of such purchase for generation); (c) defendants and their predecessors, affiliates and subsidiaries; and (d) the federal government and its agencies.

59.     Plaintiffs do not know the exact size of the class.  However, based upon the nature of the trade and commerce involved, plaintiffs believe that the total number of class members is substantial, and that class members are geographically dispersed throughout Missouri.  Therefore, joinder of all members of the class is not practicable.

60.     Plaintiffs' claims are typical of those to be asserted by the class.  Except as to the amount of damages that each class member has sustained, all other questions of law and fact are common to the class, including but not limited to the following:

(a)     Whether the defendants and their co-conspirators conspired and agreed among themselves to increase, advance or control natural gas price indices to financially benefit defendants' businesses;

(b)     The duration and extent of the defendants' combination and conspiracy;

(c)     Whether the defendants took steps to actively conceal their conspiracy;

(d)     Whether the defendants' conduct violated Mo. Rev. Stat. § 416.011, et seq.; and

(e)     Whether the defendants' conduct affected natural gas prices and caused injury to the business or property of plaintiffs and other members of the class and, if so, the amount of their damages.

61.     Plaintiffs, as representatives of the class, will fairly and adequately protect the interests of the class and have engaged counsel experienced and competent in litigation of this type. The interests of plaintiffs are coincident with, and not antagonistic to, those of the other members of the class.

33

62.     The questions of law and fact common to members of the class predominate over any questions affecting only individual members of the class.  Class action treatment is a superior method for the fair and efficient adjudication of the controversy in that, among other things, there is no interest by members of the class in individually controlling the prosecution of separate actions and it is desirable to concentrate the litigation of the claims made herein in a single proceeding in order to provide relatively small claimants with a forum in which to seek redress for this antitrust violation.  Whatever difficulties may exist in the management of the class action will be greatly outweighed by the class action procedure, including but not limited to providing claimants with a method for the redress of claims that may not otherwise warrant individual litigation.

63.     Moreover, defendants have acted on grounds generally applicable to the entire class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

## VIOLATIONS ALLEGED

64.     Beginning in January 1, 2000 and continuing through October 31, 2002, the exact dates being unknown to plaintiffs, defendants and their co-conspirators entered into and engaged in illegal arrangements, contracts, agreements, and combination and conspiracy in restraint of trade and commerce as alleged herein.  This combination and conspiracy restrained trade and commerce and prevented full and free competition in the United States, including Missouri, in violation of the Missouri Antitrust Law.

65.     The arrangements, contracts, agreements, and combination and conspiracy alleged herein consisted of a continuing agreement, understanding and concert of action among the defendants and their co-conspirators, the substantial terms of which included, but were not limited to, the following:

34

(a)     To agree to arrangements, contracts, agreements, and a combination and conspiracy among themselves made with a view or which tended to prevent full and free competition in the trading and sale of natural gas in the United States, including Missouri;

(b)     To agree to arrangements, contracts, agreements, and a combination and conspiracy among themselves which tended to increase, advance, manipulate, or control the market prices of natural gas in the United States, including Missouri;

(c)     To agree to arrangements, contracts, agreements, and a combination and conspiracy among themselves which tended to increase, advance, manipulate, or control the market prices of natural gas by agreeing to send to reporting firms, such as Platts, false and nonexistent trades and trade information for such natural gas in the United States, including Missouri; and

(d)     To affirmatively conceal the existence of their illegal understanding and agreement.

66.     For the purpose of forming and effectuating the aforesaid arrangements, contracts, agreements, and combination and conspiracy, the defendants and their co-conspirators – including, in particular, officers and employees of defendants' affiliates – participated in secret e-mails, telephone conversations and agreements in the United States in which misleading trade information, prices and price increases for natural gas as well as methods to conceal defendants' unlawful agreements were discussed and agreed upon.

## **EFFECTS**

67.     The defendants' aforesaid arrangements, contracts, agreements, and combination and conspiracy which were made with a view or which tended to prevent full and free competition, or to

35

increase, advance, manipulate, or control the market prices of natural gas have had the following effects on plaintiffs, among others:

(a) Prices charged to plaintiffs for natural gas were increased, advanced, manipulated, and controlled at artificially high and non-competitive levels;

(b) Full and free competition in the market for natural gas in the United States, including Missouri, was prevented, controlled, and restrained;

(c) The artificially inflated market prices for natural gas were passed on to plaintiffs;

(d) Plaintiffs have been deprived of the benefit of full and free competition and were damaged in their property or business by having paid more for natural gas than they would have paid in the absence of defendants' unlawful arrangements, contracts, agreements, and combination and conspiracy; and

(e) Plaintiffs have been deprived of the right to make risk management, resource allocation and other financial decisions in a full and free competitive market for natural gas.

