1
2
3
4
5
6
7
8
9
10
11
12

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| IN RE: WESTERN STATES WHOLESALE<br>NATURAL GAS ANTITRUST LITIGATION )<br>)<br>)<br>) | Base Case File No.<br>2:03-cv-01431-PMP-PAL |
| _____ )<br>)<br>THIS DOCUMENT RELATES TO:                        )<br>)<br>ALL ACTIONS                                      )<br>)<br>_____ ) | **ORDER**<br><br>(M/Enforce - Dkt. #1552)<br>(M/Compel - Dkt. #1557)<br>(M/Quash - Dkt. #1583) |

13       Before the court is Plaintiffs' Motion to Enforce Third-party Subpoenas and Memorandum in

14  Support (Dkt. #1552).  The court has considered the motion, supporting Declarations and Exhibits (Dkt.

15  ##1553, 1554, 1555), non-party The McGraw-Hill Companies, Inc.'s ("McGraw-Hill") Opposition

16  (Dkt. #1581), plaintiffs' Reply (Dkt. #1596), and the arguments of counsel at a hearing conducted

17  May 5, 2009.

18       During the hearing, counsel for plaintiffs advised the court that the parties had reached an

19  agreement regarding similar discovery from Intelligence Press, Inc., and provided a copy of the

20  agreement to the court for review.  Following the hearing, counsel for McGraw-Hill filed a

21  Supplemental Submission (Dkt. # 1613) asking that the court not consider the agreement reached with

22  Intelligence Press in deciding the parties' current dispute as Paragraph 8 of that agreement specifically

23  provides that the "parties shall not assert this agreement is a basis for, or argument to justify, seeking

24  production of materials from McGraw-Hill."  Additionally, McGraw-Hill asserts that it stands in a

25  significantly different position than Intelligence Press, Inc., *vis a vis*, this discovery dispute for a

26  number of reasons including the fact that McGraw-Hill did not produce documents in the In Re: Natural

27  Gas Antitrust cases.

28  / / /

1    The court also received a letter from counsel for Intelligence Press, Inc., indicating that although

2    Intelligence Press, Inc., agreed to produce certain information requested in the subpoena served by the

3    parties, it continued to believe the reporter's privilege protects the information from disclosure.  The

4    agreement reached with the parties in this action was solely for the purposes of compromising a

5    discovery dispute, and counsel for Intelligence Press, Inc., urges the court not to use its compromise in

6    addressing the merits of the dispute concerning McGraw-Hill before the court.

7    Also before the court is defendants' Motion to Compel Production of Documents from Non-

8    Party McGraw-Hill (Dkt. #1557).  The court has considered the motion, McGraw-Hill's Opposition

9    (Dkt. #1582), Declaration in support of the opposition (Dkt. #1585), Supplemental Declaration (Dkt.

10   #1594), defendants' Reply (Dkt. #1593), and the arguments of counsel at the hearing on May 5, 2009.

11   Finally, before the court is non-party McGraw-Hill's Cross Motion to Quash Non-Party

12   Subpoenas and for Other Relief (Dkt. #1583) which is supported by the Declaration of counsel and

13   supporting Exhibits (Dkt. #1584), Declaration of Charles J. Cicchetti, Ph.D., (Dkt. #1586), defendants'

14   Opposition (Dkt. #1595), McGraw-Hill's Reply (Dkt. #1606), and the arguments of counsel at the

15   hearing conducted May 5, 2009.

16                                                 **BACKGROUND**

17   This Multi-District Litigation ("MDL") action involves state law antitrust cases brought in

18   Missouri, Kansas, Colorado, and Wisconsin which were removed to federal court and consolidated in

19   this district for pretrial proceedings.  Additionally, federal antitrust claims brought in federal courts in

20   Illinois, Wyoming, and Oklahoma have been transferred and consolidated in this MDL for pretrial

21   proceedings.  The plaintiffs are commercial and industrial purchasers of natural gas who allege that the

22   defendant natural gas trading companies and certain of their corporate affiliates conspired to manipulate

23   the price of natural gas in the United States between January 2000 and October 2002.  One of the

24   plaintiffs, Multiut, alleges market manipulation between 1998 and 2002.  Plaintiff Sinclair Oil

25   asserts manipulation occurred between 1999 and 2002.  The plaintiffs allege defendants manipulated

26   the price of natural gas by engaging in and reporting churning, wash sales, and submitting false reports

27   about gas trading activities to the trade publications that published widely-used price indices, including

28   Inside FERC Gas Market Report ("Inside FERC") and Gas Daily which are published by Platts, a

                                                         2

division of McGraw-Hill.  All three motions involve the parties' attempts to obtain trading data received and reported by Platts.

**I.     Plaintiffs' Motion to Enforce (Dkt. #1552)**

In November 2008, the plaintiffs served a subpoena *duces tecum* on McGraw-Hill in the Southern District of New York, seeking production of four categories of documents:

> **DOCUMENT REQUEST NO. 1:**
>
> All data used for constructing PLATTS' natural gas published prices and indices during the period January 1, 1998 to December 31, 2003 ("TIME PERIOD").  These data should include price, volume, date of each trade, and should IDENTIFY any party or counterparty to each trade who is also a NAMED PARTY in this action.  Data produced in electronic format need not be produced in any other format.
>
> **DOCUMENT REQUEST NO. 2:**
>
> All public DOCUMENTS CONCERNING PLATTS' methodology in calculating natural gas prices and indices for publication the TIME PERIOD.  This includes all editions or iterations of any such documents pertaining to the TIME PERIOD.
>
> **DOCUMENT REQUEST NO. 3:**
>
> All publications by PLATTS containing natural gas prices or indices during the TIME PERIOD.  Data produced in electronic format need not be produced in any other format.
>
> **DOCUMENT REQUEST NO. 4:**
>
> All DOCUMENTS produced by PLATTS in compliance with the April 18, 2006 order issued by Judge Victor Marrero in *In Re Natural Gas Commodities Litigation*, 235 F.R.D. 241 (S.D.N.Y. 2006).

The defendants have also subpoenaed documents from McGraw-Hill and have requested even broader categories of information as discusses in Section II, *infra*.  McGraw-Hill served objections to the subpoenas.  The plaintiffs initially sought to enforce their subpoena in the Southern District of New York where it was issued.  However, Magistrate Judge Peck transferred the issue to this court for resolution.

**A.     The Plaintiffs' Position**

The plaintiffs' motion to enforce recites a litany of civil, criminal, and administrative proceedings in which findings have been made that the defendants engaged in price manipulation by

1  one or more of the methods the plaintiffs claim occurred in this action.  Plaintiffs rely on published

2  findings and a March 2003 report prepared by the staff of the Federal Energy Regulation Commission

3  ("FERC"), finding defendants manipulated natural gas prices through data reported to McGraw-Hill's

4  published indices in the western United States.  The FERC report also found evidence of manipulation

5  of natural gas prices through data reported to the published indices all over the United States.  This data

6  was provided to McGraw-Hill by the defendants and other natural gas trading companies over the

7  phone, by fax, and e-mail.  Plaintiffs assert the information subpoenaed from McGraw-Hill is needed to

8  prove their case because the defendants do not have complete records of their reports to the trade

9  publications.  The defendants in this case have admitted their records of data reported to the trade

10  publications for the relevant period are incomplete.  Additionally, the plaintiffs have reviewed the

11  records the defendants have produced in discovery in this case and have identified significant gaps in

12  the information needed to prove this case.  Plaintiffs also rely upon findings made by courts in

13  published decisions in other districts in similar cases that the data the natural gas defendants have been

14  able to produce is incomplete.

