UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| IN RE: WESTERN STATES WHOLESALE NATURAL GAS ANTITRUST LITIGATION | MDL 1566<br>2:03-CV-01431-PMP-PAL<br>BASE FILE |
| NEWPAGE WISCONSIN SYSTEM INC.,<br>Plaintiff,<br>v.<br>CMS ENERGY CORPORATION, et al.,<br>Defendants. | 2:09-CV-00915-PMP-PAL<br><br>ORDER RE: DEFENDANTS' MOTION TO DISMISS (Doc. #39-15 in 2:09-CV-00915-PMP-PAL) |

Presently before this Court is Defendants CMS Energy Corp., CMS Energy Resources Management Co., and Cantera Gas Company, LLC's Motion to Dismiss (Doc. #39-15 in 2:09-CV-00915-PMP-PAL), filed in this Court on May 22, 2009. Plaintiff filed an Opposition (Doc. #1672) on June 26, 2009. Defendants filed a Reply (Doc. #1703) on July 17, 2009.

Also before the Court is Plaintiff's Motion to Allow Surreply in Opposition to Defendant CMS Energy Corp., CMS Energy Resources Management Co., and Cantera Gas Company, LLC's Motion to Dismiss (Doc. #1756), filed on August 21, 2009. Defendants filed an Opposition (Doc. #1788) on September 8, 2009.

**I.      BACKGROUND**

This case is one of many in a consolidated Multidistrict Litigation ("MDL") arising out of the energy crisis of 2000-2001. Plaintiff originally filed this action in the

circuit court, Wood County, Wisconsin on March 25, 2009.  (Notice of Removal (Doc. #39-2 in 2:09-CV-00915-PMP-PAL).)  Defendants removed the case to the United States District Court for the District of Wisconsin.  (Id.)  The Judicial Panel on Multidistrict Litigation entered a Transfer Order centralizing the foregoing action in this Court for coordinated or consolidated pretrial proceedings.  (Conditional Transfer Order (Doc. #40 in 2:09-CV-00915-PMP-PAL).)

Plaintiff NewPage Wisconsin System ("NewPage"), known as Stora Enso North American Corp. during the Relevant Time Period, is a Wisconsin corporation.  (Notice of Removal, Compl. at 8.)  According to the Complaint, Defendants are natural gas companies that buy, sell, transport, and store natural gas, including their own and their affiliates' production, in the United States and in the State of Wisconsin.  (Id. at 9-55.)  In this litigation, Plaintiff alleges Defendants conspired to engage in anti-competitive activities with the intent to manipulate and artificially increase the price of natural gas for consumers. (Id.)  Specifically, Plaintiff alleges Defendants, directly and through their affiliates, conspired to manipulate the natural gas market by knowingly delivering false reports concerning trade information to trade indices and engaging in wash trades, in violation of Wisconsin Statutes chapter 133.  (Id.)

The Complaint asserts two causes of action.  Count one arises under Wisconsin Statutes § 133.14, which voids contracts to which an antitrust conspirator is a party and allows recovery of payments made pursuant to such a contract.  (Id. at 59-60.)  Count two seeks trebled actual damages under Wisconsin Statutes § 133.18 for Defendants' alleged antitrust violations.  (Id. at 60-61.)

The Complaint's allegations are directed generally at two types of Defendants: the natural gas companies that actually engaged in natural gas sales and the related reporting of allegedly manipulated gas prices to the trade indices, and those companies' parent corporations.  The Complaint does not allege the parent company Defendants

themselves engaged in natural gas trading and price reporting. Rather, the Complaint alleges these Defendants are the parent companies of subsidiaries which engaged in such activity generally, and which also made natural gas sales in Wisconsin during the relevant time period.

