UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | | |
|---|---|---|
| IN RE: WESTERN STATES WHOLESALE NATURAL GAS ANTITRUST LITIGATION | ) ) ) ) | MDL 1566 2:03-CV-01431-PMP-PAL BASE FILE |
| _____ | ) ) | |
| REORGANIZED FLI, INC., | ) ) ) | 2:05-CV-01331-PMP-PAL |
| Plaintiff, | ) ) | |
| v. | ) ) | <u>ORDER RE: DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (Doc. #1806)</u> |
| THE WILLIAMS COMPANIES, INC., et al., | ) ) ) | |
| Defendants. | ) ) | |

Presently before the Court is Defendants' Motion for Judgment on the Pleadings (Doc. #1806), filed on October 5, 2009. Plaintiff filed an Opposition (Doc. #1873) on December 8, 2009. Defendants filed a Reply (Doc. #1888) on January 7, 2010.

**I. BACKGROUND**

This case is one of many in consolidated Multidistrict Litigation arising out of the energy crisis of 2000-2001. Plaintiff originally filed this action in the District Court of Wyandotte County, Kansas. (Notice of Removal, [2:05-CV-01331-PMP-PAL, Doc. #1] at 2.) Defendants removed the case to the United States District Court for the District of Kansas. (<u>Id.</u>) The Judicial Panel on Multidistrict Litigation entered a Transfer Order pursuant to 28 U.S.C. § 1407 centralizing the foregoing action in this Court for coordinated or consolidated pretrial proceedings.

///

Plaintiff Reorganized FLI, Inc. ("RFLI"), is a Kansas corporation with its principal place of business in Kansas City, Missouri. (Am. Compl. [Doc. #11 in 2:05-CV-01331-PMP-PAL] at 3.) RFLI is a successor in interest to Farmland Industries, Inc. ("Farmland"), a Kansas corporation. (Id. at 3-4.) Farmland had commercial business operations in Muncie, Kansas, as well as fertilizer production facilities in Lawrence, Coffeyville, and Dodge City, Kansas. (Id.) Farmland also had fertilizer production facilities in Oklahoma, Nebraska, Iowa, and Louisiana. (Id.) Farmland's day-to-day management of its fertilizer operations were centralized and run from offices located in Lawrence, Kansas during the relevant period. (Id.) Specifically, RFLI alleges that for its fertilizer operations, "corporate activities such as budgeting, forecasting, capital spending authorizations, executing annual purchasing contracts, accounting, distribution, and setting production" were run from Farmland's Kansas offices. (Id.) RFLI used natural gas for its business during the relevant period, and purchased natural gas from one or more of Defendants during the relevant period. (Id. at 4.)

According to the Amended Complaint, Defendants are natural gas companies that buy, sell, transport, and store natural gas, including their own and their affiliates' production, in the United States and in the State of Kansas. (Id. at 4-33.) In this litigation, Plaintiff alleges Defendants conspired to engage in anti-competitive activities with the intent to manipulate and artificially increase the price of natural gas for consumers. (Id. at 4-43.) Specifically, Plaintiff alleges Defendants, directly and through their affiliates, conspired to manipulate the natural gas market by knowingly delivering false reports concerning trade information to trade indices and engaging in wash trades, in violation of Kansas Statutes Annotated § 50-101, et seq. (Id.) Plaintiff seeks as relief a refund of the amounts it paid to Defendants for any natural gas paid at manipulated or controlled prices. (Id. at 43.) Plaintiff seeks this relief under Kansas's antitrust statutes, which provide for a full consideration remedy. (Id. (citing Kan. Stat. Ann. § 50-115).)

Defendants now move for judgment on the pleadings. Defendants contend that under a choice of law analysis, Plaintiff's claim is governed by Missouri law, not Kansas law, and Missouri does not allow for a full consideration remedy. Plaintiff responds that Defendants have waived the choice of law analysis by not raising it earlier in the proceedings. Plaintiff argues that in any event, Kansas law controls.

## II. LEGAL STANDARD

"A judgment on the pleadings [under Federal Rule of Civil Procedure 12(c)] is properly granted when, taking all allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." Nelson v. City of Irvine, 143 F.3d 1196, 1200 (9th Cir. 1998). A motion for judgment on the pleadings brought pursuant to Federal Rule of Civil Procedure 12(c) may be brought "[a]fter the pleadings are closed – but early enough not to delay trial . . . ." Fed. R. Civ. P. 12(c).

