UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| IN RE WESTERN STATES WHOLESALE NATURAL GAS ANTITRUST LITIGATION, | MDL Docket No. 1566 |
| | Base Case No. 2:03-cv-01431-RCJ-PAL |
| THIS DOCUMENT RELATES TO: *ALL ACTIONS* | **ORDER** |
| | (Mot Compel – (Dkt. #2174) |

Before the court is Plaintiffs' Motion to Compel the Dynegy Defendants to Produce Documents and Memorandum in Support (Dkt. #2174). The court has considered the motion, Dynegy's Response (Dkt. #2180), Plaintiffs' Reply (Dkt. #2190), Plaintiffs' Supplemental Reply (Dkt. #2242), Dynegy's Response to Plaintiffs' Supplemental Reply (Dkt. #2243), and the arguments of counsel at the hearing on this and other matters.

## BACKGROUND

Plaintiffs in this multi-district litigation have sued the Defendants alleging a conspiracy to fix natural gas prices by reporting false or inaccurate information about natural gas transactions between 2000 and 2002. Plaintiffs allege Dynegy and the other Defendants falsely reported natural gas trades to various energy industry publications which compile and report index prices.

I.      **The Parties' Positions.**

   **A. Plaintiff's Motion to Compel.**

The motion to compel seeks an order compelling Dynegy to produce:

1.      Internal Dynegy memorandum and documents containing facts discovered during its internal investigation;

2.      Attorney notes regarding Dynegy employee interviews and a memo drafted by counsel summarizing the employee interviews;

1

3.  Various reports listing or summarizing the trades and transactions by Dynegy's traders;

4.  A spreadsheet and a directory of Dynegy's traders' phone calls;

5.  A memorandum from Dynegy's general counsel to all Dynegy employees regarding the Commodities Futures Trading Commission ("CFTC") and the Federal Energy Regulatory Commission ("FERC") investigation; and

6.  An index of trader Michelle Valencia's log books.

These documents have been withheld from production as either attorney-client privileged or work-product protected.  Plaintiffs claim that the documents are neither.  Plaintiffs argue the documents are not work produce because they would have been prepared by Dynegy regardless of the potential for litigation, and they are not attorney-client privileged documents because they do not contain or solicit legal advice.  Alternatively, Plaintiffs argue that even if the documents were entitled to work-product or attorney-client protection, that protection was waived because Dynegy produced them to the federal government.

Plaintiffs claim the documents are not privileged because they were prepared in the ordinary course of business for business purposes.  After Dynegy learned that certain employees in its marketing and trading business furnished inaccurate information regarding natural gas prices to industry publications, Dynegy issued a press release disclosing this information and announcing that it was conducting an internal investigation.  The press release establishes Dynegy's business–related purposes for conducting the investigation and collecting the information.  Dynegy used the investigation's findings to make changes in how traders were allowed to provide price information to industry publications and began requiring that all natural gas price information be verified by the office of Dynegy's chief risk officer before being reported to the trade publications.

Plaintiffs acknowledge that opinion work product which consists of the mental impressions, conclusions or legal theories of an attorney of a representative or party is entitled to near absolute protection and is discoverable in only rare and extraordinary circumstances.  However, fact work product, which consists of factual material prepared in anticipation of

2

litigation is discoverable upon a showing of substantial need and undue burden.  The documents at issue appear to be nothing more than a collection of factual material uncovered during Dynegy's internal investigation, and should therefore be discoverable upon a showing of substantial need and an inability to obtain the information without undue burden.  Plaintiffs assert they have a substantial need for the documents because they are plainly relevant and necessary for trial preparation.  The fact that Plaintiffs may be able to obtain some of the information contained in the documents through a deposition does not prevent discovery.  The court should apply Rule 1 and compel discovery because forcing Plaintiffs to engage in unguided discovery and fish for answers about the information contained in the documents is inefficient and unnecessarily runs up litigation costs.

