# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| IN RE WESTERN STATES WHOLESALE NATURAL GAS ANTITRUST LITIGATION | MDL No. 1566 |
| | Case No. CV-01431-RCJ-PAL |
| -------------------------------------------------------- | |
| *Learjet, et al. v. ONEOK, Inc., et al.* | **PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR:** |
| *Heartland Regional Medical Center, et al. v. ONEOK, Inc., et al.* | 1. **CERTIFICATION OF SETTLEMENT CLASSES;** |
| *Arandell Corporation, et al. v. Xcel Energy, Inc., et al.* | 2. **PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH THE AEP, CORAL, DUKE AND ONEOK DEFENDANTS;** |
| *NewPage Wisconsin System, Inc. v. CMS Energy Resource Management Co., et al.,* | 3. **DIRECTING NOTICES TO CLASSES;** |
| | **AND** |
| | 4. **EXPEDITED CONSIDERATION.** |

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................4

I.     FACTUAL AND PROCEDURAL HISTORY ..................................................4

II.    THE SETTLEMENTS ......................................................................................10

III.   THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENTS. ......11

     A.   The Requirements of Rule 23(a) Are Satisfied in This Case ...............14

         1.   The Class Is So Numerous That Joinder of All Members Is Impracticable...............................................................................14

         2.   This Case Involves Questions of Law and Fact Common to the Classes .............................................................................15

         3.   Plaintiffs' Claims Are Typical of the Class's Claims ...............16

         4.   Plaintiffs Will Fairly and Adequately Protect the Interests of the Class .................................................................................17

             a.   Adequacy of Representation ..............................................18

             b.   Fairness of Representation ................................................21

     B.   The Requirements of Rule 23(b)(3) Are Satisfied in this Case ...........28

         1.   Common Questions of Law and Fact Predominate Over Individual Questions ...............................................................28

         2.   A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of This Case ...................................29

     C.   The Court Should Appoint Settlement Class Counsel. ........................30

     D.   Rule 26(e) Fairness, Reasonableness and Adequacy Hearing .............31

IV.   PROPOSED PLAN OF SETTLEMENTS.........................................................31

V.    PROPOSED PLAN OF ALLOCATION.........................................................34

VI.   THE COURT SHOULD SET A FINAL APPROVAL SCHEDULE............................35

VII.  CONCLUSION ................................................................................................36

## <u>EXHIBITS</u>

Exhibit A, Declaration of Jennifer G. Bacon, with Exhibits 1 through 9 thereto

Exhibit B, Declaration of Russell Jones

Exhibit C, Declaration of Robert Gegios

Exhibit D, Declaration of Gary McCallister

Exhibit E, Declaration of Eric Unrein

Exhibit F, Declaration of Don Barry

Exhibit G, Summary of Expenses

Exhibit H, Declaration of Jeffrey Dahl

55086894.1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.M. v. Moda Health Plan, Inc.*,
  2015 WL 9839771 (W.D.Wash. Nov. 3, 2015) ......................................................26

*In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*,
  276 F.R.D. 364 (C.D. Cal. 2011) .......................................................................18

*Amchem Prods. Inc. v. Windsor*,
  521 U.S. 591 (1997) ........................................................... 12, 18, 28, 32

*Amgen Inc. v. Conn. Ret. Plans and Trust Funds*,
  __U.S. ___, 133 S. Ct. 1184 (2013) ..................................................................28

*In re ATM Fee Antitrust Litig.*,
  686 F.3d 741 (9th Cir. 2012) ...........................................................................12

*In re Bluetooth Headset Prods. Liab. Litig*,
  654 F.3d 935 (9th Cir. 2011) ....................................................................... 13, 21

*Californians for Disability Rights, Inc. v. Cal. Dept. of Trans.*,
  249 F.R.D. 334 (N.D. Cal. 2008) .......................................................................14

*Camacho v. City of San Luis*,
  359 Fed. App'x 794, 2009 WL 4912617 (9th Cir. 2009) .......................................12

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  308 F.R.D. 606 (N.D. Cal. 2015) ................................................................. 12, 17

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  No. 14-CV-2058 JST, 2015 WL 9266493 (N.D. Cal. Dec. 17, 2015) (*CRT II*) .............. 24, 34

*Churchill Village, LLC v. Gen. Elec.*,
  361 F.3d 566 (9th Cir.2004) ...................................................................... 13, 31

*Cifuentes v. Red Robin Int'l, Inc.*,
  No. C-11-5635-EMC, 2012 WL 693930 (N.D. Cal. Mar. 1, 2012)......................................17

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
  No. M 02-1486 PJH, 2006 WL 1530166 (N.D. Cal. June 5, 2006)........................... 15, 17, 29

*In re Exxon Valdez*,
  229 F.3d 790 (9th Cir. 2000) ...........................................................................12

iii

*Farley v. Baird, Patrick & Co., Inc.*,
    No. 90 Civ. 2168 (MBM), 1992 WL 321632 (S.D.N.Y. Oct. 28, 1992) ..............................31

*Fraley v. Facebook, Inc.*,
    No. CV-11-01726 RS, 2012 WL 6013427 (N.D. Cal. Dec. 3, 2012) ...................................34

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...................................................................13, 16, 17, 18, 30

*Hansberry v. Lee*,
    311 U.S. 32 (1940) .......................................................................................................18

*Harrington v. City of Albuquerque*,
    222 F.R.D. 505 (D.N.M. 2004).........................................................................................31

*Harris v. U.S. Physical Therapy, Inc.*,
    No. 2:10-CV-01508-JCM-VCF, 2012 WL 3277278 (D. Nev. July 18, 2002)................13, 25

*Hervis v. Vector Marketing Corp.*,
    No. C-8-5198 EMC, 2012 WL 381202 (N.D.Cal. February 6, 2012) ...................................27

*Hester v. Vision Airlines, Inc.*,
    No. 2:09-CV-00117-RLH, 2014 WL 1366550 (D. Nev. Apr. 7, 2014)
    (Hunt, J.) .............................................................................................................13, 25

*Horn v. Associated Wholesale Grocers, Inc.*,
    555 F.2d 270 (10th Cir. 1977) .........................................................................................14

*Howell v. JBI, Inc.*,
    298 F.R.D. 649 (D. Nev. 2014)..............................................................3, 12, 14, 18, 21, 22

*Lee v. Enter. Leasing Co-W.*,
    No. 3:10-CV-00326-LRH, 2015 WL 2345540 (D. Nev. May 15, 2015) .......................13, 25

*In re Linerboard Antitrust Litig.*,
    292 F. Supp. 2d 568 (E.D. Pa. 2003)................................................................................12

*In re Linerboard Antitrust Litig*,
    292 F. Supp. 2d 631 (E.D. Pa. 2003)..........................................................................19, 24

*Martinez v. Realogy Corp.*,
    2013 WL 5883618 (October 30, 2013) ..............................................................................22

*Messner v. Northshore Univ. HealthSystem*,
    669 F.3d 802 (7th Cir. 2012) .....................................................................................28, 29

*In re Online DVD Rental Antitrust Litig.*,
    No. M 09-2029 PJH, 2010 WL 5396064 (N.D. Cal. Dec. 23, 2010).............12, 15, 16, 17, 18

iv

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) ............................................................23

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000) .........................................................23

*R.H. v. Premera Blue Cross*,
    2014 WL 3867617 (W.D. Wash. Aug.6, 2014) ................................26

*Ries v. Ariz. Beverages USA LLC*,
    287 F.R.D. 523 (N.D. Cal. 2012) .....................................................14

*Riker v. Gibbons*,
    3:08-CV-00115-LRH-VPC, 2010 WL 4366012 (D. Nev. Oct. 28, 2010) ............................25

*Roeder v. Atlanta Richfield Co.*,
    No. 3:11-CV-00105-RCS-WGE, 2013 WL 5878432 .................................... 15, 16

*In re Rubber Chems. Antitrust Litig.*,
    232 F.R.D. 346 (N.D. Cal. 2005) .....................................................15

*Schmidt v. Red Rock Fin. Servs., LLC*,
    No. 2:12-CV-01773-JCM, 2013 WL 5656085 (D. Nev. Oct. 15, 2013) ..............................13

*Slaven v. BP Am., Inc.*,
    190 F.R.D. 649 (C.D.Cal. 2000) .....................................................14

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    No. C 07-01819 CW, 2008 WL 4447592 (N.D. Cal. Sept. 29, 2008) ...........12, 14, 17, 18, 30

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) ..........................................................28

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078,1080 (N.D. Cal. 2007) ....................................33

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    267 F.R.D. 291 (N.D. Cal. 2010) ......................................... 12, 17, 29

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*,
    209 F.R.D. 159 (C.D. Cal. 2002) ....................................................28

*Tyson Foods v. Bouaphakeo*,
    ____U.S. ____, 136 S.Ct. 1036 (2016) ............................................29

*In re Urethane Antitrust Litig.*,
    251 F.R.D. 629 (D. Kan. 2008) .......................................................15

v

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ...........................................................................24

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ...........................................................................................15

*In re Zynga Security Litig.*,
    No. 12-CV-09007-JSC, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) .................22

## Statutes & Rules

28 U.S.C. § 1715(b) ...................................................................................................36

Fed. R. Civ. P. 1 ................................................................................................... 1, 30

Fed. R. Civ. P. 23(a)........................................... 9, 14, 15, 16, 17, 18, 19, 21