## **FRAUDULENT CONCEALMENT**

68. Plaintiffs had no knowledge that the defendants and their co-conspirators were violating the provisions of the Missouri Antitrust Law as alleged herein, or of any facts which might have led to the discovery thereof. Plaintiffs only learned that defendants and their co-conspirators may have violated the provisions of the Missouri Antitrust Law shortly before filing their Petition For Damages. Plaintiffs could not have discovered any of the violations at an earlier time prior to this date by the exercise of due diligence because of the deceptive practices and techniques of secrecy employed by defendants and their co-conspirators to avoid detection of and fraudulently to conceal such violations. Moreover, plaintiffs were not aware of defendants' activities of reporting

false trade information and prices for natural gas due to the false statements and misrepresentations by defendants and their co-conspirators that their prices for natural gas were very competitive and independently determined.  Plaintiffs had no actual or imputed knowledge of defendants and their co-conspirators' contract, combination and conspiracy until shortly before filing their Petition For Damages.

69.    At all relevant times, defendants and their co-conspirators affirmatively concealed the existence of their illegal arrangements, contracts, agreements, combination and conspiracy and thereby tolled the statute of limitations.  Plaintiffs did not discover and could not have discovered defendants' unlawful conduct at an earlier date by the exercise of due diligence because defendants and their co-conspirators affirmatively and fraudulently concealed the existence of their arrangements, contracts, agreements, combination and conspiracy from plaintiffs by various acts, including the following:

(a)    Defendants and their co-conspirators conducted private, secret telephone conversations, e-mails, and discussions in the United States in order to confine knowledge of their unlawful arrangements, contracts, agreements, combination and conspiracy to a discrete group of individuals;

(b)    Defendants and their co-conspirators secretly coordinated the day-to-day conduct of the conspiracy, such as decisions regarding prices for natural gas and sending trade information to reporting firms;

(c)    Defendants' executives routinely and consistently destroyed records and notes of their unlawful telephone conversations, e-mails, discussions, and agreements to conceal their illegal conduct; and

37

(d)     Defendants and their co-conspirators falsely and fraudulently represented to *IFERC*, *Gas Daily*, and others that their prices and volumes for natural gas were honest, competitive, and independently determined.

## DAMAGES

70.     During the Relevant Time Period of the antitrust violations by defendants and their co-conspirators, plaintiffs purchased natural gas, and by reason of the violations alleged herein, paid more for natural gas than they would have paid in the absence of such antitrust violations.  As a result, plaintiffs have been injured.  Plaintiffs are seeking damages, including treble damages, for their injuries suffered during the Relevant Time Period, the exact dates being undetermined at this time.  The amount of damages sustained by plaintiffs is presently undetermined.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully pray:

(a)     That the Court determine and certify a direct purchaser and user class under the Missouri Supreme Court Rules, determine that plaintiffs are adequate and appropriate representative of the class, and order that reasonable notice of this action be given to other members of the class;

(b)     That the alleged arrangements, contracts, agreements, combination and conspiracy between the defendants and their co-conspirators be adjudged and decreed to be in violation of the Missouri Antitrust Law;

(c)     That defendants, their successors, their assignees, their subsidiaries and transferees, and their respective officers, directors, agents and employees, and all other persons acting or claiming to act on behalf thereof or in concert therewith, be perpetually enjoined and restrained from, in any manner, directly or indirectly, continuing, maintaining or renewing the previously

38

alleged arrangements, contracts, agreements, combination and conspiracy, understanding or concert of action, and from adopting or following any practice, plan, program or design having a similar purpose or effect in restraining competition in Missouri in the pricing of natural gas;

(d)     That a judgment be entered against defendants and in favor of plaintiffs for damages, including treble damages;

(e)     That plaintiffs be awarded the necessary costs of bringing suit, including reasonable attorney fees under R.S.Mo. §  416.121; and

(f)     That plaintiffs be awarded such other and further relief as this Court may deem necessary and appropriate.

## **JURY DEMAND**

Plaintiffs hereby demand trial by jury on all issues so triable.

Dated: January 14, 2009

Respectfully submitted,

*/s/ Gregory M. Bentz*
R. LAWRENCE WARD              MO #17343
JENNIFER GILLE BACON         MO #27432
GREGORY M. BENTZ              MO #33369
SHUGHART THOMSON & KILROY, P.C.
1700 Twelve Wyandotte Plaza
120 W 12th Street
Kansas City, Missouri  64105-1929
Telephone: (816) 421-3355
Telecopier: (816) 374-0509

39

R. DAN BOULWARE                  MO #24289
SHUGHART THOMSON & KILROY, P.C.
3101 Frederick Avenue
St. Joseph, Missouri 64506
Telephone:  (816) 502-3438
Telecopier:  (816) 279-3977

DONLAD D. BARRY                  KS #6250
BARRY LAW OFFICES, LLC
Donald D. Barry, Chartered
5340 S.W. 17th Street
P.O. Box 4816
Topeka, Kansas 66604
Telephone: (785) 273-3151
Telecopier: (785) 273-5115


ATTORNEYS FOR PLAINTIFFS

40

2426641.01