15  Plaintiffs' experts, Dr. Michael Harris, Ph.D., and Dr. Mark Dwyer, Ph.D., have submitted

16  declarations in support of plaintiffs' motion for class certification which describe the analysis they

17  intend to perform to establish the impact that defendants' alleged manipulation of the natural gas

18  markets had on putative class members.  Both experts provided analysis for plaintiffs in the In Re:

19  Natural Gas Commodities Litigation, 235 F.R.D. 241 (S.D.N.Y. 2006), and intend to perform similar

20  analysis in this action.  To perform their analysis, plaintiffs' experts require: (1) information provided to

21  McGraw-Hill by defendants and other natural gas traders, and (2) data from McGraw-Hill as to how

22  they use the information to create the indices.  Because the defendants do not have comprehensive

23  records, only Platts is in a position to provide plaintiffs with a complete and accurate record of

24  defendants' reports of pricing and volume information and the manner in which that information was

25  used to calculate index prices.

26  McGraw-Hill objected to the subpoena, asserting the materials subpoenaed are protected by

27  New York's qualified reporter's privilege.  Plaintiffs assert that they can easily meet the three-part test

28  articulated by the Second Circuit in determining whether materials subpoenaed from a reporter are

4

1   protected.  That test requires the parties seeking materials protected by the qualified reporters privileged

2   to make a clear and specific showing that the information is: (1) highly material and relevant;

3   (2) necessary or critical to the maintenance of the claim; and (3) not obtainable from other sources.

4   In re: Natural Gas Commodities Litig., 235 F.R.D. at 244 (citing United States v. Cutler, 6 F.3d 67, 71

5   (2d Cir. 1993) (internal quotations omitted).  The plaintiffs, therefore, ask the court to overrule

6   McGraw-Hill's objections to the subpoena and order that it comply so that the plaintiffs and their

7   experts can complete discovery and move this case toward resolution.

8            **B.    McGraw-Hill's Opposition**

9            McGraw-Hill opposes the plaintiffs' motion because the subpoena seeks production of

10   confidential news gathering materials protected by the reporter's privilege.  McGraw-Hill asks that the

11   court either deny the motion to enforce or limit production on a case-by-case basis after plaintiffs in

12   each consolidated action make a specific showing that the information requested is both necessary and

13   critical to their individual case and unavailable from other sources.  Counsel for McGraw-Hill has

14   attached a proposed protocol for this purpose in its opposition papers.  McGraw-Hill argues that the

15   information the plaintiffs seek is protected by the reporter's privilege which is designed to avoid

16   disruption to the flow of information provided to prepare the indices and that its ability to maintain the

17   confidentiality of the information is critical to convincing energy companies to voluntarily provide their

18   proprietary and confidential trade data underlying the indices.

19            McGraw-Hill asserts that this case is substantially different from the In Re: Natural Gas

20   Comms. Litig. (or "NYMEX") case in which Magistrate Judge Peck found that the reporter's privilege

21   had been overcome for certain documents a different set of plaintiffs sought.  McGraw-Hill contends

22   there are "dispositive differences" between the application for privileged materials plaintiffs obtained in

23   the NYMEX litigation and the plaintiffs' subpoena in this case.  First, the NYMEX litigation did not

24   involve antitrust claims as these consolidated cases do.  Second, the parties in this case are asking for

25   more information than the NYMEX plaintiffs did.  Third, the NYMEX court ordered the production of

26   only a small subset of information that was requested.  Fourth, the requesting party in NYMEX made a

27   particularized showing of why a specific subset of data sought was necessary for its action.  McGraw-

28   Hill also contends that the plaintiffs' motion to enforce establishes there are a "plethora of other

1  avenues they could use to obtain the information they hope to glean from McGraw-Hill's privileged

2  materials."

3  McGraw-Hill emphasizes that the subpoenas served in this case are unprecedented in scope and

4  that no litigant has previously requested trade data for all natural gas indices published nationwide for a

5  six-year period. The opposition, which is supported by the declaration of Larry Foster, the Global

6  Editorial Director, Power for Platts, outlines how Inside FERC has historically reported on prices in the

7  natural gas market. Only original data is used by Platts reporters. Id. at ¶ 5. Platts' reporters rely on

8  market participants to voluntarily share details of their trading. Id., ¶ 9. Market participants consider

9  their trade data proprietary and do not normally disclose it for fear they will be placed in a competitive

10 disadvantage. Id., ¶ 11. Platts goes to great lengths to maintain the security of trade data it collects to

11 earn and maintain the trust of its sources. Id., ¶ 12. Platts' relationships with a wide range of sources

12 and its market knowledge and expertise has developed its reputation as an unbiased source of credible

13 and reliable pricing information. Id., ¶ 13. This reputation has helped to convince sources to provide

14 confidential and proprietary trade data. Id. Platts has consistently enforced the reporter's privilege. Id.

15 The ability to assure sources of confidentiality, coupled with Platts' reputation for integrity, objectivity,

16 and independence, is indispensable for Platts to continue to obtain the information on which its price

17 assessments are based. Id., ¶ 11.

18 McGraw-Hill acknowledges that over the last several years, numerous private litigants and

19 governmental regulators have brought civil proceedings arising out of allegations that energy companies

20 provided false reports to Platts in an attempt to manipulate the index prices. However, McGraw-Hill

21 asserts that for the most part, these proceedings have been aimed at individual companies and did not

22 involve claims defendants conspired with one another to manipulate prices. Platts and its personnel

23 have been as cooperative with government agencies and private litigants as possible but have required

24 them to make a necessary showing to set aside the privilege before providing information. McGraw-

25 Hill notes that the parties initially tried to obtain the information they seek by serving a subpoena on

26 counsel in the NYMEX litigation. Counsel for plaintiffs in this action filed a motion to modify the

27 NYMEX protective order which prohibits disclosure of trade publication data produced in that case.

28 Judge Peck rejected the plaintiffs' arguments, finding that the fact the NYMEX plaintiffs had made a

1    showing sufficient to overcome the press privilege in the NYMEX action was not a reason to give the

2    parties in this MDL case the information produced subject to the protective order.  Plaintiffs also sought

3    to enforce the subpoena in the Southern District of New York at the same conference before Judge

4    Peck at which the plaintiffs sought modification of the NYMEX protective order.  McGraw-Hill

5    acknowledges that Judge Peck exercised his discretion to allow the MDL court to resolve the subpoena.

6    However, Judge Peck's discretion was exercised with the caveat that the reporter's privilege law of the

7    Southern District of New York and Second Circuit Court of Appeals would apply to the resolution.

8          Counsel for McGraw-Hill argues that the reporter's privilege requires a clear and specific

9    showing that the information requested is highly material and relevant, necessary or critical, and not

10   obtainable from other available sources.  The showing necessary to overcome the reporter's privilege is

11   fact-specific and must be made on a case-by-case basis.  Thus, the fact that courts in other jurisdictions

12   have ordered production of trade publication data is not determinative of this dispute.  Plaintiffs' mere

13   suspicion of a conspiracy is insufficient to make this clear and specific showing.  Additionally, this

14   subpoena is overly broad because the plaintiffs request all source data for all hubs for a six-year period

15   of time.  McGraw-Hill contends that before production is ordered, the plaintiffs should be required to

16   demonstrate that: (1) a conspiracy existed between a defendant and another energy company regarding

17   trading at a particular hub in a particular month; (2) at least one defendant provided Platts with false

18   trades at that hub for that month in furtherance of the conspiracy; and (3) plaintiffs purchased gas based

19   on Platts' index for that hub in that month.  The plaintiffs in this case have not come close to making

20   the showing that the plaintiffs made which resulted in the production in the NYMEX case.  McGraw-

21   Hill asserts that the March 2003 FERC report concluded that although there were systematic efforts to

22   bias data reported to the trade publications, the energy companies did so for their own separate financial

23   benefit.  Thus, plaintiffs should be required to make a far greater showing of any conspiracy before

24   obtaining the data they seek.