Defendants CMS Energy Corp. ("CMS"), CMS Energy Resources Management Co. ("MST"), and Cantera Gas Company, LLC ("Cantera") now move to dismiss for lack of personal jurisdiction. Defendants contend this Court already has resolved the question of Defendants' amenability to personal jurisdiction in Wisconsin in Arandell Corporation v. Xcel Energy, Inc., 2:09-CV-01019-PMP-PAL, and that decision has preclusive effect in this case. Defendants also argue they have no contacts with Wisconsin that support personal jurisdiction.[1] Plaintiff responds that under this Court's prior Order (Doc. #1528 in Arandell), specific personal jurisdiction exists because MST made direct sales of natural gas to NewPage and the exercise of personal jurisdiction in this matter is reasonable because Defendants engaged in solicitation in Wisconsin and sold millions of dollars worth of natural gas in the state. Plaintiff also contends the Arandell decision has no preclusive effect in this action.

II.  **DISCUSSION**

   **A. Preclusion**

Defendants argue this Court already has decided they are not amenable to general or specific personal jurisdiction in Wisconsin for similar claims brought in the Arandell action. Defendants contend the plaintiffs in the Arandell action cited to NewPage's purchases of natural gas in support of that motion, and thus this Court already has considered that fact. Plaintiff responds preclusion is not appropriate because it is not a

---

[1] Defendants also move to dismiss under the Credit Suisse doctrine. This Court already has rejected the applicability of that doctrine to the allegations in the various MDL complaints. (See Order (Doc. #1815).)

3

1  named Plaintiff in the Arandell action, the issues between the two cases are different
2  because Arandell did not involve a plaintiff like NewPage that bought directly from MST,
3  and this Court specifically precluded consideration of non-named putative class members'
4  claims to determine whether the named plaintiffs' claims in Arandell satisfied the specific
5  personal jurisdiction test.

6  "Issue preclusion bars the relitigation of issues actually adjudicated in previous
7  litigation between the same parties." Littlejohn v. U.S., 321 F.3d 915, 923 (9th Cir. 2003).
8  For issue preclusion to apply, the party invoking preclusion must show:

> 1) the issue at stake is identical to an issue raised in the prior litigation;
> 2) the issue was actually litigated in the prior litigation; and
> 3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action.

12  Id. (quotation omitted). A "person who was not a party to a suit generally has not had a
13  'full and fair opportunity to litigate' the claims and issues settled in that suit," and therefore
14  is not precluded from re-litigating the issue. Taylor v. Sturgell, 128 S. Ct. 2161, 2171
15  (2008). However, in some limited circumstances, a nonparty may be bound by a judgment
16  because it adequately was represented by a party to the suit with the same interests. Id. at
17  2172. A "properly conducted class action[]" may fall within this category. Id.

18  Plaintiff NewPage's attempt to obtain personal jurisdiction over Defendants is
19  not precluded. Although both cases generally involve attempts to assert personal
20  jurisdiction over Defendants in Wisconsin, because of the nature of specific personal
21  jurisdiction, the issues at stake in the two cases are not identical. In Arandell, the named
22  plaintiffs initially presented no evidence they purchased natural gas from Defendants.[2] That
23  failing was critical to this Court's conclusion that the Arandell plaintiffs had failed to

---

[2] As set forth in an Order filed concurrently herewith, the Arandell plaintiffs since have presented new evidence that Defendant MST in fact made sales to a named plaintiffs' agent during the relevant time period.

4

establish Defendant MST's forum-related contacts were the "but for" cause of the Arandell plaintiffs' injuries.  Here, in contrast, Plaintiff NewPage contends it purchased natural gas directly from MST.  Further, because NewPage was not a named plaintiff in the Arandell action, the issue of whether NewPage could establish its injuries arose out of Defendants' forum-related contacts was not actually litigated in the Arandell action.

Defendants claim NewPage adequately was represented in the Arandell action as a member of the putative class.  However, the class in Arandell has not been certified.  In Arandell, the Court specifically precluded the named plaintiffs from relying on the unnamed putative class members to establish specific personal jurisdiction over Defendants.  (Order (Doc. #1528) at 22.)  To now hold that NewPage is precluded from asserting it can establish specific personal jurisdiction over Defendants would deprive NewPage of its full and fair opportunity to litigate the issue.