## III. DISCUSSION

As a federal court sitting in diversity, this Court applies "the forum state's choice of law rules to determine the controlling substantive law." Fields v. Legacy Health Sys., 413 F.3d 943, 950 (9th Cir. 2005) (quotation omitted). Kansas applies the law of the forum "unless it is expressly shown that a different law governs, and in case of doubt, the law of the forum is preferred." Layne Christensen Co. v. Zurich Canada, 38 P.3d 757, 767 (Kan. Ct. App. 2002) (citing Shutts v. Phillips Petroleum Co., 679 P.2d 1159, 1181 (Kan. 1984), rev'd in part on other grounds, 472 U.S. 797 (1985)); Sys. Design & Mgmt. Info. Inc. v. Kan. City Post Office Employees Cred. Union, 788 P.2d 878, 881 (Kan. Ct. App. 1990). "Generally the party seeking to apply the law of a jurisdiction other than the forum has the burden to present sufficient facts to show that other law should apply." Layne Christensen Co., 38 P.3d at 767.

Kansas follows the Restatement (First) of Conflict of Laws. Brenner v. Oppenheimer & Co. Inc., 44 P.3d 364, 374 (Kan. 2002). Under the First Restatement

3

§ 378, the "law of the place of wrong determines whether a person has sustained a legal injury." Thus, in tort cases,[1] Kansas applies "the law of the state where the tort occurred." Ling v. Jan's Liquors, 703 P.2d 731, 735 (Kan. 1985). The "place of wrong" is "the state where the last event necessary to make an actor liable for an alleged tort takes place." Restatement (First) of Conflict of Laws § 377. Because a tortious act "is not complete until the injury has occurred," Kansas deems a tortious act "to have occurred in the state where the injury occurs." Merriman v. Crompton Corp., 146 P.3d 162, 180 (Kan. 2006) (quotation omitted).

Kansas has not addressed where the tort occurs when a corporation alleges injuries arising out of a price fixing conspiracy. "Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." Giles v. Gen. Motors Acceptance Corp., 494 F.3d 865, 872 (9th Cir. 2007) (quotation omitted). "In answering that question, this court looks for 'guidance' to decisions by intermediate appellate courts of the state and by courts in other jurisdictions." Id. (quotation omitted).

Although Kansas has not addressed this issue directly, Kansas has suggested, in evaluating its long-arm statute, that an antitrust price-fixing injury "occurs at the place of sale because the consumer is injured when he or she pays the artificially inflated price." Merriman, 146 P.3d at 181. In Merriman, the Kansas Supreme Court was addressing whether a price-fixing antitrust claim sufficed to support exercising jurisdiction over a non-resident defendant under Kansas's long-arm statute which provided for the exercise of

---

[1] Plaintiff argues its antitrust claim is not a tort, but a statutory claim which is not subject to Kansas's usual choice of law rules. Because the Court concludes Kansas law controls even if Plaintiff's claim is characterized as a tort, the Court need not address this issue. However, in the context of applying its long-arm statute, Kansas has referred to antitrust claims as akin to torts. See Merriman v. Crompton Corp., 146 P.3d 162, 181 (Kan. 2006) ("We hold that a price-fixing conspiracy may be a tortious act under K.S.A. 60-308(b)(2).").

4

jurisdiction where the non-resident defendant committed a tortious act in the state. Id. at 180-81. The defendants argued that price-fixing is not a tort, as it was not recognized as such at common law. Id. at 181. The Kansas Supreme Court rejected that argument, noting that other courts have concluded that price fixing acts are tortious in nature, and that the "injury occurs at the place of sale because the consumer is injured when he or she pays the artificially inflated price." Id. (citing cases from other jurisdictions). Based on this reasoning, the Kansas Supreme Court held that "a price-fixing conspiracy may be a tortious act" in the state under the long-arm statute. Id.

The Court concludes Kansas similarly would hold under its choice of law analysis that a plaintiff asserting a price-fixing antitrust claim, whether it is a natural person or a corporation, is injured at the place of sale, because that is where the plaintiff pays the manipulated price. The Kansas Supreme Court was persuaded by this reasoning in the context of determining whether a defendant commits a tortious act within the state under the state's long-arm statute, and nothing in Kansas law suggests it would find this same reasoning unpersuasive in its choice of law analysis.[2] Such a rule also is consistent with the First Restatement, as the state where the sale occurs is the state where the last event necessary to make an actor liable for an alleged tort takes place, as the last act supporting antitrust liability occurs when the plaintiff is injured upon paying the manipulated price.