Alternatively, the Plaintiffs argue that even if the documents are otherwise privileged, that privilege was waived because Dynegy turned the documents over to the federal government.  Dynegy's attorney admitted during a deposition that Dynegy's internal report resulting from its internal investigation was produced both to the Federal Energy Regulatory Commission ("FERC") and the Commodities Futures Trading Commission ("CFTC").  Dynegy produced "other documents" relating to its investigation to FERC and CFTC and Plaintiffs presume these documents were likely used as source materials for Dynegy's internal reports.  Thus, any work product protection for them has been waived.

**B.  Dynegy's Opposition.**

Dynegy opposes the motion asserting the documents are entitled to work product and attorney-client privilege protection because they were generated by or at the direction of counsel conducting an internal investigation of alleged corporate wrongdoing.  Dynegy claims that all of the documents at issue were created by Dynegy's counsel or by individuals working under their direction during the course of an internal investigation conducted in response to an unprecedented government investigation and in anticipation of related civil litigation.  The work product doctrine applies to both attorney-created documents and to documents created at their direction.  Dynegy became the subject of federal investigations conducted by the President's Corporate Fraud Task Force and lead by the Department of Justice in the summer of 2002.

1    Dynegy retained outside counsel to conduct an internal investigation into the alleged acts of
2    misconduct both to respond to the investigation and in anticipation of civil litigation.

3           Dynegy disputes that its press release is indicia that the documents were prepared for a
4    business-related purpose.  It argues that when a publicly-traded company issues a press release
5    concerning the preliminary results of an investigation undertaken in response to a major federal
6    investigation, it does not change the purpose of the investigation or transform otherwise
7    protected work product into discoverable "business-related" documents.  Such a holding would
8    discourage publicly traded companies from disclosing information to the investing public.
9    Informing the investing public that Dynegy was conducting an investigation does not change the
10   reason why the investigation was conducted.

11          Citing *In re: Grand Jury Subpoena,* 357 F.3d 900, 905-08 (9th Cir. 2004), Dynegy argues
12   that controlling Ninth Circuit law is clear that the work product generated by legal counsel
13   retained to conduct an investigation is protected, even if the business also makes some use of the
14   information for an independent business purpose.  In that case, some of the investigation
15   documents had a dual purpose: they were prepared in anticipation of litigation with the
16   government, and to satisfy a business-related reporting obligation to the Environmental
17   Protection Agency ("EPA").  The Ninth Circuit applied the "because of test" and concluded that
18   the investigation documents were entitled to work-product protection because the threat of
19   impending investigation prompted the defendant to hire an outside consultant and gather the
20   investigative documents.  Similarly, in this case, Dynegy's investigation documents were
21   prepared only because of the Federal Task Force investigation and in anticipation of related civil
22   litigation.

23          Dynegy also disputes that it waived work product protection and attorney-client privilege
24   by producing the documents to the federal government.  In *Regents of University of California v.*
25   *Superior Court*, 165 Cal. App. 4th 672 (2008), a California appellate court held that Dynegy's
26   involuntary coerced disclosures to the federal government did not constitute a waiver of work
27   product protection or the attorney-client privilege as a matter of law.  It also found as matter of
28   fact that Dynegy's disclosure of investigation documents to the federal task force was coerced.

4

The *Regents* plaintiffs were once part of this MDL proceeding before the case was remanded.  Plaintiffs moved to compel production of the same investigation documents at issue here.  After allowing discovery, full briefing and a hearing, the trial court held that Dynegy's disclosure to the federal task force was coerced and denied the motion to compel.  The California Court of Appeal affirmed the trial court's holding that "the threat of regulatory action and indictment pose the risk of significant costs and consequences to the corporation such that they could cooperate with the United States Department of Justice investigation without waiving the privilege."  *Id.* at 675.  A number of other courts have held that coercive government investigative tactics and threats of indictment were coercive.  Dynegy acknowledges that voluntary disclosures of privileged documents ordinarily waives the privilege.  However, none of the cases cited by plaintiffs involve the Federal Task Force or the well-documented DOJ memoranda on which it operated.  Under the circumstances of this investigation Dynegy's disclosure of investigation documents to the Task Force was neither voluntary nor a waiver of work-product protection or attorney-client privilege.