Rule 23(b) ......................................................................................... 12, 28, 29

Rule 23(c) ......................................................................................... 30, 31, 32, 33

Rule 23(e) ......................................................................................... 12, 13, 31

Rule 23(g) ......................................................................................... 30, 31

Rule 26(e) ......................................................................................................31

## Other Authorities

1 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* (4th ed. 2002) .......................14

*Moore's Federal Practice* (3d ed. 2003).................................................................34

## INTRODUCTION

After more than a decade of civil litigation, including settlements of other class and individual actions, four of the ten groups of Defendants in this MDL action have entered into settlement agreements with class Plaintiffs in three of the four pending class actions.[1] Specifically, Plaintiffs in Kansas, Missouri, and Wisconsin have reached agreements to settlement with Duke Energy Carolinas, L.L.C (f/k/a Duke Energy Corporation) and Duke Energy Trading and Marketing, L.L.C. (collectively "Duke"), American Electric Power Company, Inc. and AEP Energy Services, Inc. and (collectively, "AEP"), ONEOK, Inc., ONEOK Energy Services Company, L.P. (f/k/a ONEOK Energy Marketing & Trading Company, L.P., and Kansas Gas Marketing, Inc., (collectively, "ONEOK"), and Coral Energy Resources, LP (n/k/a Shell Energy North America (U.S.), L.P.) ("Coral") (all collectively referred to as the "Settling Defendants").  Plaintiffs ask that the Court preliminarily approve these settlements as provided herein. Plaintiffs also ask that this motion be considered on an expedited basis in light of ongoing proceedings and pending motions, and to reduce the number of issues and claims before the Court.  Fed. R. Civ. P. 1.

The classes in *Learjet, et al. v. ONEOK, Inc., et al.*, 2:06-CV-0233-RCJ-PAL (hereinafter, "Kansas Settlement Class"), *Heartland Regional Medical Center, et al. v. ONEOK, Inc., et al.*, 2:07-CV-0987-RCJ-PAL (hereinafter, "Missouri Settlement Class"), and *Arandell Corporation, et al. v. Xcel Energy, Inc., et al.*, 2:06-CV-01019-RCJ-PAL, consolidated with *NewPage Wisconsin System, Inc. v. CMS Energy Resource Management Co., et al.*, 2:09-CV-00915-RCJ-PAL (hereinafter, collectively "Wisconsin Class"), have reached settlements totaling

---

[1] The Settling Defendants are settling three of the four class actions as they are not parties in the fourth case, *Breckenridge Brewery of Colorado, LLC, et al. v. ONEOK, Inc., et al.* (Colorado Class).

$42.8 million. As part of the settlements, AEP will pay the Settling Classes $9,400,000, Duke will pay the Settling Classes $9,400,000, ONEOK will pay the Settling Classes $11,000,000, and Coral will pay the Settling Classes $13,000,000. Assuming the Court approves the fees and expenses proposed herein, class members in Kansas, Missouri and Wisconsin will receive their share of more than $27 million.

These class actions are unlike most such actions based on their scope, longevity and complexity. First, all Plaintiffs and Settling Defendants are, by and large, well-established business entities and governmental organizations, usually with their own corporate attorneys in addition to outside Class Counsel to advise them on the terms of their respective engagement agreements and on the terms of the settlements. They fully understand the risks and responsibilities of their roles as class representatives, and each made a deliberate and considered decision regarding fees and expenses when entering into the agreements.

Second, these cases have a much longer and more litigious history than most class actions. The first of these cases was filed in 2005. The cases have been hard-fought; have already gone once to the United States Circuit Court of Appeals for the Ninth Circuit and twice to the United States Supreme Court. In each instance, adverse decisions were reversed and remanded in favor of the Plaintiffs. Pursuant to their engagement agreements, Class Counsel has not been reimbursed for advanced expenses, nor have they been compensated for the value of their time invested on behalf of class members. Class Counsel has thus far advanced more than $6 million in expenses prosecuting these cases, all without any guarantee of reimbursement. For these reasons, and others stated herein,[2] Class Counsel asks that the Court approve reimbursement of

---

[2] Supra at p. 21.

2

half (50%)[3] of their expenses advanced thus far.  Class Counsel also asks that this Court approve a contingent fee in the amount of 35% of the settlement amounts after expenses have been deducted, which results in a net fees recovery of less than 33% of the gross settlement amount. The specific fees invested shall be itemized and set forth in detail in the forthcoming Application for Fees and Expenses, but to date, counsel has invested in excess of $50 million of time in these class actions.[4] This investment more than warrants the reasonable contingent fee agreed to by the named Plaintiffs.

In preparing this motion and memorandum in support, counsel has studied Judge Jones' previous opinions regarding approval of class settlements. Counsel will explain how and why these settlements meet this Court's criteria for preliminary approval and why this motion therefore should be granted.

At this time, this Court is not being asked to determine with finality whether the settlements and the related plans of allocation are fair, reasonable, and adequate. Rather, consistent with controlling Ninth Circuit law, the question now is only whether the settlements are within the range of possible approval, such that sending and publishing notice to class members, and scheduling a final approval hearing is justified. Even so, the issues of fairness, reasonableness and adequacy will be discussed herein as they relate to whether plaintiffs and Class Counsel will fairly and adequately protect the interests of the classes.[5]  Plaintiffs

---

[3] Plaintiffs seek only 50% of expenses to date as claims against the non-settling defendants continue.

[4] *Infra* at 22.  The amounts of fees noted here include those invested in the Colorado Class action.

[5] *Howell v. JBI, Inc.*, 298 F.R.D. 649, 659 (D. Nev. 2014) (Jones, J).

respectfully submit that the Court should grant this motion because the Settlements are indeed fair and well within the range of possible final approval.

With the pending motions for class certification and motions for summary judgment filed by the non-settling Defendants, it is more than likely that any ruling on such motions by this Court will send these cases once more to the Ninth Circuit on appeal. Settlements that have been reached and would be available for distribution to the class members should be approved and made available before any future potential appeal. Thus, consideration of this motion on an expedited basis is warranted, with a final hearing on fairness to be taken up and heard as soon as the Court can consider this motion on an expedited basis.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      FACTUAL AND PROCEDURAL HISTORY

This Multi-District Litigation arises from a well-publicized arrangement to manipulate the prices of natural gas sold to industrial and commercial users in violation of the laws of the states of Kansas, Missouri, Wisconsin and Colorado occurring in the 2000 to 2002 timeframe. This settlement resolves claims brought by the Kansas Class, Missouri Class and Wisconsin Class against the Settling Defendants. The respective Complaints define the class members as:[6]

> **Kansas** *(Learjet):*  All industrial and commercial direct purchasers of natural gas for their own use or consumption during the period from January 1, 2000 through October 31, 2002, and which gas was used or consumed by them in Kansas.  Excluded from the Class are (a) entities that purchased natural gas for resale (to the extent of such purchase(s) for resale); (b) entities that purchased natural gas for generation of electricity for the purpose of sale (to the extent of such purchase(s) for generation); (c) defendants and their predecessors, affiliates, and subsidiaries; (d) the federal government and its agencies; and (e) Reorganized FLI, Inc. (f/k/a Farmland Industries, Inc.).

> For purposes of the Kansas Class definition, a "direct purchaser" means an industrial or commercial entity that bought natural gas for its own use or consumption directly from

---

[6] *Learjet* Complaint; *Heartland* Complaint; *Arandell* and *NewPage* Complaints.

any of the defendants in the Actions or from a seller other than a local distribution company.

**Missouri (*Heartland*):** All industrial and commercial direct purchasers of natural gas for their own use or consumption during the period from January 1, 2000 through October 31, 2002, and which gas was used or consumed by them in Missouri. Excluded from the Class are (a) entities that purchased natural gas for resale (to the extent of such purchase(s) for resale); (b) entities that purchased natural gas for generation of electricity for the purpose of sale (to the extent of such purchase(s) for generation); (c) defendants and their predecessors, affiliates, and subsidiaries; (d) the federal government and its agencies; and (e) Reorganized FLI, Inc. (f/k/a Farmland Industries, Inc.).

For purposes of the Missouri Class definition, a "direct purchaser" means an industrial or commercial entity that bought natural gas for its own use or consumption directly from any of the defendants in the Actions or from a seller other than a local distribution company.

***Wisconsin (Arandell and NewPage):*** All industrial and commercial purchasers of natural gas for their own use and consumption during the period from January 1, 2000 through October 31, 2002, which gas was used or consumed by them in Wisconsin. Excluded from the class are (a) entities that purchased natural gas for resale (to the extent of such purchase(s) for resale); (b) entities that purchased natural gas for generation of electricity for the purpose of sale (to the extent of such purchase(s) for generation); (c) entities that purchased natural gas from entities that sold natural gas at rates approved by a State regulatory entity or public service commission (to the extent of such purchases at such approved rates); (d) defendants and their predecessors, affiliates and subsidiaries; (e) the federal government and its agencies; and (f) Reorganized FLI, Inc. (f/k/a Farmland Industries, Inc.).

.