25          McGraw-Hill disputes that plaintiffs' expert, Dr. Harris, may use the information plaintiffs seek

26   to create a set of "but-for" indices for reasons set forth at length in the opposition papers.  McGraw-Hill

27   also suggests that because Intelligence Press has agreed to produce data, this obviates the need for

28   McGraw-Hill's data.  Additionally, McGraw-Hill asserts the plaintiffs have not exhausted alternative

sources of information by attempting to obtain the requested information from the defendants and other non-defendants.  Finally, McGraw-Hill argues that the reporter's privilege has not been waived because the defendants in these consolidated actions have served their own subpoena.  McGraw-Hill represents that <u>Inside FERC</u> has at least 100 sources who are not named defendants in these actions who have not waived confidentiality.  Additionally, McGraw-Hill relies on a line of cases holding that the journalist is the holder of the privilege rather than the source.  Assuming *arguendo* that the defendants waiver of the privilege means the data is no longer "confidential," the reporter's privilege still protects McGraw-Hill from compelled disclosure of non-confidential sources and news gathering material.

If the court is inclined to grant the motion to enforce the subpoena, counsel for McGraw-Hill suggests a comprehensive two-phase process for requiring the plaintiffs to make a specific showing on a case-by-case basis that the materials are needed.  McGraw-Hill also asks that a separate protective order in the form attached as Appendix "B" to its opposition be entered to limit the use of McGraw-Hill's privileged documents to the particular case for which plaintiffs have shown the information requested is both necessary and critical to their particular case.

## C.   <u>Plaintiffs' Reply</u>

Plaintiffs reply that they have made the necessary showing to overcome the reporter's privilege at issue here.  Platts' privilege is qualified, not absolute, under applicable Second Circuit authority, and McGraw-Hill has not previously asserted otherwise.  Plaintiffs cite correspondence between counsel for McGraw-Hill, Carolyn Foley, and counsel for plaintiffs, Gary McCallister, referring to the subpoenas as seeking information protected by a qualified reporter's privilege.  Additionally, plaintiffs cite Ms. Foley's arguments before Judge Peck at the February 20, 2009 hearing that she understood Southern District of New York and Second Circuit law applied.  Finally, plaintiffs contend that Judge Peck, who referred this dispute to the undersigned, stated on the record that he understood Second Circuit law and Southern District law on the reporter's privilege would apply to this dispute.

Plaintiffs argue that they are not required to first prove the existence of collusion or collective activity among the defendants at particular hubs before they are entitled to Platts' data as a matter of "black letter" discovery law.  Here, the plaintiffs have alleged a nationwide conspiracy to manipulate published index prices at all hubs and that price manipulation at any one hub affects prices at hubs

throughout the country.  Even if the data itself does not prove concerted action, it is still relevant and

discoverable for purposes of showing the nature and extent of the manipulation of index prices, the

impact of that manipulation, and the ultimate measure of damages.  Whether plaintiffs can ultimately

prove their claims is not relevant to analysis of whether the discovery should be allowed.  Plaintiffs

emphasize that they are not seeking information about Platts' editorial discretion, only the actual trade

data received from the defendants, together with the reported trade data McGraw-Hill possesses.

Plaintiffs insist that the subpoena does not seek confidential source information because the defendants

in this case have waived any confidential source treatment, and the plaintiffs are amenable to a protocol

to mask the identities of non-defendant entities who provided information.

**II.    Defendants' Motion to Compel (Dkt. #1557)**

Defendants issued the subpoena to McGraw-Hill on September 5, 2008, requesting production

of data from January 1, 2000 to October 31, 2002.  Defendants' subpoena seeks production of eight

categories of documents described as follows:

1.    DOCUMENTS sufficient to describe each TRADE REPORT made during the RELEVANT PERIOD by any NAMED PLAINTIFF.

2.    DOCUMENTS sufficient to describe each TRADE REPORT made during the RELEVANT PERIOD by Kaztex Energy Management, Inc.

3.    DOCUMENTS sufficient to describe each TRADE REPORT made during the RELEVANT PERIOD by any NATURAL GAS MARKET PARTICIPANT.

4.    DOCUMENTS sufficient to show the identity of the person or entity who made each TRADE REPORT referenced in Requests 1 through 3, above.

5.    All data, reports, studies, or analyses RELATING TO TRADE REPORTS shared with or provided to any agency or office of the United States Government, including but not limited to any studies of analyses performed in connection with proceedings against any current or former employee of any defendant in these actions.

6.    DOCUMENTS sufficient to show the identity of the persons or entities that subscribed during the RELEVANT PERIOD to YOUR publications regarding natural gas price indices.

7.    All transcripts of testimony of any of your employees in any litigation concerning natural gas price index reporting during the

RELEVANT PERIOD.  This request includes, without limitation, testimony at trials, depositions, or hearings in civil, criminal and administrative proceedings.

8.      All affidavits submitted by YOU or YOUR employees in connection with any proceeding described in Request 7.

Defendants claim that much of the information requested in the subpoena has been ordered produced by McGraw-Hill in other litigation in which the courts have found that plaintiffs have made a sufficient showing to overcome the reporter's privilege.  Defendants believe McGraw-Hill provided nationwide data, or at least multi-hub data, to the CFTC based on their reading of the court's decision in the matter of In re Application to Enforce Administrative Subpoena of the United States Commodity Futures Trading Commission v. The McGraw-Hill Companies, Inc. ("CFTC"), 390 F. Supp.2d 27, 36 (D.D.C. 2005).  The defendants' motion affirmatively waives any claim of confidential source treatment under the reporter's privilege in this MDL proceeding for the information sought, concluding that the protective order in place in this case will preserve confidentiality.  Defendants also assert that by filing their motion, the plaintiffs waived any claim of privilege concerning data they reported to McGraw-Hill.

Defendants claim that the first four categories of document requests which seek the gas price and volume reports that McGraw-Hill used to construct natural gas price indices for its two publications, Inside FERC and Gas Daily raise the reporter's privilege issue.  However, requests 5, 7, and 8 consist of a mixed category of material, some of which is protected by the reporter's privilege and other of which is not.  These requests seek production of data, reports, and materials provided to the United States and transcripts of testimony in litigation concerning natural gas price index reporting which only raise a reporter's privilege issue to the extent that responsive materials contain the data described in the first four requests.

Finally, defendants are requesting the production of documents sufficient to show the identity of persons or entities that subscribed to McGraw-Hill publications regarding natural gas price indices during the relevant period which defendants claim do not implicate the reporter's privilege.  To the extent old subscription lists have any remaining commercial value, defendants have offered to make them and other materials produced by McGraw-Hill subject to the protective order in this case.  The

10

1  subscriber lists are asserted to be the only way the defendants can identify putative class members who

2  received sufficient notice of wide-spread information in the industry about gas price manipulation

3  investigations within the applicable statute of limitations which would bar their claims in this case.

4       Defendants argue that the trade data reported to McGraw-Hill is highly material and relevant to

5  plaintiffs' claims that during the relevant period defendants violated various state antitrust laws by

6  conspiring to raise natural gas prices by manipulating the prices of natural gas by knowingly delivering

7  false or misleading or inaccurate information about purported natural gas trades to reporting firms such

8  as Platts and by making wash trades that increased the price of natural gas.