**B. Merits**

Defendants contend they are not subject to personal jurisdiction in Wisconsin because they have no offices, telephone numbers, mailing addresses, bank accounts, employees, or property in Wisconsin.  Defendants also argue they did not conduct business in Wisconsin, and were never qualified to do business in Wisconsin.  NewPage responds that this Court already has found that Defendant MST purposefully availed itself of Wisconsin.  NewPage also argues that because it purchased natural gas from MST, it has satisfied the specific personal jurisdiction test set forth in the Court's prior Order in Arandell.  NewPage also argues that MST's forum-related contacts are attributable to CMS.  NewPage does not attempt to establish personal jurisdiction over Defendant Cantera, and suggests the parties were going to stipulate to Cantera's dismissal.

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006).  To meet this

burden, a plaintiff must demonstrate that personal jurisdiction over a defendant is (1) permitted under the applicable state's long-arm statute and (2) that the exercise of jurisdiction does not violate federal due process.  Id.  The Court must analyze whether personal jurisdiction exists over each defendant separately.  Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1130 (9th Cir. 2003).

Where the issue is before the Court on a motion to dismiss based on affidavits and discovery materials without an evidentiary hearing, the plaintiff must make "a prima facie showing of facts supporting jurisdiction through its pleadings and affidavits to avoid dismissal."  Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1119 (9th Cir. 2002).  The Court accepts as true any uncontroverted allegations in the complaint and resolves any conflicts between the facts contained in the parties' evidence in the plaintiff's favor.  Id.  However, for personal jurisdiction purposes, a court "may not assume the truth of allegations in a pleading which are contradicted by affidavit."  Alexander v. Circus Circus Enters., Inc., 972 F.2d 261, 262 (9th Cir. 1992) (quotation omitted).

In diversity cases such as this, "a federal court applies the personal jurisdiction rules of the forum state provided the exercise of jurisdiction comports with due process."  Scott v. Breeland, 792 F.2d 925, 927 (9th Cir. 1986).  However, "federal law is controlling on the issue of due process under the United States Constitution."  Data Disc, Inc. v. Sys. Tech. Assoc., Inc., 557 F.2d 1280, 1286 n.3 (9th Cir. 1977); see also Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1110 (9th Cir. 2002).  Therefore, the Court will apply law from the United States Court of Appeals for the Ninth Circuit in deciding whether jurisdiction is appropriate under the Due Process Clause.  See In re Korean Air Lines Disaster of Sept. 1, 1983, 829 F.2d 1171, 1174 (D.C. Cir. 1987) (concluding that "the transferee court [should] be free to decide a federal claim in the manner it views as correct without deferring to the interpretation of the transferor circuit"); Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir.

1993) (holding that "a transferee federal court should apply its interpretations of federal law, not the constructions of federal law of the transferor circuit").

To satisfy federal due process standards, a nonresident defendant must have "minimum contacts" with the forum state so that the assertion of jurisdiction does not offend traditional notions of fair play and substantial justice. Pebble Beach Co., 453 F.3d at 1155 (citing Int'l Shoe Co. v. Wash., 326 U.S. 310, 315 (1945)). A federal district court may exercise either general or specific personal jurisdiction.[3] See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984).

A nonresident defendant's contacts with the forum state may permit the exercise of specific jurisdiction if: (1) the defendant has performed some act or transaction within the forum or purposefully availed himself of the privileges of conducting activities within the forum, (2) the plaintiff's claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction over the defendant is reasonable. Pebble Beach Co., 453 F.3d at 1155-56. "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 270 (9th Cir. 1995).

Under the first prong of the "minimum contacts test," the plaintiff must establish either that the defendant "(1) purposefully availed himself of the privilege of conducting his activities in the forum, or (2) purposefully directed his activities toward the forum." Pebble Beach Co., 453 F.3d at 1155. "Evidence of availment is typically action taking place in the forum that invokes the benefits and protections of the laws in the forum." Id. Evidence of direction usually consists of conduct taking place outside the forum that the defendant directs at the forum. Id. at 1155-56.