Here, Plaintiff alleges it purchased gas from Defendants in Kansas, Oklahoma, Nebraska, Iowa, and Louisiana. (Am. Compl. at 36.) Plaintiff also alleges a different kind of injury occurring within the state of Kansas. Plaintiff alleges that due to Defendants' price manipulation, Plaintiff was "deprived of the right to make risk management, resource

---

[2] Defendants agree with this proposition, stating that "the inquiry presented under the long-arm statute turns on the same facts as the conflict of law rules – where a tortious injury occurs. [Plaintiff] offers no authority to suggest that place of injury is determined differently in the two scenarios." (Defs.' Reply to Pl.'s Resp. to Mot. for J. on the Pleadings Regarding Choice of Law (Doc. #1888) at 7 n.5.)

5

allocation and other financial decisions in a full and free competitive market for natural gas." (Id. at 40-41.) Plaintiff alleges that decisions about budgeting, forecasting, capital spending authorization, executing annual purchasing contracts, accounting, distribution, and setting production were made out of the Kansas office. (Id. at 3-4.) Consequently, to the extent Defendants' alleged antitrust violations caused injury to Plaintiff's business by disrupting its ability to make critical business decisions in a full and free competitive market, Plaintiff felt such injury in Kansas, where it made those types of decisions. Consequently, the Court concludes that Kansas law applies to Plaintiff's claim.

In several decisions, the United States District Court for the District of Kansas has held that where the alleged injury at issue was economic, the plaintiff corporation felt the financial harm at its principal place of business.[3] These cases do not alter the Court's

---

[3] See Alpine Atl. Asset Mgmt. AG v. Comstock, 552 F. Supp. 2d 1268, 1279 (D. Kan. 2008) ("Because the wrong here involves financial harm, the court would look to the law of the place where Alpine felt the alleged financial harm, which is the location of its principal place of business in Switzerland."); Carolina Indus. Prods., Inc. v. Learjet, Inc., 189 F. Supp. 2d 1147, 1163 n.12 (D. Kan. 2001) (holding the plaintiffs' tortious interference claim was governed by Georgia law where one plaintiff was a Georgia limited liability company, another was a Georgia resident, and the third was incorporated in North Carolina but its sole owner resided in Georgia and the court "presume[d]" the plaintiff's principal place of business was Georgia); ORI, Inc. v. Lanewala, 147 F. Supp. 2d 1069, 1078 n.9 (D. Kan. 2001) (holding that where the plaintiff alleged financial injury, it felt such injury at its principal place of business in Kansas); Bushnell Corp. v. ITT Corp., 973 F. Supp. 1276, 1286 n.2 (D. Kan. 1997) (holding the plaintiff's defamation and tortious interference claims were governed by Kansas law because the plaintiff alleged financial harm which the plaintiff would have felt at its principal place of business in Kansas); Lawrence-Leiter & Co. v. Paulson, 963 F. Supp. 1061, 1062, 1065 (D. Kan. 1997) (holding in defamation case that corporation incorporated in Missouri but with principal place of business in Kansas felt the harm in Kansas); St. Paul Furniture Mfg. Co. v. Bergman, 935 F. Supp. 1180, 1187 (D. Kan. 1996) (holding Illinois law applied where the plaintiffs, an Illinois corporation and an Illinois resident, alleged financial harm); Old Colony Ventures I, Inc. v. SMWNPF Holdings, Inc., 910 F. Supp. 543, 545 (D. Kan. 1995) (noting the plaintiff, an Illinois corporation, did not plead where it felt the injury, but the parties agreed Kansas law applied) Atchison Casting Corp. v. Dofasco, Inc., 889 F. Supp. 1445, 1455-56 (D. Kan. 1995) (holding that the "only evidence before the court" indicated that the plaintiff felt pecuniary damages from a misrepresentation at its principal place of business in Kansas); Corinthian Mortg. Corp. v. First Sec. Mortg. Co., 716 F. Supp. 527, 529-30 (D. Kan. 1989) (holding, in the context of determining whether a defendant committed a tortious act within the state under Kansas's long-arm statute, that the plaintiff suffered harm from an

conclusion. In several of these cases, the parties either conceded or did not address which law applied. See, e.g., ORI, Inc. v. Lanewala, 147 F. Supp. 2d 1069, 1078 n.9 (D. Kan. 2001); St. Paul Furniture Mfg. Co. v. Bergman, 935 F. Supp. 1180, 1187 (D. Kan. 1996); Old Colony Ventures I, Inc. v. SMWNPF Holdings, Inc., 910 F. Supp. 543, 545 (D. Kan. 1995). In others, it is unclear whether the parties disputed which law governed the claims at issue, but from the court's decision it appears the parties either agreed about which law applied, or they did not address the matter. Bushnell Corp. v. ITT Corp., 973 F. Supp. 1276, 1286 n.2 (D. Kan. 1997); Lawrence-Leiter & Co. v. Paulson, 963 F. Supp. 1061, 1062, 1065 (D. Kan. 1997).