Dynegy opposes production of interview notes because they contain the mental impressions, conclusions, opinions and theories of Dynegy's counsel.  Dynegy claims that it is not "reasonably possible" to separate the opinion work product from any purely factual information contained in the investigation documents, and the documents should therefore be afforded near absolute protection from discovery.

Dynegy also argues that Plaintiffs have not met their burden of demonstrating substantial need and unavailability of Dynegy's work product from any other source.  Plaintiffs can generate their own work product by analyzing documents produced in discovery in this case.  Additionally, to the extent Dynegy's knowledge of discoverable facts comes from privileged interviews of its personnel, these individuals have been identified in discovery and Plaintiffs can discover the facts by deposing the witnesses.  Plaintiffs are seeking hundreds of millions of dollars in damages, and should not be heard to argue that that discovery of information is expensive.

1    Finally, Dynegy represents that few documents that Plaintiffs seek to compel have been

2    withheld under the attorney-client privilege.  Those that have been withheld "are hornbook

3    examples of privileged attorney-client communications."

4    Plaintiffs support the assertion of privilege with the attached declaration of Jason

5    Buchman.  Mr. Buchman's declaration attests that he is familiar with the formal and informal

6    demands for documents and information made by the Department of Justice, the CFTC, the

7    FERC, and a DOJ subpoena served on Dynegy in May 2002, to testify before a grand jury.

8    Buchman declaration ¶2.  Dynegy hired two outside firms to conduct internal investigations and

9    to assist Dynegy in complying with government demands for information and documents.  *Id.* ¶3.

10   Dynegy's counsel interviewed employees whose jobs related to natural gas trading and reporting

11   of information to energy publications as part of its internal investigation.  *Id.*  Dynegy's counsel

12   summarized the interviews of these employees and the summaries "reflect multiple layers of

13   counsel's mental processes."  *Id.*  Counsel analyzed the information it had gathered to provide

14   legal advice to Dynegy.  *Id.*  Federal agencies investigating Dynegy demanded the interview

15   summaries prepared by Dynegy's counsel.  Dynegy "acceded to the government's demands"

16   because it was cognizant that withholding this information would jeopardize its cooperative

17   status under the *Holder* and *Thompson* memoranda[1].  *Id.*  Dynegy's counsel directed analyses of

18   Dynegy's natural gas trading activities.  *Id.* ¶5.  The documents summarizing or analyzing the

19   data and information reflected Dynegy's counsel's evaluation of the relevant facts and law

20   pertaining to allegations of misreporting and loss trading.  *Id.*  Federal agencies investigating

21   Dynegy demanded the analyses and Dynegy produced the information because withholding it

22   would jeopardize its cooperative status under the *Holder* and *Thompson* memoranda.

23   **C.  Plaintiff's Reply.**

24   The reply reiterates arguments that the documents are not entitled to work product

25   protection or attorney-client privilege.  The court should order Dynegy to produce all of the

26   documents.  Alternatively, the court should conduct an *in camera* inspection to determine

27
28
[1] These are memoranda prepared by United States Deputy Attorney Generals outlining the factors the DOJ considers when contemplating criminal charges against a corporation.  One of the factors is the corporation's level of cooperation.

whether, as Dynegy claims, any of the documents contain mental impressions of, or advice from, Dynegy's counsel. The reply asserts that Dynegy acknowledges it produced the documents to the government and is asking that the court apply the principle of selective waiver. Dynegy produced the documents to the government because it concluded that the potential benefits of producing them outweighed the risk, and "cannot now undo this decision and prevent Plaintiffs from obtaining the same information it shared with the CFTC and FERC."

Plaintiffs concede that summaries of witness interviews may be considered opinion work product when they include an attorney's impressions and opinions of a witness. However, not all of the documents at issue are interview memos. Most of them are a collection of purely factual information compiled by non-attorneys.