Plaintiffs have alleged that defendants' price manipulation began approximately January 1, 2000, and continued in many respects until at least October 31, 2002. Plaintiffs have alleged, and their experts' work has confirmed, that defendants' actions resulted in class members paying excessive prices for natural gas. The manipulation was carried out through agreements to falsely report prices to trade publications that generated price indexes, conducting wash trades and churning activities. The manipulative conduct was facilitated in several ways,

including oral communications, face-to-face meetings, electronic communications, trading platforms, and other means.[7]

The Defendants, along with other co-conspirators, entered into Consent Decrees with the Commodities Futures Trading Commission (CFTC).  Moreover, several Defendants entered into Stipulation and Consent Orders with the Federal Energy Regulatory Commission (FERC), Deferred Prosecution Agreements with the United States Department of Justice (DOJ), and Cease and Desist Orders with the Securities & Exchange Commission (SEC). Additionally, numerous employees of the Defendant groups entered into plea agreements, were convicted, or entered into other agreements with the DOJ and/or the SEC.[8]  In addition to governmental actions, many Defendants and other co-conspirators have been defendants in companion class action cases brought by consumers in other states alleging the same conspiracy to manipulate prices as that alleged herein. These Defendants have settled all of those cases in a manner that was beneficial to class members and court approved.[9]

As noted above, this particular litigation has an extraordinarily lengthy history. More than ten years have passed since the *Learjet* plaintiffs in Kansas first filed their class and individual actions against these Defendants. Soon thereafter, class and individual actions were filed in Missouri, Wisconsin and Colorado. Defendants have fought these actions at every step. Defendants have filed numerous dispositive motions that have thus far resulted in an appeal to the U.S. Circuit Court for the Ninth Circuit and two petitions for certiorari to the U.S. Supreme Court. All appellate actions were decided in favor of Plaintiffs. Defendants have continued to file

---

[7] Bacon Decl. ¶ 9.

[8] Bacon Decl. ¶ 10.

[9] *See e.g., infra* p. 8.

6

and disclosed that they intend to file (despite plaintiffs' objections to defendants' repeated *seriatim* dispositive motion filings), still more dispositive motions.[10] Future rulings could result in additional appeals. Plaintiffs have twice filed motions for class certification.  The first filing was denied as moot when Judge Pro granted the defendants' motion for summary judgment on grounds of preemption, which was the cause of the Ninth Circuit appeal. The second and currently pending filing occurred on March 7, 2016, after the U.S. Supreme Court upheld the Ninth Circuit's denial of Defendants' preemption defense. Plaintiffs' class motions are supported by detailed expert analysis of the antitrust impact on Class Members of the natural gas price-fixing conspiracy alleged in this case.[11]

Regardless of the result on certification, one side will undoubtedly appeal. If trials are conducted, the verdicts will likely also be appealed. All of the foregoing will result in substantial additional delay in litigation that has been pending more than a decade.  It will also result in delay in recovery to the Class Members.

The parties have actively participated in extensive discovery for numerous years, and some discovery remains ongoing. Plaintiffs have submitted responses to hundreds of interrogatories, requests for production of documents, and requests for admissions. Altogether, Class Counsel has reviewed and indexed well over one million documents. Defendants also produced 262,071 audio wave files, containing recorded conversations of their natural gas traders' telephone lines, recorded between January 1, 2000, and October 31, 2002, to which Class Counsel has listened. Class Counsel has responded to dozens of contention interrogatories in which they identified all evidence collected throughout discovery, including documents, audio

---

[10] Bacon Decl. ¶ 11.

[11] Bacon Decl. ¶ 12.

tapes, deposition testimony and information in the public domain supporting their claims. Counsel have also traveled to and appeared at regular status hearings before this Court throughout these many years.[12]

The parties have prepared for, taken and produced clients for depositions, for a total of more than 160 fact depositions.[13] Expert depositions are still ongoing.[14] Although some discovery remains, Plaintiffs and Class Counsel have a solid grasp of the factual and legal issues in each of these cases against all Defendants.[15]

While the *Learjet*, *Heartland*, and *Arandell* cases were pending, five earlier-filed companion cases reached settlement:  *Texas-Ohio Energy, Inc. v. Centerpoint Energy, Inc., et al.*, CV-S-04-0465-PMP-PAL; *Fairhaven Power Co. v. EnCana Corp.*, CV-S-05-0243-PMP-PAL; *Abelman Art Glass Company v. EnCana Corp., et al.*, CV-S-05-0437-PMP-PAL; *Utility Savings & Refund Services, Inc. v. Reliant Energy Services, Inc., et al.*, CV-S-05-0110-PMP-LRL; and *Ever-Bloom, Inc., et al. v. AEP Energy Services, Inc., et al.*, CS-S-05-0808-MPM (collectively, the "California Class Actions").[16] In the first wave of the California settlements, the class members settled with four of the defendants for $2.4 million, one of which is a Settling Defendant in the present cases, and with another defendant for $700,000.[17] As in *Learjet*, *Heartland*, and *Arandell*, the California Class Actions alleged antitrust violations against many of the same Defendants arising from manipulation of natural gas prices between January 1, 2000,

---

[12] Bacon Decl. ¶ 13.

[13] Bacon Decl. ¶ 14.

[14] Bacon Decl. ¶ 15.

[15] Bacon Decl. ¶ 16.

[16] The claims in the present cases arise from the same price manipulation claims against many of the same defendants that were made in the California Class Actions.

[17] MDL ECF No. 492 (D. Nev. April 3, 2007).

8

and October 31, 2002.[18] The settlement results in those California cases were mere fractions of the favorable settlements that have thus far been reached in this litigation.[19]

On April 25, 2007, this Court found that the California Settlement Agreements "appear to be fair and reasonable" and warranted notice to the proposed class.[20] The Court preliminarily approved the settlements, stating that "the prerequisites to a class action under Federal Rule of Civil Procedure 23(a) have been satisfied for settlement purposes in that:  (a) there are hundreds of members of the class; (b) the claims of the class representatives are typical of those of the other members of the class; (c) there are questions of fact and law that are common to all members of the class; and (d) the class representatives will fairly and adequately protect the interests of the class and have retained counsel experienced in complex antitrust class action litigation who have and will continue to adequately represent the class."[21] The Court also found that a class action was superior to other available methods, and that common questions of fact and law predominate over individual questions. On September 5, 2007, the Court found that the settlement was fair and issued its final approval of the settlements.[22] For the same reasons it approved the settlements in the California Class Actions, the Court should preliminarily approve the Settlements here.

---

[18] Order Preliminarily Approving Settlements, Certifying a Settlement Class, and Authorizing Dissemination of Notice, MDL ECF. No. 510 (D. Nev. May 3, 2007).

[19] MDL ECF No. 504 (D. Nev. April 25, 2007)

[20] *Id.*

[21] MDL ECF. No. 510 (D. Nev. May 3, 2007).

[22] Minutes of Proceedings, ECF. No. 651 (D. Nev. Sept. 5, 2007).

9

## II.   THE SETTLEMENTS

Before entering into these Settlements, Class Counsel thoroughly evaluated the law and facts to assess the merits of Plaintiffs' claims as well as the merits of Defendants' defenses. Class Counsel has retained and consulted with experts concerning the facts discovered, the merits of the claims and defenses raised in this litigation, and concerning recoverable damages. Class Counsel considered the benefits to the classes to be obtained under the Settlements, as well as the expense, burdens, and uncertainties associated with continuing litigation.[23]

The Settlements were the product of intense, arms-length negotiations involving multiple experienced and informed counsel on both sides and Eric Green, one of the most respected mediators in the United States.[24] The mediation occurred on February 1, 2016, in Boston, Massachusetts. Plaintiffs in the Kansas, Missouri and Wisconsin Settlement Classes reached a settlement with the Duke defendants the evening before the Boston mediation. The AEP settlement was reached on the evening of the mediation.  The other two settlements were reached in the weeks and months thereafter, with the assistance of the mediator.[25]

These settlements require the preliminary certification of classes of direct industrial and commercial purchasers in both Kansas and Missouri who purchased natural gas for their own use or consumption between January 1, 2000, and October 31, 2002.[26] The settlements also require the certification of a class of direct and indirect purchasers who purchased natural gas in

---

[23] Bacon Decl. ¶ 17.

[24] Bacon Decl. ¶ 18. The parties participated in a prior mediation with mediator Daniel Weinstein, a former California state court judge, on September 9, 2009, in San Francisco. That mediation did not result in any settlements.

[25] Bacon Decl. ¶ 18. There have been additional discussions with the mediator, Mr. Green, about other potential settlements. Those discussions are ongoing.

[26] Bacon Decl., Exhibits 1-4.

Wisconsin between January 1, 2000, and October 31, 2002.[27] Pursuant to the terms of the settlements, Duke will pay the Settling Classes $9,400,000, AEP will pay the Settling Classes $9,400,000, ONEOK will pay the Settling Classes $11,000,000, and Coral will pay the Settling Classes $13,000,000, for a total of $42.8 million.[28]

Upon the settlements becoming final, Plaintiffs and Class Members will release any and all claims against the Settling Defendants relating to the subject matter of this lawsuit. The release does not release the Settling Defendants' co-conspirators and/or Co-Defendants for any liability resulting from their participation in an agreement or a conspiracy with the Settling Defendants.[29]

The settlements also require the Settling Defendants to cooperate with the Plaintiffs in the prosecution of the case against the non-settling Defendants by, *inter alia*, stipulating to authenticity, genuineness, and admissibility of certain evidence and by producing employees for depositions and/or testimony at trial.[30] The Settling Defendants' alleged conspiratorial conduct and sales remain in the case for purposes of proving liability and computing damages against the remaining Defendants.[31]

## III.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENTS.

"The Ninth Circuit is firmly committed to the rule that the law favors and encourages compromise settlements. There is an overriding public interest in settling and quieting

---

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] Bacon Decl. ¶ 19.