9       Defendants contend that to prevail on their antitrust claims, plaintiffs must prove that defendants

10  conspired to give false trade reports to McGraw-Hill, that these reports raised the index prices reported

11  by McGraw-Hill, and that the index prices caused injury.  Although defendants do not believe plaintiffs

12  can make this showing, plaintiffs' experts claim that they can reconstruct index prices from price

13  reports.  Because plaintiffs' experts claim that they can reconstruct the price indexes, defendants claim

14  they need full unmasked data for all sources providing trade data to rebut plaintiffs' experts.  They also

15  need full data for their own reports because they do not have them and need to identify their correctly

16  reported wholesale transactions.  Defendants cite E. & J. Gallo Winery v. Encana Corp., 503 F.3d 1027

17  (9th Cir. 2007), for the proposition that correctly reported wholesale transactions cannot be included in

18  plaintiffs' damage evaluations because they are "market-based wholesale rates subject to FERC's

19  jurisdiction" and the filed rate doctrine bars their use.  Id. at 1044.

20       Defendants seek full data from all sources to determine whether "the number of non-FERC-

21  authorized rates included in the indices was de minimis compared to the number of FERC-authorized

22  rates," and, if not de minimis, to determine the amount of the impact.  Defendants claim they will use

23  the data to show that the reporting patterns of all market participants are not consistent with a

24  nationwide conspiracy.  They also seek the documents to show that some potential class members may

25  have engaged in conduct plaintiffs claim is illegal.  Without the production of all trade date reports

26  submitted during the relevant period and the identification of entities who submitted these reports, the

27  defendants state they will be severely prejudiced by being unable to fully rebut claims of the existence

28  of a conspiracy and its purported impact.  Additionally, defendants claim that McGraw-Hill is the only

1    entity that has all of the necessary information because many of the market participants who reported

2    prices to McGraw-Hill have either not retained this information, do not have reasonable access to it, or

3    reported prices over unrecorded phone lines.  Finally, because plaintiffs claim that gas price indices

4    published by McGraw-Hill were impacted by their reports, the best evidence of this claim is whatever

5    prices are in McGraw-Hill's files, not prices that may be in the defendants' files.  Defendants claim

6    there is simply no other possible source for this evidence.

7            The defendants agree with the plaintiffs that Judge Peck transferred the issue of enforcing the

8    subpoenas issued by both plaintiffs and defendants in this case to this court, finding it was in a better

9    position to balance the need for information in this case.  Defendants also agree that Judge Peck

10   referred this matter with the caveat that "Second Circuit law and Southern District law under it is

11   applicable."  Houlihan Declaration, ¶ 4, Exhibit "3" (Transcript of 02/20/09 Hearing before Magistrate

12   Judge Peck), 43:10-22.

13           Defendants assert that they can meet the strict standard to compel production of confidential

14   information protected by the qualified reporter's privilege.  However, defendants claim that most of

15   the materials requested are not confidential because the data is now over seven years old, has no

16   relevance to current gas market conditions or prices, and that much of the information originated from

17   the defendants who have all waived their source confidentiality protection.  Citing Gonzales v. NBC,

18   194 F.3d 29, 35-36 (2d Cir. 1998), the defendants argue that "the showing needed to overcome the

19   privilege is less demanding" for non-confidential information and that a litigant is entitled to the

20   requested discovery if it "can show that the materials at issue are of likely relevance to a significant

21   issue in the case, and are not reasonably obtainable from other available sources."

22       **B.    McGraw-Hill's Opposition**

23           In addition to arguments raised in opposition to plaintiffs' motion to compel, McGraw-Hill

24   argues that the defendants' subpoena seeks to compel production of even broader categories of

25   documents without making any showing "particular to any of their cases."  McGraw-Hill asserts that

26   the defendants' requests seek a volume of data greater than McGraw-Hill has ever been compelled to

27   produce in any civil case anywhere and that defendants have offered nothing more than "abstract

28   rationales" for their need for these documents.  McGraw-Hill finds it especially outrageous that

12

1   defendants have requested its subscriber list because its production would interfere with the First

2   Amendment rights of both McGraw-Hill and its subscribers.  McGraw-Hill questions the *bona fides* of

3   the motives underlying the defendants' request and suggests that subscriber information is "wholly

4   unnecessary to this suit."

5          Counsel for McGraw-Hill contends that when it received the defendants' subpoena, it engaged

6   in good faith negotiations to attempt to resolve this dispute without court intervention but that

7   defendants only provided blanket conclusory statements concerning their need for the information

8   insufficient to overcome the reporter's privilege.  McGraw-Hill claims that the defendants' motion to

9   compel confirms the alleged need for its documents is "speculative and premature" and demonstrates

10  that the subpoena is "overbroad in the extreme" and is not "the targeted request required under the

11  reporter's privilege law."  McGraw-Hill points out that in the NYMEX case, none of the defendants'

12  requests for data from McGraw-Hill were granted although the court compelled production of certain

13  data to the plaintiffs which was made available to the defendants.  McGraw-Hill finds this distinction

14  significant because defendants' subpoena is far broader than the plaintiffs' subpoena and based on

15  "abstractions and hypotheticals" about how defendants may rebut what plaintiffs may claim after they

16  use the data plaintiffs receive.

17         McGraw-Hill disputes that because the data is seven years old, it is no longer subject to the

18  reporter's privilege.  It also disputes that because ten of the defendants waived their source

19  confidentiality protection that it should be required to produce data for all 100 separate sources that

20  reported to Platts from 2000 through 2002.  The vast majority of the data requested by the defendants

21  was not provided by any source purporting to waive the privilege in defendants' motion to compel.

22  McGraw-Hill reiterates that the reporter's privilege is intended to protect the press, not individual

23  sources and is designed primarily to protect the free flow of information to the press.  The defendants

24  have not made the fact specific showing necessary to overcome the reporter's privilege by establishing

25  that the information sought is "highly material and relevant" and "necessary or critical" to the

26  defendants.  McGraw-Hill accuses the defendants of asking for "everything" rather than seeking a

27  narrowly-tailored document request to information critical to their defense.

28  ///

1      McGraw Hill acknowledges that defendants should have an opportunity to rebut plaintiffs'

2  evidence.  However, because the plaintiffs have not yet made any showing that defendants' false

3  reporting had any price impact or the existence of a nationwide conspiracy, defendants do not need

4  "McGraw-Hill's entire universe of documents to rebut arguments that may never be made."

5      McGraw-Hill objects to producing unredacted data based on defendants' speculation plaintiffs

6  themselves may have conspired to provide false reports to McGraw-Hill and, therefore, should be

7  precluded from recovering damages.  McGraw-Hill suggests that if the defendants are concerned about

8  this possibility, they should argue that the class of plaintiffs should be limited to exclude companies

9  who reported to Platts, reported false information to Platts, or were part of a conspiracy to provide false

10  information to Platts rather than require Platts to turn over its trade reports for over 100 reporting

11  companies who have not waived confidentiality.  McGraw-Hill points out that defendants can obtain

12  this information directly from the plaintiffs and that defendants have made no showing that they have

13  tried to gather this information from any other source.

14      McGraw-Hill also argues that because Intelligence Press has agreed to produce trade data used

15  in compiling its own indices, the defendants cannot show its data is necessary or critical for their

16  defense.  McGraw-Hill suggests that the defendants must exhaust their use of Intelligence Press data

17  first, and if gaps are found, then provide McGraw-Hill with a list of reported locations and specific

18  dates for which information is lacking.

19      McGraw-Hill accuses the defendants of bad faith because they are currently resisting a motion

20  to compel by plaintiffs to produce some of the very data they are seeking from McGraw-Hill.  Even in

21  the absence of a reporter's privilege, the defendants are not entitled to shift the burden of discovery to

22  McGraw-Hill instead of searching their own records for data reported to Platts.  Only after completing a

23  search of their own files should they be entitled to request documentation from Platts to fill in identified

24  gaps.