---

[3] The Court previously ruled Defendants are not subject to general personal jurisdiction in Wisconsin. NewPage has not presented any new evidence to suggest a different result.

7

1    The purposeful direction aspect of the first prong is satisfied when a foreign act is both aimed at and has effect in the forum.  Id.  In other words, the defendant "must have (1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state."  Id.  To satisfy the third element of this test, the plaintiff must establish the defendant's conduct was "expressly aimed" at the forum; a "mere foreseeable effect" in the forum state is insufficient.  Id.  The "express aiming" requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct "individually targeting a known forum resident."  Bancroft, 223 F.3d at 1087.

   The second prong of the specific jurisdiction test requiring that the contacts constituting purposeful availment or purposeful direction give rise to the current action is measured in terms of "but for" causation.  Id. at 1088.  "If the plaintiff establishes both prongs one and two, the defendant must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable."  Boschetto v. Hansing, 539 F.3d 1011, 1016 (9th Cir. 2008) (quotation omitted).  Under this last prong of the specific jurisdiction test, courts generally consider a variety of factors to determine whether exercising jurisdiction would be reasonable:

> (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.

Bancroft, 223 F.3d at 1087.  A court must balance all seven factors and no factor is determinative.  Core-Vent Corp. v. Nobel Indus., 11 F.3d 1482, 1488 (9th Cir. 1993).

///

///

///

As set forth in this Court's prior Order in Arandell, Defendant MST has purposefully availed itself of Wisconsin:

> MST entered into long term supply contracts with several Wisconsin-based entities which listed a Wisconsin address for the company, a Wisconsin address for notices and invoices, and a Wisconsin bank for wire transfers.  MST made millions of dollars in sales pursuant to these contracts.  Plaintiffs have presented unrebutted evidence that two MST employees, Marsalese and Skarb, regularly solicited business from Wisconsin companies at their Wisconsin offices, either in person or by telephone.  Marsalese and Skarb are identified in MST's internal documents as having sales responsibility in the state of Wisconsin.  MST identified Wisconsin as a target for natural gas sales with reference to specific customers.  Having specifically targeted Wisconsin for sales, and having been successful in that effort, MST purposefully directed activity at Wisconsin.

(Order (Doc. #1528) at 21.)

NewPage also has satisfied the second prong of the specific jurisdiction test. NewPage, formerly known as Stora Enso North America Corp. ("Stora Enso"), presents evidence that it purchased natural gas from Defendant MST. Thomas Riemer ("Riemer"), former purchasing agent for Stora Enso, avers that MST entered into a master supply agreement with Stora Enso in November 2000. (Decl. of Thomas Riemer (Doc. #1093) at 1.)  The agreement lists a Wisconsin address for Stora Enso, including a Wisconsin address to send invoices and payments.  (Id., Ex. 1.)  Trade confirmations pursuant to this agreement list a Wisconsin address for Stora Enso as the buyer, and identifies the delivery point as "ANR Pipeline Co. – Alliance – Chicago Alliance/ANR Interconnect."  (Id.)  The trade confirmations state as a special condition that the "Gas to be nominated into ANR T&E . . . for delivery to Wisconsin Gas Company service territory."  (Id.)

According to Wayne Krolikowski ("Krolikowski"), Energy manager for Stora Enso, Stora Enso purchased approximately $9 million worth of natural gas pursuant to the contract with MST.  (Decl. of Wayne Krolikowski (Doc. #1094) at 1-2.)  The gas purchased pursuant to this agreement was consumed at Stora Enso's Wisconsin facilities.  (Decl. of Thomas Riemer at 1.)  According to Riemer, from January 2000 through March 2002, MST

employee Phil Marsalese ("Marsalese") regularly contacted Riemer at his office in Wisconsin regarding the purchase of natural gas from MST.  (Id. at 2.)  Krolikowski states that Marsalese also contacted him approximately every three months regarding purchasing natural gas from MST.  (Decl. of Wayne Krolikowski at 2.)  An internal MST market review in 2000 identified Marsalese as sales manager for the midwest region, including Wisconsin.  (Notice of Filing of Docs. Under Seal (Doc. #1184) at CMS-WI-021362.)  NewPage thus has presented evidence supporting a prima facie case that it would not have been harmed but for Defendant MST's sales to it at prices which NewPage alleges were manipulated through MST's participation in a price-fixing conspiracy.