In those cases where the parties disputed the choice of law, the dispute was between either the principal place of business and the state of incorporation, or the principal place of business and the location of the defendant or the defendant's alleged tortious acts. See Alpine Atl. Asset Mgmt. AG v. Comstock, 552 F. Supp. 2d 1268, 1279 (D. Kan. 2008); Carolina Indus. Prod., Inc. v. Learjet, Inc., 189 F. Supp. 2d 1147, 1163 n.12 (D. Kan. 2001); Atchison Casting Corp. v. Dofasco, Inc., 889 F. Supp. 1445, 1455-56 (D. Kan. 1995); Corinthian Mortg. Corp. v. First Sec. Mortg. Co., 716 F. Supp. 527, 529-30 (D. Kan. 1989). None of these cases involved a price fixing conspiracy. Nor did any of the cases involve a factual scenario similar to that alleged in the present action, where the corporation had its principal place of business in one state, but was incorporated in another state and also conducted operations within its state of incorporation out of which the

---

alleged fraudulent misrepresentation at its principal place of business in Kansas). But see Kansas Mun. Gas Agency v. Vesta Energy Co., Inc., 840 F. Supp. 814, 822-23 (D. Kan. 1993) (holding that "the law of the state in which a party receives the allegedly fraudulent misrepresentations will be applicable to the party's common law fraud claims"); Raymark Indus., Inc. v. Stemple, 714 F. Supp. 460, 465 (D. Kan. 1988) (holding that the wrong in a misrepresentation case was felt in Kansas where the plaintiff received the defendants' misrepresentations that certain claimants were entitled to proceeds from a settlement fund in Kansas, the settlement monies were kept in Kansas, and the funds were paid to Kansas claimants).

particular claim arose.

The one case which is factually similar supports choosing Kansas law in this case. In Seitter v. Schoenfeld, the counterdefendant moved to dismiss a negligent misrepresentation counterclaim. 678 F. Supp. 831, 835 (D. Kan. 1988). The counterclaimant sought to apply Kansas law to its counterclaim because the counterclaimant loaned the money to the counterdefendant in Kansas, the counterdefendant defaulted on the loan in Kansas where the counterdefendant was located, the collateral securing the loan was located in Kansas, the counterdefendant foreclosed on the counterdefendant's assets in Kansas, and the counterdefendant incurred expenses in liquidating those assets in Kansas. Id. at 835-36. The federal district court rejected the application of Kansas law, however, noting that although the "cause of [the counterclaimant's] injuries may have occurred in Kansas, . . . the effects of [the counterdefendant's] alleged actions were felt in Illinois" where the counterclaimant had its offices. Id.

In holding that the counterclaimant felt its injury at its offices in Illinois, the court rejected the argument that the counterclaimant felt its injuries at its "corporate headquarters in New York." Id. at n.2. "All negotiations took place with Illinois personnel in the Illinois offices. Notice of default was also sent to Illinois. The transaction was plainly centered around [the counterclaimant's] Illinois location, and the location of the company's national headquarters is not controlling in this factual situation." Id.

Here, as in Seitter, the relevant activity related to the underlying price-fixing claim occurred in Kansas. Accepting the Amended Complaint's uncontroverted allegations as true, Plaintiff made decisions related to its fertilizer operations in Kansas, and made actual purchases of natural gas from Defendants in Kansas. Although Plaintiff made purchases in other states as well, it did not make any such purchases in Missouri, its principal place of business. Further, Plaintiff alleges harm separate from financial losses from the sales themselves. Plaintiff also alleges that due to Defendants' price manipulation,

Plaintiff was deprived of the ability to make certain business decisions in a full and free competitive market for natural gas. As the Amended Complaint alleges these decisions were made in Kansas, Plaintiff felt this injury, if anywhere, in Kansas.

The Court therefore concludes that Kansas law applies to Plaintiff's claim. Because Kansas provides for a full consideration remedy, the Court will deny Defendants' motion for judgment on the pleadings.

**IV. CONCLUSION**

IT IS THEREFORE ORDERED that Defendants' Motion for Judgment on the Pleadings (Doc. #1806) is hereby DENIED.

DATED: November 3, 2010

_____
PHILIP M. PRO
United States District Judge