An attorney's contemporaneous notes that purport to report or record in whole or in part direct quotes or paraphrases of statements by witnesses are fact work product subject to discovery. Plaintiffs are entitled to production of the documents because the information in the documents is clearly necessary for Plaintiffs to prepare their case for trial. Therefore, Plaintiffs have a substantial need for the documents. Additionally, Plaintiffs have tried unsuccessfully to obtain the documents from multiple sources. The fact that Plaintiffs have or may depose Dynegy's former or current employees, or that Dynegy has produced documents that contain some of the requested information does not relieve Dynegy of its obligation to produce the documents in dispute. Finally, Plaintiffs claim that Dynegy's privileged document log, with the exception of one document, contains no indication from the description that any of the documents contain or solicit legal advice from Dynegy's counsel.

**D. November 10, 2015 Hearing and Post-Hearing "Supplements".**

At a November 10, 2015 status conference, counsel for Dynegy acknowledged that the documents at issue in Plaintiffs' motion to compel were all previously produced to the CFTC. This prompted Plaintiffs to file a Supplemental Response (Dkt. #2242), which in turn prompted Dynegy to file a Supplemental Reply (Dkt. #2243). Counsel had a full opportunity to present their arguments in the motion, response, reply, and at the hearing. The court will simply not

1    tolerate an unending stream of supplemental papers on issues that have been or could have been
2    fully briefed and argued.

3                                          **DISCUSSION**

4            During the hearing on oral argument on this motion, counsel for Dynegy acknowledged
5    that all of the documents in dispute in the motion to compel were disclosed to the federal
6    government.  At issue in this motion is whether Dynegy waived the attorney-client privilege and
7    qualified work-product privilege by voluntarily disclosing privileged documents to the federal
8    government.   Plaintiffs claim that the voluntary disclosure of the documents waived any
9    attorney-client or work-product privilege.  Dynegy maintains that, because the materials were
10   sought pursuant to a federal task force investigation consisting of the DOJ, FERC and CFTC and
11   pursuant to DOJ policies memorialized in the Thompson & Holder memoranda, that its
12   disclosures were coerced, and the disclosures to the government did not result in waiver.

13       **I.      Applicable Law.**

14           **A. Attorney-Client Privilege**

15           The attorney-client privilege is one of the oldest of the common law privileges.  *Upjohn*
16   *v. United States*, 449 U.S. 383 (1981).   Its purpose is "to encourage full and frank
17   communication between attorneys and their clients and thereby promote broader public interest
18   in the observance of law and administration of justice."  *Id.*  The Ninth Circuit has adopted Dean
19   Whitmore's articulation of the essential elements of the attorney-client privilege:

20           (1) Where legal advice of any kind is sought

21           (2) from a professional legal advisor in his capacity as such,

22           (3) the communications relating to that purpose,

23           (4) made in confidence

24           (5) by the client,

25           (6) are at this instance permanently protected

26           (7) from disclosure by himself or by the legal advisor,

27

28

1    (8) unless the protection is waived.

2    *In re: Fishel*, 557 F.2d 209 (9th Cir. 1997).

3    The burden is on the party asserting the privilege to establish all of the elements of the

4    privilege. *United States v. Martin*, 378 F.3d 988, 999-1000 (9th Cir. 2000). "Because it impedes

5    full and free discovery of the truth, the attorney-client privilege is strictly construed." *Weil v.*

6    *Investment/Indicators, Research and Management, Inc.*, 647 F.2d 18, 24 (9th Cir. 1980). One of

7    the elements the party claim the privilege must prove is that it has not waived the privilege. *Id.*

8    The attorney-client privilege is waived when communications are made in the presence of third

9    parties. *United States v. Gann*, 732 F.2d 714, 723 (9th Cir.), *cert denied*, 469 U.S. 1034 (1984).

10   It is well established that "voluntary disclosure of the content of a privileged attorney

11   communication constitutes a waiver of the privilege as to all such communications on the same

12   subject." *Id.* Voluntary disclosure of privileged documents to third parties generally destroys

13   the privilege. *In re: Pacific Pictures Corp.,* 679 F.3d 1121, 1126-27 (9th Cir. 2012). The

14   rationale for this rule is that because the basis of the attorney-client privilege is to protect

15   confidential communications, that purpose ceases when confidential communications are

16   voluntarily disclosed to a third person.