11

litigation."[32] "[T]he general policy of federal courts to promote settlement before trial is even stronger in the context of large-scale class actions."[33] Compromise is particularly favored in antitrust litigation, which is notoriously difficult and unpredictable.[34] It is well-established that price-fixing actions like this one are particularly appropriate for class certification and many courts have so held.[35]

Settlement classes must meet the requirements of a typical Rule 23 analysis. Rule 23, provides that a court should certify a class where, as here, the Plaintiffs satisfy the four prerequisites of Rule 23(a) (numerosity, commonality, typicality, and adequacy), and one of the three criteria set forth in Rule 23(b).[36] Plaintiffs here satisfy all requirements of Rule 23(a) and satisfy Rule 23(b)(3) which provides that "an action may be maintained as a class action" if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Finally, Rule 23(e) requires the court to evaluate the entire settlement at a hearing for final approval and determine its overall fairness, adequacy and reasonableness.

---

[32] *Camacho v. City of San Luis*, 359 Fed. App'x 794, 2009 WL 4912617 at *2 (9th Cir. 2009) (citation omitted) (not published).

[33] *In re Exxon Valdez*, 229 F.3d 790, 795 (9th Cir. 2000).

[34] *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 568, 577 (E.D. Pa. 2003).

[35] *See, e.g., In re Cathode Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D. 606, 630 (N.D. Cal. 2015) ("CRT I"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 315 (N.D. Cal. 2010) ("LCD"), *abrogated in part on other grounds by In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 756 (9th Cir. 2012); *In re Online DVD Rental Antitrust Litig.*, No. M 09-2029 PJH, 2010 WL 5396064 (N.D. Cal. Dec. 23, 2010) ("Online DVD"); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. C 07-01819 CW, 2008 WL 4447592, at *7 (N.D. Cal. Sept. 29, 2008) ("SRAM").

[36] *Howell v. JBI, Inc.*, 298 F.R.D. at 654 (citing *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 614 (1997)) (Jones, J.).

12

Final approval of settlements under Rule 23(e) "may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate."[37] While the inquiry in different cases may vary, in the Ninth Circuit, courts generally weigh the following eight factors, sometimes referred to as the *Churchill* factors, in making fairness determinations:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.[38]

Though settlement approval prior to formal class certification requires a high level of scrutiny,[39] "[a] formal hearing is not required at the preliminary approval stage, and the court may grant the parties' motion upon an informal request by the settling parties."[40] It is common for courts to make a "preliminary evaluation" of the eight *Churchill* factors listed above to determine whether a settlement is fair, adequate, and reasonable.[41] The *Churchill* factors strongly support granting preliminary approval here.

---

[37] *Lee v. Enter. Leasing Co-W.*, No. 3:10-CV-00326-LRH, 2015 WL 2345540, at *4 (D. Nev. May 15, 2015) (Hicks, J.) (quoting *In re Bluetooth Headset Prods. Liab. Litig*, 654 F.3d 935, 946 (9th Cir. 2011)).

[38] *Id.* (quoting *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir.2004)).

[39] *Schmidt v. Red Rock Fin. Servs., LLC*, No. 2:12-CV-01773-JCM, 2013 WL 5656085, at *4 (D. Nev. Oct. 15, 2013) (Mahan, J.) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)).

[40] *Harris v. U.S. Physical Therapy, Inc.*, No. 2:10-CV-01508-JCM-VCF, 2012 WL 3277278, at *4 (D. Nev. July 18, 2002) (Ferenboch, J.).

[41] *See Hester v. Vision Airlines, Inc.*, No. 2:09-CV-00117-RLH, 2014 WL 1366550, at *3 (D. Nev. Apr. 7, 2014) (Hunt, J.).

13

### A.   The Requirements of Rule 23(a) Are Satisfied in This Case

#### 1.   The Class Is So Numerous That Joinder of All Members Is Impracticable

The first requirement for class certification requires that the class be so numerous that joinder of all members would be "impracticable." Fed. R. Civ. P. 23(a)(1). Where the precise size of the class is unknown, but "'general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.'"[42] Courts have generally found that the numerosity requirement is satisfied when there are more than forty class members.[43]

The Kansas and Missouri classes include all commercial and industrial consumers who were direct purchasers of natural gas between January 1, 2000, and October 31, 2002, in those states. The Wisconsin class includes all commercial and industrial consumers who were purchasers of natural gas between January 1, 2000, and October 31, 2002, in Wisconsin.

In an effort to obtain an estimate of the number of potential class members, Plaintiffs have looked to the United States Energy Information Agency ("EIA"). That Agency reported that between 2000 and 2002, Kansas had between 6,882 and 7,100 commercial class members and between 4,755 and 5,357 industrial class members of natural gas. Missouri had between 284 and 295 commercial class members and between 439 and 485 industrial class members of natural gas. Wisconsin had between 924 and 2,265 commercial class members and between 1,529 and

---

[42]   *SRAM*, 2008 WL 4447592, at *3 (quoting 1 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*, 3:3 (4th ed. 2002)). *See also, Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 536 (N.D. Cal. 2012).

[43]   *Howell*, 298 F.R.D. at 655 (citing *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654-56 (C.D.Cal. 2000)(citations omitted)); *see also, Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 275 (10th Cir. 1977) (41-46 class members); *Californians for Disability Rights, Inc. v. Cal. Dept. of Trans.*, 249 F.R.D. 334, 346 (N.D. Cal. 2008).

14

1,630 industrial class members of natural gas in that time frame.[44] The proposed Settlement Classes thus readily satisfy the numerosity requirement.

### 2.    This Case Involves Questions of Law and Fact Common to the Classes

The second requirement for class certification requires that class members share common issues of law or fact. Fed. R. Civ. P. 23(a)(2). A plaintiff must establish that the class members' claims "depend upon a common contention . . . of such a nature that it is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.[45] Only one significant issue is necessary to satisfy commonality.[46] Allegations of a price-fixing conspiracy are often held to satisfy commonality, as "the very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist."[47]

In considering price-fixing cases like this one, courts typically look to three primary common issues:  (1) a violation of the antitrust laws; (2) plaintiffs suffered injury resulting from the violation; and (3) the methodology of determining damages.[48] Each of these elements is subject to common proof in this case. Plaintiffs have alleged and provided substantial evidence that Defendants participated in a nationwide price manipulation conspiracy that resulted in

---

[44] Bacon Decl. ¶ 20.

[45] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

[46] *Roeder v. Atlanta Richfield Co.*, No. 3:11-CV-00105-RCS-WGE, 2013 WL 5878432, at *2 (citing *Wal-Mart*, 131 S.Ct. at 2556) (Jones, J).

[47] *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 WL 1530166, at *3 (N.D. Cal. June 5, 2006) ("*DRAM*") (quoting *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 351 (N.D. Cal. 2005) ("*Rubber Chems.*")). *See also Online DVD*, 2010 WL 5396064, at *3.

[48] *In re Urethane Antitrust Litig.*, 251 F.R.D. 629, 634 (D. Kan. 2008).

15

increased prices for natural gas being sold across the country.[49] There can be no genuine dispute that the issue of whether Defendants participated in the alleged arrangement can be proven using evidence common to all Plaintiffs. In other words, either Plaintiffs can prove that Defendants did what has been alleged, or they cannot, but the evidence will not vary from plaintiff to plaintiff. Likewise, because Plaintiffs have alleged that Defendants manipulated the price indices that formed the basis for the inflated prices each class member ultimately paid for natural gas, the method of calculating impact is common to all classes and to all class members.[50] Lastly, as described by Drs. Harris and Dwyer, Plaintiffs' experts in these cases, the methodology for establishing the ultimate measure of damages relies on proof common to all Plaintiffs.[51] Plaintiffs' claims plainly satisfy the commonality requirement of Fed. R. Civ. P. 23(a)(2).

### 3.      Plaintiffs' Claims Are Typical of the Class's Claims

The third requirement for maintaining a class action is that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Plaintiffs satisfy the typicality requirement. Rule 23(a)(3) "does not require that the claims of the representative party be identical to the claims of class members."[52] "Rather, typicality results if the Plaintiffs' claims arise from the same event, practice or course of conduct that gives rise to the claims of the absent class members and if their claims are based on the same legal or

---

[49] Bacon Decl. ¶ 21.

[50] Harris Decl. to Motion for Class Certification, ECF. No. 2308, ¶¶ 44-56.

[51] *Id.* ¶¶ 72-76; Dwyer Decl. to Motion for Class Certification, Dkt. No. 2308, ¶ 18.