25      McGraw-Hill objects to producing prior testimony, affidavits, and productions to governmental

26  agencies because much of that information is protected by confidentiality orders in other cases.  The

27  defendants should be required to seek specific documents and testimony directly and may not attempt to

28  / / /

1  circumvent protective orders in other cases by seeking the materials from McGraw-Hill.  However, in a

2  footnote, McGraw-Hill agrees to produce documents responsive to requests 5, 7, and 8 that are public.

3       Finally, McGraw-Hill argues that setting aside the reporter's privilege, the defendants' subpoena

4  should be quashed as burdensome.  Platts is a non-party and asserts that as presently worded, the

5  subpoena requires production of confidential data relating to tens of thousands of transactions.

6  Locating, assembling, and reviewing three years of data used to create the indices defendants seek will

7  require a significant time commitment from Platts personnel.  Counsel for Platts cites arguments raised

8  by the defendants in this case in resisting the plaintiffs' attempt to obtain nationwide discovery to

9  support their claims of burden.  Platts points out that the court in <u>Gallo</u> found the subpoena to McGraw-

10  Hill for production of data from the Henry Hub and hubs in California was unduly burdensome.

11       If the court does not deny the defendants' motion to compel *in toto*, McGraw-Hill requests that

12  the court adopt the approach taken in the NYMEX case for phased production.  Because the plaintiffs

13  have the burden of demonstrating the existence of a conspiracy and any false reporting, McGraw-Hill

14  urges the court to limit enforcement of defendants' subpoena "by the extent to which the Plaintiffs'

15  Subpoena is enforced."  If defendants need additional targeted information not requested by the

16  plaintiffs, defendants should be required to provide a particularized list of requests to McGraw-Hill of

17  data needed from a particular hub to rebut plaintiffs' claims of false reporting at that hub.

18       **C.    Defendants' Reply**

19       Defendants concede that the reporter's privilege applies to the data they have requested but

20  reiterate that they have made the required showing to obtain it.  Defendants dispute that they are

21  required to make "unreasonable and futile attempts" to obtain data from other sources before meeting

22  the exhaustion requirement.  Defendants opposed plaintiffs' motion to compel because it would be

23  overly burdensome on them to have to sift through tens or hundreds of thousands of recorded phone

24  calls or attempt to restore three years of e-mail backup tapes and produce this data when the search

25  could not assure complete data.

26       Defendants also dispute that the First Amendment applies to subscriber lists which are

27  commercial in nature.  Defendants point out that all of the cases cited by McGraw-Hill, objecting to

28  production of subscriber lists on First Amendment grounds involve cases in which the government was

15

1    the party requesting documents.  Defendants assert that federal courts have repeatedly held that the First

2    Amendment does not protect the subscriber lists of commercial enterprises like McGraw-Hill, citing

3    U.S. v. Bell, 414 F.3d 474, 485 (3d Cir. 2005).

4         Defendants argue that McGraw-Hill's proposal for making the required showing imposes an

5    unreasonable and unworkable progression on discovery which would involve future motions to compel

6    in a never ending process.  Defendants seek nationwide data "so they can contextualize, and properly

7    rebut" plaintiffs' allegations.  Defendants agree with McGraw-Hill's expert, Dr. Cicchetti, assertion that

8    plaintiffs' theories of market-wide impact are suspect but argue they must be allowed to demonstrate

9    the weakness of plaintiffs' case with access to the data.  Defendants need unmasked data because this is

10   a class action with large numbers of potential class members who have not yet been identified.

11   Defendants dispute that the data from McGraw-Hill is cumulative to Intelligence Press data because the

12   plaintiffs allege that class members purchase natural gas at prices that were tied to, or affected by, either

13   or both McGraw-Hill and Intelligence Press' published indices.  Some class members purchased natural

14   gas at prices tied to McGraw-Hill indices and others based on prices tied to Intelligence Press' indices.

15   Nationwide data is needed, as Dr. Kalt's affidavit explains, to show there was no overarching

16   nationwide conspiracy and that any misreporting was uncoordinated, consistent with unilateral conduct,

17   and engaged in by non-defendants, as well as defendants.

18   **III.    McGraw-Hill's Cross Motion to Quash (Dkt. #1583)**

19        Acknowledging it is making an unusual request, McGraw-Hill asks the court to: (1) quash the

20   subpoenas issued by the plaintiffs and defendants in these consolidated actions that present no federal

21   question; (2) quash the subpoenas issued by the plaintiffs and defendants in the remaining actions

22   without prejudice to renewal once they are transferred back to the transferor courts; and (3) in the event

23   the court compels disclosure over its objections, to enter a protective order in the form attached as

24   Appendix "B" to its motion to quash.

25        **A.    McGraw-Hill's Arguments**

26        McGraw-Hill asserts that it is bringing this motion to protect its First Amendment rights and to

27   require the parties' requests for its privileged documents to be decided on a case-by-case basis.

28   Because some of the consolidated actions in this MDL are brought under state antitrust law, McGraw-

16

1    Hill argues that with respect to those cases with no federal claims, the parties may not obtain access to

2    McGraw-Hill's confidential documents and information which are protected by the New York

3    reporter's privilege.  In the consolidated cases that involve federal law, McGraw-Hill asks the court to

4    apply the reporter's privilege as recognized by the Second Circuit.  In this case, both sides have issued

5    an "omnibus" subpoena.

6           McGraw-Hill acknowledges that cases consolidated for MDL proceedings typically remain in

7    the transferee court until the individual cases are ready for trial.  However, McGraw-Hill urges the court

8    to exercise its discretion to quash these subpoenas without prejudice and order that the determination of

9    whether the reporter's privilege may be overcome in any particular case should be made upon remand

10   to their respective trial courts.  The decision should be deferred to the transferor courts because the

11   issues raised by the reporter's privilege are not common to all of the parties or ripe for resolution.

12   McGraw-Hill reiterates arguments raised in opposition to the parties' motions to compel that the

13   reporter's privilege analysis is an intensively fact specific inquiry which must be performed on a case-

14   by-case basis.  McGraw-Hill remains willing to explore the possibility that the parties *might* ultimately

15   be able to make an appropriate showing.  However, to date, they have not done so.  McGraw-Hill

16   suggests that the Judicial Panel on MDL transferred the underlying cases to this district after

17   determining that it would "promote the just and efficient conduct of the litigation" because the

18   underlying actions involved "common questions of fact."  In Re: Western States Wholesale Natural Gas

19   Antitrust Litigation, 290 F. Supp.2d 1376, 1378 (J.P.M.L. 2003).  However, for purposes of evaluating

20   the reporter's First Amendment privilege, McGraw-Hill asserts the factual issues are not common, and

21   the consolidated approach is neither "just nor efficient."

22          Finally, McGraw-Hill asks that if the court denies its motion to quash that the court enter

23   separate protective orders in each individual case to strictly limit the use of any privileged documents to

24   the case for which the information is deemed required.  McGraw-Hill points to the procedure that was

25   used in CFTC v. Whitney, 441 F. Supp.2d 61, 72 (D.D.C. 2006).  There, the CFTC filed a consolidated

26   motion to enforce subpoenas it had issued in four separate cases.  Although the court granted the

27   motion to compel in part, it entered a separate protective order in each case, limiting the use of the

28   documents to be produced for the purposes of the case that required them.