MST has not set forth a compelling case that the exercise of personal jurisdiction over it in Wisconsin would be unreasonable.  MST purposefully injected itself into Wisconsin by entering into long term supply contracts with several Wisconsin-based entities from which MST reaped millions of dollars in sales.  MST identified Wisconsin as a target for natural gas sales with reference to specific customers.  NewPage presented unrebutted evidence that MST employees who had sales responsibility for Wisconsin regularly solicited business from Wisconsin companies at their Wisconsin offices, either in person or by telephone.

The burden on MST of litigating this action in Wisconsin is minimal.  MST is a Michigan corporation, and thus geographically is near Wisconsin.  Moreover, modern technology and ease of travel lessen the burden.  There is no conflict with the sovereignty of Michigan.  Wisconsin, on the other hand, has a significant interest in ensuring its citizens are protected from collusive price-fixing behavior, and in providing its citizens with a forum in which to seek redress.  Resolution in Wisconsin is efficient, as the claim can be adjudicated with many of MST's alleged co-conspirators who remain Defendants in this action.  Because Wisconsin courts will be more familiar with the Wisconsin law under which NewPage brings its claims, NewPage's interest in convenient and effective relief is

served by Wisconsin exercising jurisdiction over MST.  Finally, while an alternative forum exists in Michigan, that factor alone does not outweigh the other factors which weigh in favor of finding the exercise of personal jurisdiction over MST reasonable.  Having directed sales efforts at Wisconsin and being successful in those efforts by making millions of dollars worth of sales, MST reasonably could foresee being haled into Wisconsin courts by one of its Wisconsin-based customers for an alleged price-fixing conspiracy arising out of those sales.  NewPage therefore has presented evidence sufficient to support a prima facie case that this Court has personal jurisdiction over MST.  The Court will deny the motion to dismiss as to Defendant MST.

However, as set forth thoroughly in this Court's prior Orders, MST's contacts with Wisconsin are not attributable to CMS.  (See Orders (Doc. #1515, #1517, #1518, #1520, and Order on motion for reconsideration filed concurrently herewith).)  NewPage presents no new evidence to alter this conclusion.  Further, the Court previously has found Cantera is not amenable to personal jurisdiction in Wisconsin.  (Order (Doc. #1528) at 22-23.)  NewPage has presented no new evidence to alter this conclusion, and has made no attempt to argue personal jurisdiction exists over Cantera in this action.  The Court therefore will grant the motion to dismiss as to Defendants CMS and Cantera.

**III.     CONCLUSION**

IT IS THEREFORE ORDERED that Defendants CMS Energy Corp., CMS Energy Resources Management Co., and Cantera Gas Company, LLC's Motion to Dismiss (Doc. #39-15 in 2:09-CV-00915-PMP-PAL) is hereby GRANTED in part and DENIED in part.  Defendants CMS Energy Corp. and Cantera Gas Company, LLC are hereby dismissed for lack of personal jurisdiction.  The motion is denied with respect to Defendant CMS Energy Resources Management Co.

///

///

IT IS FURTHER ORDERED that Plaintiff's Motion to Allow Surreply in Opposition to Defendant CMS Energy Corp., CMS Energy Resources Management Co., and Cantera Gas Company, LLC's Motion to Dismiss (Doc. #1756) is hereby GRANTED.

DATED: June 4, 2010

_____
PHILIP M. PRO
United States District Judge