17   Dynegy argues that it only responded to the government's request for documents

18   pursuant to a grand jury subpoena for testimony, and under pressure of potential civil and

19   criminal penalties, and thus its disclosures were coerced. Dynegy relies on a California

20   Appellate Court's decision in *Regents of the University of California v. Superior Court*, 165 Cal.

21   App. 4th 672 (Cal. App. 4th 2008) to support its position that its disclosure of privileged

22   materials was coerced and therefore, did not result in waiver. There, the court found that the

23   threat of regulatory action and indictment posed the risk of significant costs and consequences to

24   the corporations such that Dynegy could not cooperate with the Department of Justice

25   investigation without waiving the privilege. The documents at issue in that case are the same

26   documents at issue here. The *Regents* case involved the same task force investigating Dynegy's

27   conduct and allegations it unlawfully inflated the retail price of natural gas in California between

28

1    1999 and 2002.  The task force was composed of the United States DOJ, FERC and the CFTC as

2    well as SEC.

3        The *Regents* Plaintiffs moved to compel the production of the privileged documents

4    turned over to the task force arguing the Defendants made a business decision to produce the

5    documents and therefore, waived privilege.  The trial court denied the motion to compel finding

6    the Defendants' cooperation with the federal agencies did not waive privileges.  The Court of

7    Appeals considered the matter in a petition for writ of mandate.  The California Appellate Court

8    applied California Evidence Code § 912 and found that the Defendants' disclosure of the

9    documents to the federal agencies investigating its conduct did not constitute a waiver.  Section

10   912, Subdivision A of the California Evidence Code expressly provides that the attorney-client

11   privilege is waived if the holder of the privilege disclosed significant part of the communication,

12   or consented to disclosure, without coercion.  The Court of Appeals noted that the term

13   "coercion" was not defined in Section 912.  However, it applied a common dictionary definition

14   of the word "coercion" and found that the disclosures the Defendants made to the government

15   agencies did not waive their attorney-client and attorney work-product privileges because "the

16   Defendants here had no means of asserting the privileges without incurring the severe

17   consequences threatened by the government agencies."  *Id.* at 683.  The DOJ's cooperation

18   policy was well publicized, counsel for each of the Defendants was aware of the policy at the

19   time counsel advised each of the Defendants to comply with the government's requests, and the

20   court concluded the DOJ's policy had coercive impacts.  *Id.* at 684.

21       The *Regents* case is not persuasive because it applied a California Evidence Code

22   provision.  This case is governed by federal common law principles, and Dynegy cites no federal

23   case holding compliance with subpoenas issued by the federal government is "coerced" for

24   purposes of privilege waiver.  The Ninth Circuit has plainly held that a party may not selectively

25   waive the attorney-client privilege.  It has held that voluntary disclosure to one waives the

26   attorney-client privilege as to the world at large.  *In re: Pacific Picture Corp.*, 679 F.3d 1121,

27   1127 (9th Cir. 2012).  There, the court noted that only the Eighth Circuit had adopted the

28   selective waiver doctrine in its decision in *Diversified Entities, Inc. v. Meredith*, 572 F.2d 596

10

(8th Cir. 1978) (en banc).  *Id.* at 1127.  Every other circuit to have addressed the issue had rejected the doctrine of selective waiver.  *Id.*  The Ninth Circuit declined to adopt the selective waiver theory finding that, if it was "to unmoor a privilege from its underlying justification" it would be failing to construe the privilege narrowly."  *Id.* at 1128.  It observed that since the Eighth Circuit decided *Diversified*, there had been multiple legislative attempts to adopt the theory of selective waiver which had failed.  *Id.*  It cited the report of the Advisory Committee on Evidence Rules and portions of the Congressional Record in which Congress declined to adopt a new privilege to protect disclosures of attorney-client privileged materials to the government.  *Id.* As Congress had declined to broadly adopt a new privilege protecting disclosures of attorney-client privileged materials to the government, the Ninth Circuit also declined to do so.  *Id.*