[52] *Roeder*, 2013 WL 5878432 at *2 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (Jones, J.); *Online DVD*, 2010 WL 5396064, at *4.

remedial theory."[53] Class representatives' claims "need not be substantially identical" to those of absent class members, as "[s]ome degree of individuality is to be expected in all cases."[54]

"Typicality requirements are often satisfied wherein it is alleged that the defendants engaged in a common price-fixing scheme relative to all members of the class. In such cases, there is a strong assumption that the claims of the representative parties will be typical of the absent class members."[55] "This is true even where 'the plaintiff followed different purchasing procedures, purchased in different quantities or at different prices, or purchased a different mix of products than did the members of the class.'"[56]

Here, the claims of the Plaintiffs and the class members arise from the same manipulative conduct engaged in by the Defendants, and the claims of the named Plaintiffs and the class members in each state are the same (the respective violations of the Kansas, Missouri, and Wisconsin state antitrust statutes).[57] As such, the claims of the Plaintiffs are identical to the claims of their Classes, excepting only the amounts of natural gas purchased at the manipulated price. The typicality requirement of Rule 23(a)(3) is therefore satisfied.

### 4.      Plaintiffs Will Fairly and Adequately Protect the Interests of the Class

The fourth requirement, mandates that the Plaintiffs fairly and adequately represent the class. Fed. R. Civ. P. 23(a)(4). Plaintiffs satisfy Rule 23(a)(4). The fairness and adequacy of

---

[53] *Id.* (internal quotation marks omitted); *see also SRAM*, 2008 WL 4447592, at *3.

[54] *Cifuentes v. Red Robin Int'l, Inc.*, No. C-11-5635-EMC, 2012 WL 693930, at *5 (N.D. Cal. Mar. 1, 2012); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

[55] *CRT I*, 308 F.R.D. at 613 (internal quotation marks, brackets, and citations omitted).

[56] *Id.* (quoting LCD, 267 F.R.D. at 300). *See also Online DVD*, 2010 WL 5396064, at *4 (inquiry focuses on the conduct of the defendants, not on their individual dealings or transactions with plaintiffs); *DRAM*, 2006 WL 1530166, at *4.

[57] Bacon Decl. ¶ 22.

17

representation is the assurance that constitutional due process is afforded to absent class members as an ultimate judgment will be entered that will bind them.[58]

Courts have regularly found this requirement satisfied in price manipulation cases.[59] Class representatives "will be found to be adequate when the attorneys representing the class are qualified and competent, and the class representatives are not disqualified by interests antagonistic to the remainder of the class."[60] As discussed below, the "adequacy and fairness" requirements of Rule 23(a)(4) are met here.

### a.    Adequacy of Representation

Establishing that the representation of the class is adequate requires that (1) the named plaintiffs and their counsel have no conflicts of interest with other class members,[61] and (2) the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class.[62] Both the named Plaintiffs and Class Counsel here understand their obligations to class members and stand ready to fulfill those obligations without outside conflict.[63]

---

[58] *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940).

[59] *In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*, 276 F.R.D. 364, 374 (C.D. Cal. 2011) ("*Auto Lighting*") (where plaintiffs have "alleged a broad conspiracy, courts have not required that the representative has purchased from all of the defendants or that he has been adversely affected by all of the means and methods by which the alleged conspiracy was implemented" (brackets and ellipsis in original omitted)).

[60] *Online DVD*, 2010 WL 5396064, at *4.

[61] *Hanlon*, 150 F. 3d at 1019 (quoting *Amchem Prods. Inc.*, 521 U.S. at 620).

[62] *Howell*, 298 F.R.D. at 655 (citing *Hanlon*, 150 F.3d at 1020(citations omitted)) (Jones, J.); *see also SRAM*, 2008 WL 4447592, at *4.

[63] *See* Declarations each Class Counsel, Exhibits B to F.  *See also*, the following Declarations to Representative Plaintiffs' March 7, 2016 Motions for Class Certification:  Zima Decl. ¶ 4; Fletcher Decl. ¶ 4; Ream Decl. ¶ 4; D. Jones Decl. ¶ 4; Greathouse Decl. ¶ 9; Mourand Decl. ¶ 8; Morris Decl. ¶ 10; Treis Decl. ¶ 7; Wisnefske Decl. ¶ 6; Hoare Decl. ¶¶ 7-8; Krolikowski Decl. ¶¶ 8-9.

18

To the extent that the Court's analysis under Rule 23(a)(4) considers the allocation of settlement monies between the Kansas, Missouri and Wisconsin Settling Classes,[64] the Court should note that each settling Defendant is paying a lump sum to settle with three separate classes. The proposed settlement amounts will be distributed among the Missouri, Kansas and Wisconsin Settling Classes as follows:[65]

- Duke:  $9,400,000 total settlement, gross recovery divided among the states as follows:  20.2% to Missouri, 34.8% to Kansas, and 45% to Wisconsin.
- AEP:  $9,400,000 total settlement, gross recovery divided among the states as follows:  18.4% to Missouri, 31.6% to Kansas, and 50% to Wisconsin.
- ONEOK:  $11,000,000 total settlement, gross recovery divided among the states as follows:  19% to Missouri, 32.7% to Kansas, and 48.3% to Wisconsin.
- Coral:  $13,000,000 total settlement, gross recovery divided among the states as follows: 19% to Missouri, 32.7% to Kansas, and 48.3% to Wisconsin.

In arriving at these percentages, the Plaintiffs and Class Counsel undertook a multi-step analysis to evaluate situations in particular cases. Among them, they considered the dollar amount of the aggregate respective purchases in Kansas, Missouri, and Wisconsin, as shown in the publicly-available EIA data. Class Counsel also evaluated particular statutes and other salient factors of importance to the assessment and the allocation of the settlement proceeds. For example, the remedies available under the law of the state of Missouri are not equivalent to the remedies available under the laws of the states of Kansas or Wisconsin, because Missouri does not recognize a full consideration remedy, as Kansas and Wisconsin do.[66]

The percentages paid to each Class also vary slightly in each of the settlements based on unique state-by-state and settling defendant considerations.  The first settlement with Duke was

---

[64] *In re Linerboard Antitrust Litig*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003).

[65] Less approved administrative fees and approved Plaintiff service awards.

[66] Bacon Decl. ¶ 23

19

reached the night before mediation, and percentages were determined based upon the analysis of data then available and rapid-fire negotiations regarding which parties would (or would not) participate in the settlement. The second settlement with AEP, in the same amount as Duke, was reached at the end of the mediation, and percentages were adjusted to reflect additional information discussed at the mediation. The other two settlements were reached in the weeks and months thereafter, with the assistance of the mediator.[67]

The Class Representatives of every state, their in-house counsel (when applicable), and all Class Counsel collectively have approved this proposed distribution among the three Classes.[68] Additionally, attorneys Gary McCallister and Eric Unrein (who are attorneys only in the Kansas Class case) have agreed to the proposed allocation to both the Missouri and Wisconsin Classes. Similarly, the law firm of Kohner, Mann & Kailas, SC (which is counsel only in the Wisconsin Class cases), has also approved the proposed allocation to both the Kansas and Missouri classes. Polsinelli PC and the Barry Law Firm are counsel to the Kansas, Missouri, and Wisconsin classes, and have approved the proposed allocation to all Classes.[69]

After dividing the Settlements among the three Classes, the Settlement proceeds will be distributed within the respective Classes to claiming Class Members on a *pro rata* basis.[70]

Second, in determining the adequacy of representation, it must be shown that class members will receive vigorous and skilled representation by Plaintiffs, the potential class representatives. Plaintiffs have exhibited such willingness for more than a decade, and will

---

[67] Bacon Decl. ¶ 24

[68] Bacon Decl. ¶ 25.

[69] Declarations of each Class Counsel, Exhibits B to F.

[70] Bacon Decl. ¶ 26.

continue to do so. As shown by their Declarations, all Plaintiffs accept and are ready to carry out their responsibilities to the class members.[71]

Plaintiffs have retained skilled counsel with extensive experience in prosecuting antitrust class actions. Class Counsel are fully prepared to fully prosecute these claims on behalf of all of the class members. Polsinelli PC, Kohner, Mann & Kailas, SC, McCallister Law Group, LLC, the Barry Law Firm LLC, and their co-counsel have vigorously pursued the litigation on behalf of Plaintiffs and the proposed Classes. They have devoted the substantial time, resources, and leadership necessary to prosecute this action, and will continue to prosecute these cases against the non-settling Defendants.[72] Plaintiffs therefore satisfy the adequacy requirement of Rule 23(a)(4).

### b.      Fairness of Representation

In determining the fairness of the representation of the class at this stage, the Court must ensure the settlements were reached without collusion.[73] None of the badges of collusion identified in *In re Bluetooth Headset Products Liability Litigation* are present.[74] The Settlements do not provide that Class Counsel receive a disproportionate amount of the Settlement consideration. Rather, they specify that the Court will determine the amount of attorneys' fees and expenses, and that that determination shall have no bearing on the Settlements. Second, the Settlements contain no "clear sailing" provision providing for the payment of attorneys' fees

---

[71] *See* the following Declarations to Representative Plaintiffs' March 7, 2016 Motions for Class Certification:  Zima Decl. ¶ 4; Fletcher Decl. ¶ 4; Ream Decl. ¶ 4; D. Jones Decl. ¶ 4; Greathouse Decl. ¶ 9; Mourand Decl. ¶ 8; Morris Decl. ¶ 10; Treis Decl. ¶ 7; Wisnefske Decl. ¶ 6; Hoare Decl. ¶¶ 7-8; Krolikowski Decl. ¶¶ 8-9.

[72] See Declarations of each Class Counsel, Exhibits B to F.

[73] *Howell*, 298 F.R.D. 658.