1

**B.    Plaintiffs' Opposition**

2      Plaintiffs' arguments opposing McGraw-Hill's motion to quash are contained in the reply to

3    plaintiffs' own motion to enforce plaintiffs' subpoena to McGraw-Hill.  The plaintiffs oppose the

4    motion for a protective order for the same reasons advanced in their motion to enforce their own

5    subpoena.  The plaintiffs' position is supported by the declaration of Andrew J. Ennis (Dkt. #1553),

6    which avers, *inter alia*, that the plaintiffs have served the defendants with requests for production of

7    documents for the trade data sought from McGraw-Hill.  Defendants objected on various grounds but

8    collectively produced hundreds of thousands of pages of documents in response to plaintiffs' document

9    requests.  Ennis Declaration, ¶¶ 2, 5.  All defendants have produced at least some records relating to

10    their reports to Platts publications.  Id., ¶ 6.  Mr. Ennis has supervised attorneys and paralegals in their

11    review of the defendants' price reporting information produced to plaintiffs.  Id., ¶ 7.  None of the

12    defendants have been able to provide comprehensive records for all price reports made to Inside FERC

13    or Gas Daily between January 1, 2000 and October 31, 2002.  Id.  The affidavit provides a detailed

14    description of the gaps in the records provided to the plaintiffs on a defendant by defendant basis.

15

**C.    Defendants' Opposition**

16      Defendants assert that the discovery sought from Platts goes to the "heart of critical federal

17    defenses applicable" to these consolidated proceedings and compels the application of federal privilege

18    law.  Defendants claim that Congress expressed a federal interest in gas price index reporting in passing

19    the National Energy Policy Act of 2005.  Defendants strenuously oppose any attempt to defer decision

20    on issues raised in these motions to each of the transferor courts, arguing that the "whole premise of the

21    MDL statute is to avoid the type of piecemeal, potentially inconsistent discovery rulings that McGraw-

22    Hill seeks."  Defendants assert that the court should apply federal privilege law to matters involving the

23    federal Sherman Act Claims asserted in this MDL rather than state privilege law.  Defendants also

24    assert that federal privilege law applies to these actions whether brought under state or federal law

25    because the defendants have federal law defenses.  Defendants claim all of the plaintiffs' claims,

26    whether based on state or federal law, are federally preempted under the Supremacy Clause of the

27    United States Constitution and/or the filed rate doctrine which stems from Congress' intent to

28    comprehensively regulate natural gas sales through the FERC under the Natural Gas Act.

18

1       The information defendants seek from McGraw-Hill is critical to each of these defenses because

2   of the court's holding in E. & J. Gallo Winery v. Encana Corp., 503 F.3d 1027 (9th Cir. 2007).  The

3   filed rate doctrine refers to the principle that FERC's determination of a lawful rate for natural gas

4   preempts any conflicting state determination.  Id. at 1035.  The Gallo court held that any claim made by

5   the plaintiff based on alleged false index reporting is barred if all transactions reported to the index at

6   issue "were FERC-approved transactions or otherwise shielded from challenge."  Id. at 1045.

7   Therefore, the plaintiffs "cannot challenge FERC-authorized rates that are incorporated in the indices."

8   Id. at 1048.

9       In denying defendants' joint motion for summary judgment, the district judge in this case

10  concluded that the filed rate doctrine bars courts from determining what a just and reasonable rate

11  would have been absent alleged market manipulation because determining just and reasonable rates in

12  the wholesale market lies exclusively within the FERC's province.  See Order Denying Mot. S.J. (Dkt.

13  #1025) at 15:7-10.  The district judge found that the federal preemption doctrine and filed rate doctrine

14  would bar plaintiffs' claims entirely unless two conditions were satisfied: first, that plaintiffs were

15  harmed by purchasing natural gas in non-jurisdictional sales; and second, that defendants allegedly

16  engaged in misconduct in non-jurisdictional transactions.   The district judge also held that if either the

17  injury-causing transaction or the alleged market manipulation occurred within FERC's jurisdiction,

18  plaintiffs' claims would be preempted.  Id. at 14:4-8.  The district judge denied the defendants' motion

19  for summary judgment, finding that even though the defendants were FERC-jurisdictional sellers of

20  natural gas during the relevant time period, this did "not preclude the possibility that Defendants

21  engaged in manipulative conduct in non-jurisdictional transactions, such as providing false price reports

22  on non-jurisdictional transactions to trade indices, falling outside FERC's exclusive jurisdiction."  Id. at

23  17:18-21.  Thus, the price reporting discovery defendants seek from McGraw-Hill is directly relevant to

24  the defendants' federal defenses the district judge recognized but declined to apply until the price

25  reporting data was available.

26      Defendants also emphasize that McGraw-Hill's proposal that the court defer decision on these

27  discovery disputes to enable the transferor courts to make individualized and potentially conflicting

28  findings is contrary to the purpose of consolidating actions under the rules of multidistrict litigation.

1   Among the reasons these actions were consolidated in this MDL was to eliminate duplicative discovery,

2   as well as to coordinate pretrial proceedings to get them ready for trial.  Transferring these cases to

3   individual transferor courts for decision on these subpoenas will effectively stop this MDL action and

4   force the parties to relitigate the same issues in different transferor courts which will consume an

5   inordinate amount of time and resources.

6                                           **DISCUSSION**

7        **A.    Standard of Review**

8            The plaintiffs and defendants seek to compel compliance with their subpoenas pursuant to

9   Rule 45(c)(2)(B) of the Federal Rules of Civil Procedure.  McGraw-Hill bases its cross motion to quash

10  on Rule 45(c)(3) and Rule 26(c)(1).  Fed. R. Civ. P. 26(b) permits discovery into "any matter, not

11  privileged, that is relevant to the claim or defense of any party."  Rule 26(b) was amended in 2000.  The

12  stated purpose of the amendment was not only to narrow the scope of discovery but also to address the

13  rising costs and delay of discovery.  See Graham v. Casey's General Stores, Inc., 206 F.R.D. 251, 253

14  (S.D. Ind. 2002); Advisory Committee Notes to 2000 Amendments to Rule 26(b).  There seems to be a

15  general consensus that the amendments to Rule 26(b) "do not dramatically alter the scope of

16  discovery."  World Wrestling Fed'n Entm't, Inc., v. William Morris Agency, Inc., 204 F.R.D. 263, 265

17  n.1 (S.D.N.Y. 2001).  Most courts which have addressed the issue find that the amendments to Rule 26

18  still contemplate liberal discovery and that relevancy under Rule 26 is extremely broad.  See, *e.g.*, Saket

19  v. American Airlines, Inc., 2003 WL 685385 at *2 (N.D. Ill. Feb. 28, 2003).

20           However, this court has endorsed the view of a number of other courts that the 2000 amendment

21  to Rule 26(b) was intended to narrow somewhat the scope of discovery by applying the principles of

22  Rule 26(b)(2).  See, *e.g.*, Sanyo Laser Products, Inc., v. Arista Records, Inc., 214 F.R.D. 496, 500 (S.D.

23  Ind. 2003); Thompson v. Dept. of Hous. and Urban Dev., 199 F.R.D. 168, 172 (D. Md. 2001).  This

24  court has frequently examined the limitations on a frequency and extent of discovery outlined in Rule

25  26(b)(2)(C) in deciding discovery disputes.  Under Rule 26(b)(2)(C), "the court must limit the

26  frequency of extent of discovery" otherwise allowed by the Federal Rules of Civil Procedure if it

27  determines that "the burden or expense of the proposed discovery outweighs its likely benefit,

28  considering the needs of the case, the amount in controversy, the parties' resources, the importance of

                                                    20

1    the issue at stake in the action, and the importance of the discovery in resolving the issues."

2    Rule 26(b)(2)(C)(iii).

3    **B.    Judge Peck's Rulings**

4    Plaintiffs, defendants, and non-party McGraw-Hill all agree that Magistrate Judge Peck

5    transferred these discovery disputes to the undersigned with the express understanding that this MDL

6    court would apply Second Circuit law governing their reporter's privilege[1].  The court has reviewed the

7    transcript of the hearing conducted by Judge Peck on February 20, 2009 carefully and in its entirety.