The petitioners in *In re: Pacific Pictures* also argued that disclosures to the government were involuntary because the documents were produced subject to a subpoena.  Citing *United States v. de la Jara*, 973 F.2d 746, 749-50 (9th Cir. 1992), the Ninth Circuit reaffirmed that involuntary disclosures do not automatically waive the attorney-client privilege.  *Id.* at 1130. However, without the threat of contempt, "the mere existence of a subpoena does not render testimony or the production of documents involuntary."  *Id.*  Citing *Westinghouse Elec. Corp. v. Republic of the Philippines* 951 F.2d 1414, 1425 (3rd Cir. 1991).  Rather, a subpoenaed party's decision not to assert privilege at the appropriate time is "relevant to the waiver analysis."  *Id.* (citations omitted).  The petitioner had both solicited the subpoena and decided not to assert the privilege when it was appropriate to do so, and the Ninth Circuit therefore found that the district court properly treated the disclosure of the documents as voluntary.

**B.  The Qualified Work Product Doctrine.**

The work product doctrine is a "qualified privilege" that protects "certain materials prepared by an attorney acting for his client in anticipation of litigation."  *United States v. Nobles*, 422 U.S. 225, 237-38 (1975) (internal quotation marks omitted) ("At its core the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.").  The work product doctrine is codified in Fed. R. Civ. P. 26(b)(3) and protects "from discovery documents and tangible things prepared by

a party or his representative in anticipation of litigation." *In re: Grand Jury Subpoena*, 357 F.3d 900, 906, citing *Admiral Insurance Co. v. United States District Court*, 881 F.2d 1486, 1494 (9th Cir. 1989).  An adverse party may obtain documents protected by the work product privilege only upon a showing of substantial need and undue hardship in obtaining the substantial equivalent of the materials by other means.  Fed. R. Civ. P. 26(b)(3).

The Ninth Circuit has held that to qualify for work product protection under Rule 26(b)(3), the documents must: (1) be prepared in anticipation of litigation or for trial; and (2) be prepared by or for another party, or by or for that other party's representative.  *Id.* at 907 (internal quotations and citations omitted).  Unlike the attorney-client privilege, which is waived by voluntary disclosure, the work product privilege is not waived unless voluntary disclosure "has substantially increased the opportunities for potential adversaries to obtain the information." *Goff v. Harris Operating Co., Inc.*, 240 F.R.D. 659 (2007) citing Charles A. Wright, Arthur R. Miller & Richard L. Moore, *Federal Practice & Procedure*: Civil 2d Section 2024 (1994) at 369 & n. 52.  Thus, the court in *Goff* concluded that one may waive the attorney-client privilege without waiving the work-product privilege.  *Id.,* citing Wright & Miller and *In re: EchoStar Communications*, 448 F.3d 1294, 1301 (Fed. Cir. 2006).  In *EchoStar* the Federal Circuit held that "work product waiver is not a broad waiver of all work product related to the same subject matter like that attorney-client privilege."

As Wright & Miller explain, the purpose of the attorney-client privilege is to protect confidential communications.  The purpose of the privilege ceases to exist if the communications are voluntarily disclosed to a third person.  *Federal Practice & Procedure*, 3d Section 2024 at 531.  However, the purpose of the work product rule is to protect evidence from the knowledge of opposing counsel and his client, thereby preventing its use against the lawyer gathering the materials. *Id.* (citation omitted).  The authors conclude that because of the distinction between the purposes of both privileges "the result should be that disclosure of a document to third persons does not waive work product immunity unless it has substantially increased the opportunities for potential adversaries to obtain the information." *Id.* at 532. *See also*

1  *Transamerica Computer Co., Inc. v. Intern. Business Machines Corp.*, 573 F. 2d 646, 647 (9th
2  Cir. 1978), citing Wright & Miller.