[74] *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 946 (9th Cir. 2011)

separate and apart from class funds. Third, the Settlements do not allow any part of the consideration to revert to the Settling Defendants unless the entire Settlement as to a particular defendant was to terminate for any reason.[75] The absence of these concerns is a further indication of the Settlements' fairness.[76]

Although awards of attorneys' fees and expenses are not determined until the settlement becomes final, fairness dictates consideration of those issues at this point because the amount of expenses awarded will reduce the amount payable to the class.[77] The contingency fee agreements[78] entered into between Class Counsel and Plaintiffs provide for reimbursement of actual expenses incurred to date as a first step in settlement distribution. Because fewer than all Defendants are currently settling, counsel seeks to recover only 50% of the expenses incurred to date in this Settlement, reserving the remainder to be collected against later settlements or judgments.[79] Expenses include such things as service of subpoenas, stenographic sand videotaped depositions, electronic discovery data management, service vendors, expert witnesses, local counsel and reasonable travel expenses. 50% of the expenses counsel have incurred to date totals $2,663,945.69.[80]

The contingency fee agreements between Class Counsel and Plaintiffs specify a contingency legal fee to be paid to class counsel of 35% *after* deduction of expenses. That

---

[75] Bacon Decl., Exhibits 1-4.

[76] *See, In re Zynga Security Litig.*, No. 12-CV-09007-JSC, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015).

[77] *Martinez v. Realogy Corp.*, 2013 WL 5883618, *4 (October 30, 2013) (Jones, J); *Howell v. JBI, Inc.*, 298 F.R.D. 649, 659 (D.Nev. 2014) (Jones, J).

[78] Bacon Decl., Exhibits 9 to 12

[79] Bacon Decl. ¶ 27.

[80] See Declarations of each Class Counsel, Exhibits B to F and Summary (Ex. G).

amount will be less than 33% of the gross settlement figure.[81]   In total, all class counsel have in the course of eleven years invested more than $50 million in legal fees.[82] Class Counsel have fully borne the risk of these investments:  both the fees and the expenses are wholly contingent, so if the Classes collect nothing, Class Counsel is paid nothing. None of these substantial expenses or fees has been fronted or paid by Plaintiffs, and none will be owed outside of any settlement or verdict. No monies have been received by these Class Counsel for the eleven years since this litigation first began.[83]

With regard to fees for Class Counsel, the Ninth Circuit has approved a "percentage of the funds" method. The typical range of attorneys' fees in the Ninth Circuit is 20% to 33%,[84] and the Court has the ability to adjust these percentages up or down to account for the circumstances in each case.[85]

The *Powers*[86] case made it clear that the Ninth Circuit range should be applied to the recovery *before* expenses. In this instance, the contingency fee agreement of 35% is being applied to the *net* recovery *after* expenses.  Because these parties seek 35% after expenses, the fee amount is less than 33% of the gross settlement before expenses. Thus the 35% of net (post-expense) recovery is within the 20-33% of gross (pre-expense) recovery range. The unusual and burdensome circumstances of these cases, especially the length of time Class Counsel has worked without payment, and the relative success of plaintiffs to date, all warrant the exercise of

---

[81] Bacon Decl., Exhibits 5 to 7.

[82] *Id.*

[83] Bacon Decl. ¶ 28.

[84] *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).

[85] *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).

[86] *Powers*, 229 F.3d at 1258.

the Court's discretion to award the 35% net fee provided for in the Contingency Fee Agreements, consistent with the Ninth Circuit's 20-33% gross fee range.

In a "percentage of the funds" case, the Ninth Circuit held in *Vizcaino v. Microsoft Corp.,* that a determination of the fairness and reasonableness of a requested percentage fee should be analyzed using the following factors:  (i) the results achieved; (ii) the risk of litigation; (iii) the skill required; (iv) the quality of work performed; (v) the contingent nature of the fee and the financial burden; and (vi) the awards made in similar cases.[87]

(i) **The results achieved.**  These Settlements do not reduce the Classes' potential total recovery because they preserve the Classes' ability to recover additional damages from the remaining co-conspirator Defendants based on the Settling Defendants' conduct and sales under a joint and several liability theory,[88] thus creating added incentive for the remaining Defendants to settle or allowing greater recovery for the Plaintiffs at trial."[89]  The results are also important because they likely encourage other settlements hereafter:

> The Court also notes that this settlement has significant value as an *'icebreaker'* settlement—it is the first settlement in the litigation—and should increase the likelihood of future settlements. An early settlement with one of many defendants can 'break the ice' and bring other defendants to the point of serious negotiations.[90] (emphasis added).

---

[87] *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

[88] Bacon Decl. ¶ 29.

[89] *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-CV-2058 JST, 2015 WL 9266493, at *6 (N.D. Cal. Dec. 17, 2015) (*CRT II*).

[90] *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d at 643.

**(ii) The risk of litigation.**   This Court has frequently found this factor favors settlement where substantial time and money have already been spent on litigation, and further protracted litigation appears likely.[91]  In this case, several significant events remain.

**(iii) The skill required, and (iv) The quality of work performed.**   The third factor, skill required, and the fourth factor, quality of the work performed, are both apparent when comparing the complexity of this litigation to the results obtained with these initial Settlements.  The massive amount of motion practice and discovery completed, and the dozens of appearances before this Court, along with the successful results on the legal issues at every level of the federal courts, could not have been accomplished without Counsel's commitment and expertise in both antitrust law and in class actions.

**(v) The contingent nature of the fee and the financial burden.**   As noted in the contingency fee agreements,[92] all fees and expenses in this litigation are fronted by Class Counsel and any reimbursement are contingent upon recoveries, if any, received by Class Members in this litigation. Counsel has invested more than $50 million in legal time, and has

---

[91] *See e.g., Lee*, 2015 WL 2345540, at *5 (finding second factor to weigh in favor of approving settlement where counsel had been involved in case for nearly nine years, the litigation would predictably be "dragged on in the Ninth Circuit for several more years," and plaintiffs could potentially recover nothing); *Hester*, 2014 WL 1366550, at *4 (favoring approval of settlement where lawsuit was in sixth year, there was a high probability of further appeals, litigation had been expensive, and risk inherent in trial could not be discounted); *Harris*, 2012 WL 6900931, at *7 (D. Nev. July 18, 2002) (Ferenboch, J.) (considering the potential of remaining "milestones" in case, including further discovery, certification of class, potential dispositive challenges, and appeals; and finding that "as a class action could potentially be expensive, risky, and lengthy, the second factor . . . weighs in favor of granting approval of the settlement"). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Riker v. Gibbons*, 3:08-CV-00115-LRH-VPC, 2010 WL 4366012, at *4 (D. Nev. Oct. 28, 2010) (Hicks, J.) (quoting Newberg on Class Actions § 11:50).

[92] Bacon Decl., Exhibits 5-7.

advanced over six million dollars in expenses and costs for these cases over more than ten years, with no assurance of reimbursement.[93]

        **(vi) The awards made in similar cases.**  Counsel have reviewed Ninth Circuit cases with respect to fee awards and have found that courts routinely award as much as 33% of gross recovery.  That percentage, however, is discretionary and some cases decided in the Ninth Circuit have approved 35% contingency awards where the circumstances warrant.[94] The length and breadth of these cases, as described above, clearly warrant a fee award of 35% of the net settlement amount.

        Courts also look at administrative fees in evaluating fairness. Class Counsel has obtained competing bids from entities experienced in handling the administration of class actions. Based on that bidding process and the analysis of the reputation of the bidders, Counsel recommends that Dahl Administration serve as class administrator. Dahl will be conducting the following activities: making long and short form notices, managing websites, staffing dedicated informational telephone lines, communicating with potential class members, documenting opt-outs, objections and correspondence. Based upon discussions to date and limiting the administration to the activities described, Plaintiffs recommends the retention of Dahl. While Dahl has submitted an estimate of $142,700, Plaintiffs seek an allowance for administrative fees

---

[93] See Declarations of each Class Counsel, Exhibits B to F.

[94] *See A.M. v. Moda Health Plan, Inc.*, 2015 WL 9839771, at *3 (W.D.Wash. Nov. 3, 2015); *R.H. v. Premera Blue Cross*, 2014 WL 3867617, at *3 (W.D. Wash. Aug.6, 2014).

not to exceed $200,000.[95] With classes consisting of tens of thousands of potential class members, an administrative fee of $200,000 is reasonable.[96]

Lastly, the Court must consider the propriety and amount of potential service awards to individual class representatives. Some entities who have served as named Plaintiffs have participated in this litigation for more than ten years. In addition to monitoring the litigation, they have been actively involved in discovery, including locating decades-old records, responding with (in some cases, massive amounts of) information, giving depositions and, for some, attending and actively participating in mediations and settlement discussions. Neither the contingency fee agreements nor the Settlement Agreements set a specific dollar amount or a percentage amount for service awards.

The Kansas Class has two named Plaintiffs: Learjet, Inc. and Topeka Unified School District 501. The Missouri Class has three named Plaintiffs: Heartland Regional Medical Center, Prime Tanning Corp., and Northwest Missouri State University. The Wisconsin Class has seven named Plaintiffs:  Arandell Corporation, Merrick's, Inc., Sargento Foods, Inc., ATI Ladish, LLC (f/k/a Ladish Co., Inc.), Carthage College, Briggs & Stratton Corporation, and NewPage Wisconsin System Inc.[97] Based upon the work performed and the expanse of years during which such work has occurred, Plaintiffs request that this Court grant a service award to each particular Plaintiff in such amount as this Court deems appropriate.[98]

---

[95] Bacon Decl. ¶ 30.

[96] *See, e.g., Hervis v. Vector Marketing Corp.*, No. C-8-5198 EMC, 2012 WL 381202 at *6 (N.D.Cal. February 6, 2012) (approving award of $250,000 in administration costs where claims administrator sent out 68,487 notices).

[97] Bacon Decl. ¶ 31.

[98] Bacon Decl. ¶ 32.

27

**B.       The Requirements of Rule 23(b)(3) Are Satisfied in this Case**

To be certified under Rule 23(b)(3) a class must meet two additional requirements: "[c]ommon questions must predominate over any questions affecting only individual members; and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy." [99] As noted by the Supreme Court: "[p]redominance is a test readily met in certain cases alleging . . . violations of the antitrust laws." [100]

**1.       Common Questions of Law and Fact Predominate Over Individual Questions**

Courts commonly find the "predominance" requirement of Rule 23(b) satisfied in direct purchaser horizontal price-fixing cases.[101] Rule 23(b)(3) "does *not* require a plaintiff seeking class certification to prove that each element of her claim is susceptible to class-wide proof. What the rule does require is that common questions *predominate* over any questions affecting only individual class members."[102] The focus of the predominance inquiry is whether the proposed Class is "sufficiently cohesive to warrant adjudication by representation."[103]

> Rule 23(b)(3)'s predominance requirement is satisfied when "common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication." Or, to put it another way, common questions can predominate if a "common nucleus of operative facts and issues" underlies the claims brought by the proposed class. . . . Individual questions need not be absent. The text of

---

[99] *Amchem*, 521 U.S. at 615 (internal quotation marks omitted).

[100] *Id.* at 625.

[101] *See, e.g.*, *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 814-15 (7th Cir. 2012); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 300 (3d Cir. 2011); *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 167 (C.D. Cal. 2002) ("In price-fixing cases, courts repeatedly have held that the existence of the conspiracy is the predominant issue and warrants certification even where significant individual issues are present." (internal quotation marks omitted)).

[102] *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, __U.S. ___, 133 S. Ct. 1184, 1196 (2013) (internal quotation marks, citation, and brackets omitted) (emphasis added).

[103] *Id.* at 1196 (quoting *Amchem*, 521 U.S. at 623).

28

> Rule 23(b)(3) itself contemplates that such individual questions will be present. The rule requires only that those questions not predominate over the common questions affecting the class as a whole.[104]

That each class members' damages may vary does not negate a finding that common questions of law and "predominate."[105]

Here, common issues predominate with respect to Plaintiffs' proof of the three elements of their claim:  (1) that Defendants participated in a conspiracy or arrangement to fix prices in violation of the states' antitrust laws; (2) that Class members suffered antitrust injury (*i.e.,* "impact") as a result of the conspiracy; and (3) the damages they sustained.[106] Plaintiffs will establish each of the above elements through "generalized proof" applicable to the Class as a whole.

### 2.     A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of This Case

Rule 23(b)(3) requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." If common questions are found to predominate in an antitrust action, courts generally have ruled that the superiority prerequisite of Rule 23(b)(3) is satisfied.[107] Here, it would be incredibly inefficient to litigate the predominating common issues in thousands of individual proceedings in three different states. The prosecution of separate actions would also create the risk of inconsistent rulings, and possible prejudice. In addition, "[i]n antitrust cases such as this, the damages of individual direct purchasers are likely to be too small to justify litigation, but a class action would offer those with small claims the

---

[104] *Messner*, 669 F.3d at 815 (internal citations omitted).

[105] *Tyson Foods v. Bouaphakeo*, ____U.S. ____, 136 S.Ct. 1036, 1045 (2016).

[106] *See LCD*, 267 F.R.D. at 310; DRAM, 2006 WL 1530166, at *7.

[107] *LCD*, 267 F.R.D. at 314.

55086894.1

opportunity for meaningful redress."[108] Class Members would be effectively foreclosed from pursuing their claims absent class certification.[109] In these cases, the prosecution of this number of individual claims would be nearly impossible. Given the plaintiffs' showings in this case, it is clear that the only way to satisfy Fed. R. Civ. P. 1's requirement of speedy, inexpensive and just resolution in this particular situation is to certify the classes.[110]

### C.   The Court Should Appoint Settlement Class Counsel.

Rule 23(c)(1)(B) states that "[a]n order certifying a class action . . . must appoint class counsel under Rule 23(g)." Rule 23(g)(1)(A) states that "[i]n appointing class counsel, the court must consider:  [i] the work counsel has done in identifying or investigating potential claims in the action; [ii] counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; [iii] counsel's knowledge of the applicable law; and [iv] the resources counsel will commit to representing the class."

For the Kansas Settlement Class, Class Counsel ask that Polsinelli PC, McCallister Law Group, LLC and The Barry Law Firm LLC be appointed as Settlement Class Counsel. For the Missouri Class, Class Counsel ask that Polsinelli PC and The Barry Law Firm LLC be appointed as Settlement Class Counsel. For the Wisconsin Class, Class Counsel ask that Kohner Mann & Kailas, SC, Polsinelli PC, and The Barry Law Firm LLC be appointed as Settlement Class Counsel. The firms are willing and able, as they have done for the last decade, to continue to prosecute this action and to devote all necessary resources to obtain the best possible result for

---

[108] *SRAM*, 2008 WL 4447592, at *7.

[109] *Hanlon*, 150 F.3d at 1023 ("[M]any claims [that] could not be successfully asserted individually . . . would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs.").

[110] Fed. R. Civ. P. 1

the class.[111] The work done and funds expended to date supports the conclusion that these firms should be appointed as Class Counsel for purposes of the Settlements.[112] The firms meet the criteria of Rule 23(g)(1)(C)(i).[113]

Polsinelli PC, Kohner, Mann & Kailas, SC, McCallister Law Group, LLC, and The Barry Law Firm LLC recently described their work in representing the class in connection with the motions for class certification, filed on March 7, 2016.[114]

### D.      Rule 26(e) Fairness, Reasonableness, and Adequacy Hearing

Following the preliminary approval of the proposed Class Settlement, issuance of notice and other procedural steps, a final hearing will be held which approves the final settlements, pursuant to Fed. R. Civ. P. 26(e). It is at this final hearing that the Court will examine the overall fairness of the settlement under the *Churchill* factors.[115]

## IV.      PROPOSED PLAN OF SETTLEMENTS

Rule 23(e)(1) states that, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Under Rule 23(c)(2)(b), class members are entitled to the "best notice practicable under the circumstances" of any proposed settlement before it is finally approved by the Court. The notice must state in plain, easily understood language:

- the nature of the action;

---

[111] *See* Declarations of each Class Counsel, Exhibits B to F.

[112] *See, e.g., Harrington v. City of Albuquerque*, 222 F.R.D. 505, 520 (D.N.M. 2004).

[113] *Cf. Farley v. Baird, Patrick & Co., Inc.*, No. 90 Civ. 2168 (MBM), 1992 WL 321632, at *5 (S.D.N.Y. Oct. 28, 1992) ("Class counsel's competency is presumed absent specific proof to the contrary by defendants").

[114] Doc #s 2315-9; 2315-10; 2315-11; 2315-12; 2315-14; 2315-15; 2315-16; 2315-28; 2315-29.

[115] *Churchill Vill., LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004).

- the definition of the class certified;

- the class claims, issues, or defenses;

- that a class member may enter an appearance through counsel if the member so desires;

- that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and

- the binding effect of a class judgment on class members under Rule 23(c)(3).

*Id.*

Notice to the class must include "individual notice to all members who can be identified through reasonable effort."[116] Plaintiffs propose that a long-form notice in the form attached as Exhibit 8 to the Bacon Declaration be given by mail or email to each Class Member who may, using reasonable efforts, be identified. Plaintiffs are able to identify significant numbers of potential Class Members by references to customer information produced by Defendants, documents and information produced by local natural gas distribution companies, and nitrogen oxide emissions reports filed with the EPA and EIA, which identify those entities who burn natural gas.[117]

In addition, Plaintiffs propose that a short-form notice in the form attached as Exhibit 9 to the Bacon Declaration be published in major newspapers of general circulation in Kansas, Missouri, and Wisconsin, as well as relevant business journals, trade publications, websites, online social networks, and online search engines.[118] In addition, the Settlement Administrator

---

[116] *Amchem*, 521 U.S. at 617.

[117] Bacon Decl. ¶ 33.

[118] Bacon Decl. ¶ 33; Dahl Decl. ¶¶ 10-16

will create and host a website where class members can access all settlement agreements, the full long and full short form notices, claim forms (once appropriate), relevant Court orders, and other important documents.[119] The Settlement Administrator will also issue a national press release containing the short form notice, and will create and maintain an automated toll-free settlement helpline.[120] Publication notice is an acceptable method of providing notice where the identity of some class members is not reasonably available.[121]

The content of the proposed notices comply with the requirements of Rule 23(c)(2)(B). The long-form notice clearly and concisely explain the nature of the action and the terms of the Settlements.[122] They provide a clear description of who is a member of the class and the binding effects of class membership.[123] They explain how to exclude oneself from the class, how to object to the Settlements, how to obtain copies of papers filed in the case and how to contact class counsel.[124]

The short-form notice also identify class members, explain the basic terms of the Settlements and explain the consequences of class membership.[125] They explain how to obtain more information about the Settlements.[126] The short-form notice will be published after the long-form notices have been mailed and e-mailed to known potential class members.[127]

---

[119] *Id.* ¶ 18.

[120] *Id.* ¶¶ 17, 19.

[121] *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078,1080 (N.D. Cal. 2007).

[122] Bacon Decl., Ex. 8 to 10.

[123] *Id.*

[124] *Id.*

[125] Bacon Decl. Ex. 9.

[126] *Id.*

[127] Bacon Decl. ¶ 35.

The content of the notice fulfills the requirements of Rule 23 and due process. Accordingly, the Court should preliminarily approve the notices. As noted above, Plaintiffs' Counsel recommend the retention of Dahl Administration as settlement administrator.

Such notice plans are commonly used in class actions like this one and constitute valid, due and sufficient notice to class members as well as the best notice practicable under the circumstances.[128] Similar notice plans have been approved recently by several courts in the Northern District of California.[129]

## V.    PROPOSED PLAN OF ALLOCATION

In conformity with the process described in Section VI.D.4, to arrive at the proposed plan of allocation of the settlement amount, the proposed class representatives and their counsel considered the dollar amount of the aggregate purchases in Kansas, Missouri, and Wisconsin, as shown in the publicly-available EIA data. Counsel also evaluated the claims based on each state's available statutory remedies and other state-specific considerations. Plaintiffs, their in-house counsel (if any), and outside counsel have approved this proposed allocation distribution among the three Classes.

Plaintiffs therefore propose that Settlement funds be allocated on *a pro rata* basis within each Class based on the dollar value of each claiming class member's purchase(s) of natural gas in proportion to the total claims filed by all members in that Class. In determining the *pro rata* allocation of Settlement funds, claiming class members' purchases will be valued according to the proportionate purchases of natural gas. The resulting percentages will be multiplied against

---

[128] *See Moore's Federal Practice* § 23.63[8][a], § 23.63[8][b] (3d ed. 2003); *Fraley v. Facebook, Inc.*, No. CV-11-01726 RS, 2012 WL 6013427, at *2 (N.D. Cal. Dec. 3, 2012).

[129] *See, e.g., CRT II*, 2015 WL 9266493, at *3-4.

the net Settlement fund for that Class (total Settlements minus all expenses and attorneys' fees) to determine each electing claimant's *pro rata* share of the Settlement fund.[130]

## VI.    THE COURT SHOULD SET A FINAL APPROVAL SCHEDULE

The last step in the settlement approval process is the final approval hearing, at which the Court may hear all evidence and argument necessary to evaluate the proposed Settlements. At that hearing, members of the Settlement Class, or their counsel, may be heard in support of or in opposition to the Settlements. Plaintiffs propose the following schedule:

| Date | Event |
|---|---|
| 12/16/2016 | Long-form notice sent to class members by U.S. mail or electronic mail, publication of website, and activation of telephone information system; short-form notice published in the newspapers of general circulation in Kansas, Missouri, and Wisconsin; and copy of the class notices and settlement agreements posted on the internet website www.naturalgasantitrustsettlement.com. |
| 2/1/2017 | Deadlines to request exclusion from the class, object to the settlement, and/or file a notice of intention to appear at the fairness hearing. |
| 2/6/2017 | Class Counsel to provide Settling Defendants' counsel the list of all persons or entities who have timely requested exclusion from the settlement classes, as provided in the settlement agreements. |
| 2/10/2017 | Deadline for filing motion for final approval of settlement and applications for attorneys' fees. |
| 3/3/2017 | Final Fairness Hearing |

If preliminary approval is granted, the proposed Class members will be notified of the terms of the Settlements and informed of their rights in connection therewith, including their right to appear and be heard at the hearing.[131]

---

[130] Bacon Decl. ¶ 36.

## VII.   CONCLUSION

For the foregoing reasons, and in the interests of justice, Plaintiffs respectfully submit that the Court should enter an order granting the relief requested by this motion:

(i)      Granting expedited consideration of this motion and the holding of a final fairness hearing on March 3, 2017, or as soon thereafter as is practicable for the Court;

(ii)     Granting preliminary approval of the settlement agreements Plaintiffs have executed with Defendants Duke Energy Carolinas, L.L.C (f/k/a Duke Energy Corporation) and Duke Energy Trading and Marketing, L.L.C. (collectively "Duke"), American Electric Power Company, Inc. and AEP Energy Services, Inc. and (collectively, "AEP"), ONEOK, Inc., ONEOK Energy Services Company, L.P. (f/k/a ONEOK Energy Marketing & Trading Company, L.P., and Kansas Gas Marketing, Inc., (collectively, "ONEOK"), and Coral Energy Resources, LP (n/k/a Shell Energy North America (U.S.), L.P.) ("Coral");

(iii)    Preliminarily certifying Settlement Classes for the Kansas Class (*Learjet*), the Missouri Class (*Heartland*), and the Wisconsin Class (*Arandell* and *NewPage*);

(iv)     Appointing Learjet, Inc. and Topeka Unified School District 501 as Class Plaintiffs for the Kansas Settlement Class; Heartland Regional Medical Center, Prime Tanning Corp., and Northwest Missouri State University as Class Plaintiffs for the Missouri Settlement Class; and Arandell Corporation, Merrick's, Inc., Sargento Foods, Inc., ATI Ladish, LLC (f/k/a Ladish Co., Inc.), Carthage College,

---

[131] The Settlements also confirm and acknowledge the settling Defendants' obligations to provide notice to applicable state and federal regulatory entities under 28 U.S.C. § 1715(b). See, e.g., Bacon Decl. Ex. 3, ¶ 14.

Briggs & Stratton Corporation, and NewPage Wisconsin System Inc., as Class Plaintiffs for the Wisconsin Settlement Class;

(v)     Appointing for the Kansas Settlement Class, Polsinelli PC, The McCallister Law Group, LLC and The Barry Law Firm LLC as Settlement Counsel. Appointing for the Missouri Class, Polsinelli PC and The Barry Law Firm LLC as Settlement Counsel. Appointing for the Wisconsin Class, Kohner Mann & Kailas, S.C., Polsinelli PC, and The Barry Law Firm LLC as Settlement Counsel;

(vi)    Approving the manner and form of giving notice of the settlement to class members;

(vii)   Establishing a timetable for publishing class notice and lodging objections to the terms of the settlement;

(viii)  Approving procedures for Class Members to exclude themselves from the Settlement Classes and object to the Settlements;

(ix)    Appointing Dahl Administrators as the Settlement Administrator to conduct the duties assigned to that position in the Settlements;

(x)     Staying all non-Settlement proceedings in this MDL against the Settling Defendants pending final approval of the Settlements; and

(xi)    Setting a date for a hearing regarding final approval of the settlement, at which the Court will consider (a) whether to grant final approval of the settlements, including allocations; (b) class counsel's applications for attorneys' fees and costs; and (c) any request for service awards to individual Class Plaintiffs; and

(xii)   For such other and further relief as the Court deems just and proper.

37

Dated:  November 18, 2016

*/s/ Russell S. Jones, Jr.*

Russell S. Jones, Jr.
Jennifer G. Bacon
Gregory M. Bentz
Andrew J. Ennis
POLSINELLI PC
900 W. 48th Place, Suite 900
Kansas City, MO 64112
Telephone:   (816) 753-1000
Facsimile:   (816) 753-1536

Von S. Heinz
LEWIS ROCA ROTHGERBER CHRISTIE LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
Telephone: (702) 949-8215
Facsimile: (702) 949-8351

*Counsel for Plaintiffs Learjet Inc., et al.,*
*Heartland Health, et al., Arandell Corp., et al,*
*and NewPage Wisconsin System, Inc., et al.*

Robert L. Gegios
Ryan M. Billings
Melinda A. Bialzik
Amy I. Washburn
KOHNER, MANN & KAILAS, S.C.
Barnabas Business Center
4650 N. Port Washington Road
Milwaukee, WI 53212
Telephone:   (414) 962-5110
Facsimile:   (414) 962-8725

*Counsel for Plaintiffs Arandell Corp., et al*
*and NewPage Wisconsin System, et al.*

Gary D. McCallister
MCCALLISTER LAW GROUP, LLC
120 North LaSalle Street, Suite 2800
Chicago, IL 60602
Telephone:   (312) 345-0611
Facsimile:   (312) 345-0612

38

Eric I. Unrein
FRIEDEN, UNREIN, FORBES & BIGGS, LLP
555 S. Kansas Ave., Suite 303
Topeka, KS 66603
Telephone:   (785) 354-1100
Facsimile:    (785) 354-1113

*Counsel for Plaintiffs Learjet, et al.*

Donald D. Barry
BARRY LAW OFFICES, LLC
5340 SW 17th Street
P.O. Box 4816
Topeka, KS 66604
Telephone:   (785) 273-3151
Facsimile:    (785) 273-5115

*Counsel for Plaintiffs Breckenridge Brewery,*
*et al., Learjet, Inc., et al., Arandell Corp.,*
*et al., NewPage Wisconsin System, et al.,*


### CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of November, 2016, a true and correct copy of the foregoing was electronically filed and served on counsel for all parties properly registered to receive notice via the Court's CM/ECF system.

*/s/ Russell S. Jones, Jr.*

55086894.1