8    Both counsel for the MDL plaintiffs and counsel for the MDL defendants present at the hearing advised

9    Judge Peck of their belief he had the discretion to send this dispute to this court and requested that he

10   do so.  Judge Peck granted their request and sent the matter to the undersigned with the understanding

11   that Second Circuit law and Southern District of New York law was applicable to this dispute.  The

12   court will, therefore, apply the law that all of the parties agreed would be applied to resolve the parties'

13   disputes concerning the reporter's privilege.

14   Judge Peck granted the plaintiffs' motion to intervene which sought to lift the protective order

15   entered in his case ( "the NYMEX case") but denied the plaintiffs' request to lift the protective order.

16   Judge Peck found that there was a confidentiality order in place keeping the McGraw-Hill data

17   produced in the NYMEX case confidential.  He found that the MDL experts and the MDL plaintiffs'

18   counsel had "created their own problem" by submitting affidavits in this case which referred to work

19   done using data subject to his protective order.  His oral order referred to his prior ruling as modified by

20   Judge Marrero which made it clear that McGraw-Hill had a press privilege that applied to the data but

21   finding that the parties in the NYMEX litigation had overcome the privilege and shown that they were

22   entitled to use it for their purposes.  He noted that it was a material factor in his ruling that all of the

23   defendants whose data was at issue in his case had waived their confidential source status, and at least

24   one defendant from his case was not before him or involved in this MDL action.  Judge Peck found that

25   neither the plaintiffs nor the MDL defendants had met their burden to obtain McGraw-Hill's press data.

26   _____

27        [1]   At the time of the hearing before Judge Peck, the plaintiffs had moved to compel enforcement
     of their subpoena.  The defendants had not yet moved to compel enforcement of their subpoena but

28   advised Judge Peck of their intent to do so.

1   He also found that the fact that McGraw-Hill's trade data was produced in his case upon a sufficient

2   showing was not a reason to give it to the parties in the MDL case.  Finally, he found that the fact that

3   the MDL plaintiffs' experts had done work in the NYMEX case which they referred to in affidavits in

4   this MDL action was not a justification to lift the protective order to give the MDL parties the data

5   ordered produced from McGraw-Hill in the NYMEX case.

6        With respect to the MDL parties' attempts to enforce their subpoenas, Judge Peck directly

7   inquired of counsel for McGraw-Hill whether it was willing to have the issue decided by the MDL

8   court.  Counsel for McGraw-Hill, Ms. Foley, indicated she would prefer to have Judge Peck decide

9   these issues but conceded that under the MDL procedures, Judge Peck had the discretion to transfer this

10  case to the MDL court for decision.  Thus, the court rejects the suggestion made by counsel for

11  McGraw-Hill that this court should defer this dispute to the transferor courts after consolidated pretrial

12  proceedings are concluded.  These cases were consolidated and transferred to this court under the rules

13  of multidistrict litigation for consolidated pretrial proceedings to get them ready for trial and avoid

14  potentially inconsistent rulings on pretrial motions.  Moreover, as counsel for defendants point out

15  granting this request would effectively bring this litigation to a halt.

16       **C.    The Qualified Reporter's Privilege**

17       The Second Circuit has long recognized the existence of a qualified reporter's privilege.  Baker

18  v. F & F Inv., 470 F.2d 778 (2d Cir. 1972).  In Baker, the first decision to recognize a qualified

19  reporter's privilege, the Second Circuit affirmed the district court's denial of a motion to compel a

20  reporter to disclose a source interviewed in preparation for an article on housing discrimination.

21  Although the Baker decision focused on the importance of protecting journalists' confidential sources,

22  it also reasoned that the qualified privilege protected a broader concern for the potential harm to the

23  "paramount public interest in the maintenance of a vigorous, aggressive, and independent press capable

24  of participating in robust, unfettered debate over controversial matters."  Id. at 782.

25       In McGraw-Hill, Inc., v. Arizona (In re: Petroleum Prods. Antitrust Litig.), 680 F.2d 5 (2d Cir.

26  1982), the Second Circuit articulated the test that must be established to overcome the reporter's

27  privilege.  A party seeking the disclosure of material protected by the qualified reporter's privilege must

28  make a clear and specific showing that the information sought is: (1) highly material and relevant;

22

1  (2) necessary or critical to the maintenance of a claim or defense; and (3) not obtainable from other

2  available sources.  Id. at 7 (internal citations and quotations omitted).  The plaintiffs do not dispute that

3  the documents they seek from McGraw-Hill are covered by the qualified reporter's privilege.  The

4  defendants concede that the first four categories of documents they seek from McGraw-Hill in their

5  subpoena are protected by the qualified reporter's privilege.  However, they assert that because they

6  have waived their own confidential source protection, the trade reporting data they seek are non-

7  confidential materials for which a less stringent showing is necessary to overcome the qualified

8  privilege.

9         The Baker and Petroleum Products decisions "established the existence of a journalists'

10  privilege for confidential materials."  Gonzales v. National Broadcasting Company, 194 F.3d 29, 33

11  (2d Cir. 1999).  However, subsequent decisions of the Second Circuit have extended the privilege to

12  non-confidential materials.  Id. (citing United States v. Burke, 700 F.2d 70 (2d Cir. 1983) (affirming

13  enforcement of subpoena for Time Magazine file issued on behalf of criminal defendant charged with

14  RICO offenses related to fixing basketball games where source authored published article); United

15  States v. Cutler, 6 F.3d 67 (2d Cir. 1993) (affirming district court's finding criminal defense lawyer

16  overcame qualified privilege to obtain TV station's outtakes of statements he publicly made before

17  cameras necessary for defense of contempt of court charge); Krase v. Graco Children Products, Inc.,

18  79 F.3d 346 (2d Cir. 1996) (reversing district court and enforcing subpoena to compel NBC to produce

19  outtakes relevant to defense in a products liability lawsuit).

20         In von Bulow v. von Bulow, 811 F.2d 136 (2d Cir. 1987), the Court of Appeals found that the

21  public policy favoring the free flow of information would be undercut by the compelled production of a

22  reporter's non-confidential materials.  However, when a litigant seeks non-confidential materials, "the

23  nature of the press interest protected by the privilege is narrower."  Gonzales, 194 F.3d at 36 (citing

24  Shoen v. Shoen, 5 F.3d 1289, 1295-96 (9th Cir. 1993).  In Gonzales, the Second Circuit held that

25  although non-confidential press materials were protected by the qualified reporter's privilege, "the

26  showing needed to overcome the privilege is less demanding than the showing required where

27  confidential materials are sought."  Id.  A litigant may overcome the qualified reporter's privilege for

28  / / /

1  non-confidential materials upon a showing "that the materials at issue are of likely relevance to a

2  significant issue in the case, and are not reasonably obtainable from other available sources." Id.

3  **D.  Application of the Second Circuit's Three-Part Test to Plaintiffs' Subpoena**

4  To overcome the qualified reporter's privilege, the plaintiffs must first make a clear and specific

5  showing that the information sought is highly material and relevant.  The consolidated cases in this

6  multidistrict litigation all arise out of the energy crisis of 2000 to 2001.  Plaintiffs allege defendants

7  conspired to manipulate the natural gas market by knowingly delivering false reports concerning trade

8  information to trade indices and engaging in wash trades in violation of state and federal law.  The

9  plaintiffs allege a nationwide conspiracy to manipulate and artificially increase the price of natural gas

10  for consumers by making false reports to the trade publications which affected the published gas price

11  indices.

12  The district judge has denied defendants' attempts to dismiss a number of the complaints for

13  failure to state a claim under the so-called heightened pleading requirement recognized by the United

14  States Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).  The district judge has

15  found that the factual pattern alleged in the plaintiffs' complaints set forth sufficient facts to raise a

16  reasonable expectation that discovery will reveal evidence of an illegal agreement.  See, *e.g.*, Order

17  (Dkt. #843) denying Reliant defendants' motion to dismiss, 7:6-8.  He has also found that by their

18  nature, wash trades involve collusive agreements between two parties and that the illegal behavior

19  described in plaintiffs' complaints is inconsistent with the type of unilateral behavior which is the

20  product of a rational and competitive business strategy unilaterally prompted by common perceptions of

21  the market.  Id., 6:16-24.

22  The court finds that the plaintiffs have shown that plaintiffs' document requests 1, 2, and 3 for

23  the time period between January 1, 2000 through October 31, 2002 are highly relevant and material to

24  plaintiffs' claims.  These three categories of documents will enable the plaintiffs to identify the alleged

25  false reports defendants provided to McGraw-Hill, determine whether McGraw-Hill published false

26  reports defendants provided, demonstrate that the false reports affected the published indices and

27  establish that they were damaged.

28  / / /

24

1    In the second step of the Second Circuit's test for overcoming the qualified reporter's privilege,

2 the plaintiffs must make a clear and specific showing that the materials they seek are necessary or

3 critical to their case.  This prong of the test is satisfied for purposes of pretrial discovery proceedings if

4 a party's claim or defense "virtually rises or falls" without the requested evidence.  In re Natural Gas

5 Commodities Litig., 235 F.R.D. 241, 244 (S.D.N.Y. 2006).  However, for pretrial discovery purposes,

6 plaintiffs must only show that the data is sufficiently relevant and necessary to maintain their claims;

7 they need not establish that the requested material will enable them to prevail on the merits.  Id. at 245.

8 ("The ultimate validity of Plaintiffs' case, insofar as it entails causation as an element of a claim, need

9 not be proved at this stage of the litigation.").  Id.  The court finds that with respect to plaintiffs'

10 requests for documents in categories numbers 1, 2, and 3 for the period between January 1, 2000 and

11 October 31, 2002, the plaintiffs have established that the information they seek is highly relevant and

12 material to plaintiffs' claims.  The defendants do not have complete and accurate records of their

13 reports to the trade publications.  The plaintiffs must prove not only what the defendants reported, but

14 that some of the reports were false, were actually reported by the trade publications, and affected the

15 published indices.  McGraw-Hill's indices are the best and most comprehensive data about natural gas

16 prices and market conditions.  Plaintiffs' experts have described at length the methodologies they will

17 employ to create "but for" price indices by purging false reports.  Although McGraw-Hill's expert

18 opines that the methodologies the plaintiffs' experts intend to apply are flawed, the court declines to

19 conduct a Daubert analysis in the context of this discovery dispute.  It seems clear to the court that the

20 plaintiffs and their experts cannot identify what the defendants actually reported or that false or

21 misleading trades were reported during the relevant time period without access to McGraw-Hill's data.

22    Finally, to overcome the qualified reporter's privilege, the plaintiffs must show that the

23 requested data is not obtainable from other sources.  The court finds the plaintiffs have made a

24 sufficient showing in this regard.  None of the defendants are able to produce a complete set of their

25 own reported trade information.  None of the defendants maintained complete records of trade reports

26 which were made by e-mail, via facsimile, recorded telephone conversations, and unrecorded telephone

27 conversations.  Thus, even if the parties spent tens of thousands of hours listening to the available audio

28 recordings of reported trades, the parties would still not have a complete set of data for reported trades

25

to McGraw-Hill.  The third prong of the Second Circuit's test "refers to information being obtainable from 'available' sources; it does not require that every theoretical source be exhausted."  In re Natural Gas Commodities Litig., 235 F.R.D. 199, 216 (S.D.N.Y. 2005).  It does not require a litigant to engage in onerous, wide-ranging discovery, or discovery from every conceivable source.  Id., citing In re Application to Enforce Administrative Subpoena of the United States Commodity Futures Trading Commission v. The McGraw-Hill Companies, Inc., 390 F. Supp.2d 27, 34-35 (D.D.C. 2005) (internal quotations and citations omitted).  The court is satisfied that there is no other reasonably available source for the information the plaintiffs seek in requests 1, 2, and 3.

However, the court will not compel McGraw-Hill to reproduce documents subject to the protective order in the NYMEX case.  The court wholeheartedly endorses Judge Peck's finding that these MDL plaintiffs and their experts have created their own problem by submitting affidavits in this case which refer to work done using data subject to his protective order.  A protective order was in place in the NYMEX litigation which the plaintiffs and their experts were required to comply with. The fact that these MDL plaintiffs and their experts have relied upon and referred to data produced in the NYMEX case pursuant to a protective order in affidavits submitted in this case, in contravention of that protective order, is not grounds for overcoming the qualified reporter's privilege.  The court will not compel McGraw-Hill to comply with plaintiffs' fourth request for documents.

## E. Application of the Second Circuit's Three-Part Test to Defendants' Subpoena

The defendants' subpoena is broader than the subpoena plaintiffs served on McGraw-Hill. McGraw-Hill has agreed, however, to produce documents responsive to requests 5, 7, and 8 that are public.  The defendants have agreed to accept this compromise.  The court will, therefore, require McGraw-Hill to honor its agreement and produce documents responsive to requests 5, 7, and 8 that are public and not subject to a protective order in other litigation.  With respect to the defendants' remaining requests for production, the court is not persuaded the defendants have met their burden. The defendants will have access to the documents the court has ordered McGraw-Hill to produce in enforcing the plaintiffs' subpoena.  However, defendants have not persuaded the court that they have overcome the reporter's privilege as to requests 1, 2, 3, 4, and 6.  The defendants' motion to compel will, therefore, be denied.

26

Having reviewed and considered the matter,

**IT IS ORDERED:**

1.      Plaintiffs' Motion to Enforce Third-party Subpoenas (Dkt. #1552) is GRANTED in part and DENIED in part.  The motion is GRANTED with respect to requests 1, 2, and 3 for the period January 1, 2000 through October 31, 2002, and DENIED in all other respects. The documents produced shall be deemed subject to the protective orders entered in this MDL action.

2.      The documents ordered produced pursuant to paragraph 1 of this order will include "unmasked" identities of the reporting entity as to any entity that is a named defendant in these consolidated MDL 1566 cases.

3.      The court finds that each of the named defendants in these consolidated MDL 1566 cases have waived confidential source protection with respect to the data ordered produced for purposes of this litigation, and will permit use of the data in this litigation pursuant to the provisions of the protective orders that have been entered in this MDL action.

4.      The production of materials ordered produced in paragraph 1 of this order shall "mask" the identifying information with respect to any other persons or entities who are not named defendants in this action, using a mutually agreed upon format such as "redacted entity 1," "redacted entity 2," etc.

5.      Defendants' Motion to Compel Production of Documents from Non-Party McGraw-Hill (Dkt. #1557) is DENIED, except that McGraw-Hill shall honor its agreement to produce documents responsive to requests for production requests 5, 7, and 8 that are public.

6.      McGraw-Hill's Cross Motion to Quash Non-Party Subpoenas and for Other Relief (Dkt. #1583) is DENIED.

7.      The plaintiffs shall pay reasonable expenses incurred by McGraw-Hill in complying with this order compelling production of documents responsive to the plaintiffs' subpoena.

8.      The defendants shall pay reasonable costs incurred by McGraw-Hill for producing documents responsive to requests 5, 7, and 8 that are public as ordered.

27

9. McGraw-Hill shall have until **September 14, 2009** in which to produce documents compelled to be produced in this order unless, for good cause shown, additional time is required despite the exercise of due diligence.

10. Any request for relief not specifically addressed in this order is DENIED.

Dated this 14th day of August, 2009.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE

28