3  **II. Analysis & Decision.**

4  Here, the declaration of counsel supporting the opposition indicates that the DOJ, CFTC
5  and FERC served formal and informal demands for documents and information.  The DOJ
6  served a subpoena on Dynegy in May 2002, to testify before a grand jury.  As a result, Dynegy
7  hired two outside firms to conduct internal investigations to assist Dynegy in complying with the
8  government demand for information and documents.  Dynegy's counsel interviewed employees,
9  summarized the interviews of these employees, analyzed the information gathered to provide
10  legal advice to Dynegy.  The federal agencies demanded the interview summaries, as well as
11  Dynegy's counsel's analyses of Dynegy's natural gas trading activities.   The documents
12  summarizing or analyzing the data and information reflected Dynegy's counsel's evaluation of
13  the relevant facts and law pertaining to the allegations of misreporting and loss trading.  The
14  federal agencies investigating Dynegy demanded these materials, and Dynegy produced them
15  because withholding them would jeopardize its cooperative status under the Holder & Thompson
16  memoranda.

17  The court finds Dynegy waived its attorney-client privilege with respect to the disclosure
18  of attorney-client privileged documents to the federal agencies investigating Dynegy.   The
19  justification for the attorney-client privilege ceased to exist when Dynegy and its counsel elected
20  to disclose otherwise privileged attorney-client materials to the government.  Dynegy had the
21  option of moving to quash or modify the subpoena or document requests.  By producing its
22  attorney-client privileged materials to the government, it waived its attorney-client privilege for
23  the information and materials disclosed.  The court will therefore compel Dynegy to produce all
24  attorney-client privileged documents disclosed pursuant to the government agencies' document
25  requests and subpoenas at issue in this motion to the Plaintiffs.

26  However, the court finds that Dynegy did not waive its work-product protection by
27  producing its work product to investigating governmental agencies.  The attorney-client and
28  work-product privileges serve different purposes. The court agrees with the conclusion of Wright

& Miller and those cases that have held that disclosure to third persons should not result in waiver of the work-product privilege unless it has substantially increased the opportunities for potential adversaries to obtain the materials. The Ninth Circuit's decision in *In re: Pacific Pictures Corporation* rejected a selective waiver of the attorney-client privilege. It did not address selective waiver with respect to the qualified work-product protection. Additionally, the Ninth Circuit has recognized the distinction between the attorney-client privilege and work-product doctrine with respect to waiver. *See Transamerica Computer Co. v. Intern. Business Machines Corp.*, 573 F.2d 646, 647 (9th Cir. 1978).

It is undisputed that Dynegy hired two outside law firms to investigate the government task force's allegations, to assist in complying with government information requests and to provide Dynegy with legal advice about potential litigation. The court is satisfied that the documents were produced "because of" anticipated litigation and would not have been prepared in substantially similar form without the threat of litigation by the government. *See, In re Grand Jury Subpoena*, 357 F.3d 900, 908 (9th Cir. 2004) (extending work product protection to "dual purpose" documents employing the "because of" standard articulated in the Wright & Miller Federal Practice Treatise).

Dynegy has disclosed the witnesses who were interviewed and produced the documents underlying the investigation conducted by its outside counsel. The Plaintiffs are able to obtain discovery from the witnesses who were interviewed by deposing the witnesses. Plaintiffs have not met their burden of establishing substantial need for the materials in preparation of their case, or that they are unable to obtain the substantial equivalent of the materials without undue hardship as required by Fed. R. Civ. P. 26(b)(3). It is indeed useful and cost effective to take advantage of the work product, mental impressions, legal analysis and conclusions of one's opposing counsel. However this does not meet the substantial need test. Plaintiffs also ask the court to apply the 2015 amendments to Rule 1 and 26 to compel disclosure of Dynegy's work product because it will accomplish the "just, speedy and inexpensive" resolution of this case and the goal of proportional discovery. The court lauds the amendments and their aim to change a

legal culture of scorched earth discovery practices.   However, the 2015 amendments to Rule 1 and 26 do not justify an order compelling production of Dynegy's work-product.

**IT IS ORDERED** that Plaintiffs' Motion to Compel (Dkt. #2174) is **GRANTED in part** and **DENIED in part**.

1.  The motion is granted with respect to attorney-client privileged materials Dynegy produced to investigating federal agencies, and Dynegy shall have until May 19th to produce these materials

2.  The motion is denied with respect to work product materials produced to investigating federal agencies.

Dated this 5th day of May, 2016.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE