# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| IN RE WESTERN STATES WHOLESALE NATURAL GAS ANTITRUST LITIGATION | MDL No. 1566 |
| -------------------------------------------------------- | |
| *Learjet, et al. v. ONEOK, Inc., et al.* | Case No. 03-CV-01431-RCJ-PAL |
| *Heartland Regional Medical Center, et al. v. ONEOK, Inc., et al.* | |
| *Arandell Corporation, et al. v. Xcel Energy Inc., et al.* | Case No. 2:07-V-101019-RCJ-PAL |
| *NewPage Wisconsin System, Inc. et al v. CMS Energy Resource Management Company, et al.* | Case No. 2:09-CV-00915-RCJ-PAL |

## PLAINTIFFS' MOTION AND MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF SETTLEMENTS WITH AEP, CORAL, DUKE AND ONEOK AND NOTICE OF HEARING

i

## <u>TABLE OF CONTENTS</u>

I.   FACTUAL AND PROCEDURAL HISTORY ............................................................2

   A.   Plaintiffs Allege a Nation-wide Conspiracy to Manipulate Prices of Natural Gas ..........2

   B.   These Settlements Should Be Granted Final Approval ....................................................3

        1.   Strength of the Plaintiffs' Case ............................................................................5

        2.   Risk, Expense, Complexity and Likely Duration of Further Litigation.................8

        3.   Risk of Maintaining Class Action Status Throughout the Trial ...........................8

        4.   The Amount of the Settlement...............................................................................9

        5.   The Extent of Discovery Completed and Stage of Proceedings...........................12

        6.   Experience and Views of Counsel ......................................................................12

        7.   Presence of a Governmental Participant ..............................................................13

        8.   Reaction of the Class Members of the Proposed Settlement...............................13

II.  CONCLUSION ...............................................................................................................15

EXHIBITS

   Exhibit A   Declaration of Jennifer Bacon

   Exhibit B   Declaration of Jeffrey Dahl

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amchem Products v. Windsor,*
   521 U.S. 591 (1997) ............................................................................................8, 9

*In re Bluetooth Headset Prods. Liab. Litig,*
   654 F.3d 935 (9th Cir. 2011) ..................................................................................3

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
   No. 14-CV-2058 JST, 2015 WL 9266493 (N.D. Cal. Dec. 17, 2015) *(CRT II)* ....................12

*Churchill Village, LLC v. Gen. Elec.,*
   361 F.3d 566 (9th Cir.2004) ..................................................2, 3, 4, 7, 9, 12, 14

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) ................................................................................3

*Lee v. Enter. Leasing Co-W.,*
   No. 3:10-CV-00326-LRH, 2015 WL 2345540 (D. Nev. May 15, 2015)................................3

*In re Linerboard Antitrust Litig,*
   292 F. Supp. 2d 631 (E.D. Pa. 2003)...................................................... 10, 12, 14

*Molski v. Gleich,*
   318 F.3d 937 (9th Cir. 2003) ................................................................................4

*Officers for Justice v. Civil Serv. Comm'n of San Francisco,*
   688 F.2d 615 (9th Cir. 1982), *cert. denied,* 459 U.S. 1217 (1983).........................................4

*Ramirez v. DeCoster,*
   194 F.R.D. 248 (D. Me. 2000) ................................................................................9

*Ramirez v. DeCoster,*
   204 F.R.D. 30 (D. Me. 2000)..................................................................................9

*Roeder v. Atlantic Richfield Company,*
   2013 WL 5878432..................................................................................................3

*Stanton v. Boeing Co.,*
   327 F.3d 938 (9th Cir. 2003) ................................................................................4

*Torist v. Tucson Elec. Power Co.,*
   8 F.3d 1370 (9th Cir 1993) ....................................................................................4

**Other Authorities**

Rule 23(e)(1), Fed.R.Civ.P. ...........................................................................................................1

Rule 23(e)(2), Fed.R.Civ.P. ...........................................................................................................2

Rule 23(e)(3), Fed.R.Civ.P. ...........................................................................................................1

Rule 23(e)(4), Fed.R.Civ.P. ...........................................................................................................2

Fed.Rule Civ. Proc. 23(b)(3)(D)....................................................................................................8

Rule 23(e) ........................................................................................................................................3

## INTRODUCTION

On February 9, 2017, this Court granted preliminary approval of four settlements in this class action. (MDL ECF No. 2795). Those settlements were reached with AEP, Coral, Duke and ONEOK. Plaintiffs and the settling Defendants now jointly ask that this Court grant final approval of these settlements so that the proceeds can be distributed to the class members.

The classes in *Learjet, et al. v. ONEOK, Inc., et al.*, 2:06-CV-0233-RCJ-PAL (hereinafter, "Kansas Settlement Class"), *Heartland Regional Medical Center, et al. v. ONEOK, Inc., et al.*, 2:07-CV-0987-RCJ-PAL (hereinafter, "Missouri Settlement Class"), and *Arandell Corporation, et al. v. Xcel Energy, Inc., et al.*, 2:06-CV-01019-RCJ-PAL, consolidated with *NewPage Wisconsin System, Inc. v. CMS Energy Resource Management Co., et al.*, 2:09-CV-00915-RCJ-PAL (hereinafter, collectively "Wisconsin Class") have reached settlements totaling $42.8 million.[1] As part of these first settlements, the AEP and Duke defendants will each pay the Settling Classes $9,400,000, ONEOK will pay the Settling Classes $11,000,000, and Coral Energy will pay the Settling Classes $13,000,000. Assuming the Court approves the fees and expenses proposed in counsel's motion, class members in Kansas, Missouri and Wisconsin will receive their share of approximately $26 million.

Each settlement's terms and conditions, including the settlement agreements themselves,[2] are described in greater detail in Plaintiffs' Motion for Preliminary Approval. Timely and

---

[1] A Second Motion for Preliminary Settlement Approval, and a request for expedited approval, is pending before this Court, which will provide the Kansas and Missouri class members with their shares of additional settlement funds in the gross amount of $15.125 million collectively from CMS and El Paso.

[2] Rule 23(e)(3), Fed.R.Civ.P.

1

adequate notice[3] was given as set forth in the Motion for Preliminary Approval, advising all potenial class members of their rights to object and/or to opt out of these settlements.[4]   There were *no* objections or opt-outs to any of these settlements, nor any objections to Class Counsel's preliminary request for an award of attorneys' fees, reimbursement of expenses and granting of incentive awards to the named Plaintiffs.[5]   The Court should grant final approval of the settlements at the Final Hearing on May 17, 2017, on the grounds that each settlement is fair, reasonable and adequate[6] and meets all requirements set forth in *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir.2004); *Howell v. JBI, Inc.,* 298 F.R.D. 649, 656 (D. Nev. 2014).

I.     **FACTUAL AND PROCEDURAL HISTORY**

    A.     **Plaintiffs Allege a Nationwide Conspiracy to Manipulate Prices of Natural Gas**

This Multi-District Litigation arises from a broadly-based arrangement to manipulate the prices of natural gas sold to industrial and commercial users in violation of the anti-trust laws of the states of Kansas, Missouri, Wisconsin and Colorado. This first set of settlements resolves claims brought by the Kansas Class, Missouri Class and Wisconsin Class against the four Settling Defendants.[7]

---

[3] Rule 23(e)(1), Fed.R.Civ.P.

[4] Rule 23(e)(4), Fed.R.Civ.P.

[5] Class Counsel's final motion for approval of attorneys' fees, reimbursement of expenses and granting of incentive awards to the named Plaintiffs are filed on this date.

[6] Rule 23(e)(2), Fed.R.Civ.P.

[7] These settlements resolve all claims against the settling defendants, as they are not parties to the Colorado (*Breckenridge)* action.

58158548.2

Plaintiffs have alleged that defendants' price manipulation began by early 2000 and continued in many respects through October 2002.[8] The manipulation was carried out through a scheme to falsely report prices to trade publications which generated and published natural gas price indexes.[9]  This false reporting included the delivery of false or misleading or knowingly inaccurate information concerning trades that did not occur, submitted actual trades with altered volumes and/or prices, and/or failed to submit other actual trades.[10]  The manipulative conduct was facilitated in several ways, including by telephone, by facsimile and via the internet.[11] Plaintiffs have alleged – and their experts have verified – that Defendants' actions impacted prices for natural gas traded or sold in the United States and in particular in the states at issue.[12] The anticompetitive effect of the Defendants' illegal arrangements, contracts, agreements, combination and conspiracy was to distort, for at least a large part of the class period, and artificially inflate the prices that the Plaintiffs and class members paid for natural gas.[13]

### B.    These Settlements Should Be Given Final Approval.

Final approval of settlements under Rule 23(e) "may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and

---

[8] *I.e.,* Learjet Complaint ¶ 46

[9] *I.e.,* Learjet Complaint, ¶ 49.

[10] *I.e.,* Learjet Complaint, ¶ 51.

[11] *I.e.,* Learjet Complaint, ¶ 49.

[12] *I.e.*, Learjet Complaint, ¶ 53

[13] *Id.*

adequate."[14]  While the inquiry in different cases may vary, in the Ninth Circuit, courts generally weigh the following eight factors, sometimes referred to as the *Churchill*[15] factors, in making final fairness determinations. The settlement is viewed as a whole, rather than as individual component parts.[16] This approval process requires the Court to balance a number of factors.  A district court "may consider *some or all* of the following factors" when determining whether a class action settlement is fair, reasonable and adequate:[17]

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.[18]

A full analysis of these *Churchill* factors leads to the inevitable conclusion that these settlements warrant final approval.

---

[14] *Lee v. Enter. Leasing Co-W.*, No. 3:10-CV-00326-LRH, 2015 WL 2345540, at *4 (D. Nev. May 15, 2015) (Hicks, J.) (quoting *In re Bluetooth Headset Prods. Liab. Litig*, 654 F.3d 935, 946 (9th Cir. 2011)).

[15] *E.g., Howell v. JBI, Inc.,* 298 F.R.D. 649, 656 (D. Nev. 2014); *Roeder v. Atlantic Richfield Company,* 2013 WL 5878432 at *5 (citing *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir.2004)).

[16] *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026-27 (9th Cir. 1998).

[17] *Molski v. Gleich,* 318 F.3d 937, 953 (9th Cir. 2003); *accord Stanton v. Boeing Co.,*327 F.3d 938, 959 (9th Cir. 2003)(emphasis added).

[18] *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir.2004); *see also, Torist v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir 1993)(quoting *Officers for Justice v. Civil Serv. Comm'n of San Francisco,* 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied,* 459 U.S. 1217 (1983)(internal quotation marks omitted).

1.      **Strength of the Plaintiffs' Cases**

In March 2003, the staff of the Federal Energy Regulatory Commission ("FERC") issued a report entitled Final Report on Price Manipulation in Western Markets: Fact-Finding Investigation of Potential Manipulation of Electric and Natural Gas Prices, Docket No,. PA02-2-000.  The report found that, "Market participants provided false reports of natural gas prices and trade volumes to industry publications. These publications used the reports to compile price indices and false reporting became epidemic."[19] The report went on to find that, "The predominant motives for reporting false information were to influence reported gas prices, to enhance the value of financial positions or purchase obligations, and to increase reported volumes to attract participants by creating the impression of more liquid markets."[20] Participants not only influenced the price of natural gas through false reporting but also may have influenced pricing through wash trading, the simultaneous purchase and sale of natural gas at the same price and in the same quantity for no legitimate business purpose.[21] Defendants in these cases were among the "participants" that FERC cited.

Plaintiffs' experts have found that because of the fungible nature of natural gas, price levels of natural gas from different areas across the nation are tied together.[22] While prices may not be identically impacted at all locations, all locations will be affected by manipulations

---

[19] FERC March 2003 Report, ES-6.

[20] *Id.*

[21] *Id.* at III-37.

[22] Bateman 4.12.2016 Report, p. 5.

elsewhere.[23]  Thus, regardless of where false and misleading information was reported, the prices of natural gas across the country were similarly impacted.

Plaintiffs' experts have specifically found that Defendants and their co-conspirators were engaged in a collusive behavior.[24]  The conspiracy[25] to false report was conducted between the Defendants and their co-conspirators and they worked with a joint purpose of manipulating gas prices for their own profits.[26]  Wash trading was also a part of the conspiratorial conduct which impacted the manipulation of natural gas prices.[27]   The conspiratorial arrangement had a nationwide impact.[28]  The conduct continued for a lengthy period of time.[29]  The bottom line is that Defendants participated in an illegal price fixing agreement.[30]

When employees and corporate representatives were challenged regarding their fraudulent reporting, wash trading and general conspiratorial conduct, they offered meager

---

[23] George Donkin Depo at 134:24-135:16.

[24] George Donkin Depo at 122:5-9.

[25] The state statutes on which Plaintiffs' claims are based do not limit themselves to prohibiting traditional Sherman Act "conspiracies."  *E.g.,* KSA § 50-163(c) (prohibiting "all arrangements, contracts, agreements, trusts or combinations…made with a view or which tend to prevent full and free competition…"); Wis.Stat. §133.03(1) ("every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce…"); R.S. Mo. §416.031.1 ("Every contract, combination or conspiracy in restraint of trade…").  As used herein, "conspiracy" includes any collusive, joint or cooperative conduct that would be deemed unlawful under the laws of Missouri, Kansas or Wisconsin.

[26] George Donkin Depo at 104:15-25; see also 118:2-6.

[27] George Donkin Depo at 247:2-7.

[28] George Donkin Depo at 109:4-10.

[29] George Donkin Depo at 231:11-23.

[30] George Donkin Depo at 231:11-23.

excuses such as, that they were told by their supervisors to false report,[31] "false reporting was common industry practice,"[32] and "everybody lies about their index."[33] Despite their excuses, Defendants understood that the false reporting affected the price of natural gas.[34]

The alleged activities led to investigations and actions brought by the Commodity Futures Trading Commission ("CFTC"), U.S. Department of Justice ("DOJ"), Federal Energy Regulatory Commission ("FERC"), the Securities and Exchange Commission ("SEC") and numerous individual lawsuits. Every Defendant resolved claims of false reporting brought by the CFTC, each paying fines ranging from $3 million to $30 million.[35] Co-conspirators also entered into such resolutions with the CFTC for claims of false reporting, including Enron, EnCana, Mirant, Cinergy, Enserco, Entergy-Koch, NRG, and Calpine.[36] Certain Defendants entered into resolutions with the DOJ, FERC and SEC. In addition to the Defendant companies themselves, dozens of Defendants' employees also faced charges and entered into plea agreements or were convicted of claims of manipulation or fraudulent reporting of gas prices.

---

[31] Michael Whitney Depo at 120:4-122:10.

[32] *See,* Michael Hoover, AEP DIV:495-503; John Baggett, Baggett Statement of Fact from Plea filed 2/15/2007; Randy Turturice Depo at 122:3-123:10

[33] Todd Lambert Depo at 142:7-146:5

[34] Donald Burwell Plea Agreement ¶ 19; Christopher Bakkenist Plea Agreement ¶ 15; Dallas Dean Plea Agreement ¶ 15; William Ham Plea Agreement ¶ 15; Donald Guilbault Plea Agreement ¶ 15; Dallas Dean Depo at 53:2-54:18.

[35] Donkin 4.13.2016 Report, p. 13-16

[36] *Id.*, p. 17-20.

      **2.**      **Risk, Expense, Complexity and Likely Duration of Further Litigation.**

These class actions are unlike most such actions based on their scope, longevity and complexity. More than eleven years have passed since the *Learjet* plaintiffs in Kansas first filed their class and individual actions against these Defendants. Soon thereafter, class and individual actions were filed in Missouri, Wisconsin and Colorado. Defendants have denied that what they did violated antitrust laws and have vigorously defended these actions since their inception. Defendants have filed dozens of dispositive motions.  Ruling on those motions have thus far resulted in two separate appeals to the Ninth Circuit and two appeals to the U.S. Supreme Court. Even after recent rulings, there remain eight (8) motions for summary judgment pending before this Court. Despite how strongly Plaintiffs feel about the merits and validity of their claims, there are no guarantees of ultimate success.

      **3.**      **Risk of Maintaining Class Action Status Throughout the Trial**

The third factor is the risk of maintaining class action status from the preliminary approval stage throughout the trial.  The greater the risk of losing that class action status, the more likely a class settlement is to be approved. Here, if class action status is ultimately lost, putative class members risk collecting nothing from potential settlement monies -- $42.8 million in these settlements and more than $15 million in the second group.

Indeed, the risk is far from theoretical, in that this Court recently denied certification of contested classes in these actions.  (Dkt. 2832). While that decision is not being appealed, it is undeniable at this time that maintaining these cases as class actions through trial is a volatile question. This *Churchill* factor weights in favor of a finding that these class settlements should be approved.

### 4.     The Amount of the Settlements

Pursuant to the terms of the settlements, Duke and AEP will each pay the Settling Classes $9,400,000; ONEOK will pay the Settling Classes $11,000,000 and Coral will pay the Settling Classes $13,000,000, for a total of $42.8 million.  An additional Second Motion for Approval of Settlements is currently pending before this Court,[37] bring the total amount of pending settlements to a sum total of $57,925,000.[38]

To the extent that this court's analysis considers the allocation of settlement monies in this first settlement between the Kansas, Missouri and Wisconsin Settling Classes,[39] the court should note that each settling Defendant is paying a lump sum to settle with three separate classes. The proposed settlement amounts will be distributed among the Missouri, Kansas and Wisconsin Settling Classes as follows:[40]

- Duke:  $9,400,000 total settlement:  less 50% of expenses; less 35% in attorneys' fees. Of the remainder, 20.2% of the Missouri Settling Class; 34.8% to the Kansas Settling Class and 45% to the Wisconsin Settling Class.

- AEP:  $9,400,000 total settlement:  less 50% of expenses; less 35% in attorneys' fees. Of the remainder, 18.4% to the Missouri Settling Class; 31.6%, to the Kansas Settling Class; and 50%, to the Wisconsin Settling Class.

- ONEOK:   $11,000,000 total settlement:   less 50% of expenses; less 35% in attorneys' fees. Of the remainder, 19%, to the Missouri Settling Class; 32.7%, to

---

[37] ECF No. 2833.

[38] In those Second Preliminary Settlements currently pending before this Court, El Paso has agreed to pay those settling Plaintiffs $10,000,000 and CMS has agreed to pay $5,125,000, for an additional amount in settlements of $15,125,000.

[39] *In re Linerboard Antitrust Litig,* 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003).

[40] Less approved administrative fees and approved incentive awards made to any of the named Plaintiffs.  The Missouri and Kansas Plaintiffs request incentive awards of $25,000 each. The Wisconsin Plaintiffs request incentive awards of $75,000 each.

58158548.2

the Kansas Settling Class; and 48.3%, to the Wisconsin Settling Class.

- Coral: $13,000,000 total settlement:  less 50% of expenses; less 35% in attorneys' fees. Of the remainder, 19%, to the Missouri Settling Class; 32.7%, to the Kansas Settling Class; and 48.3%, to the Wisconsin Settling Class.

The amounts of the settlements to date are significant standing alone, but particularly so when compared to what companion cases have settled for.  While the *Learjet*, *Heartland*, and *Arandell* cases were pending, five companion cases reached settlement:  *Texas-Ohio Energy, Inc. v. Centerpoint Energy, Inc., et al.*, CV-S-04-0465-PMP-PAL; *Fairhaven Power Co. v. EnCana Corp.*, CV-S-05-0243-PMP-PAL; *Abelman Art Glass Company v. EnCana Corp., et al.*, CV-S-05-0437-PMP-PAL; *Utility Savings & Refund Services, Inc. v. Reliant Energy Services, Inc., et al.*, CV-S-05-0110-PMP-LRL; and *Ever-Bloom, Inc., et al. v. AEP Energy Services, Inc., et al.*, CS-S-05-0808-MPM (collectively, the "California Class Actions").[41] In the first wave of the California settlements, the class members settled with four of the defendants for $2.4 million, one of which is a Settling Defendant in the present cases, and with another defendant for $700,000.[42] As in *Learjet*, *Heartland*, and *Arandell*, the California Class Actions alleged antitrust violations against many of the same Defendants arising from manipulation of natural gas prices between January 1, 2000 and October 31, 2002.[43] The settlement results in those California cases were mere fractions of the favorable settlements that have thus far been reached in this litigation.

Upon the settlements becoming final, Plaintiffs and Class Members will release any and all claims against the settling Defendants relating to the subject matter of this lawsuit. The

---

[41] The claims in the present cases arise from the same price manipulation claims against many of the same defendants that were made in the California Class Actions.

[42] MDL Dkt. No. 492 (D. Nev. April 3, 2007).

[43] Order Preliminarily Approving Settlements, Certifying a Settlement Class, and Authorizing Dissemination of Notice, MDL Dkt. No. 510 (D. Nev. May 3, 2007).

58158548.2

release does not release the settling Defendants' co-conspirators and/or Co-Defendants for any liability resulting from their participation in an agreement or a conspiracy with the settling Defendants.[44]

The settlements also require the settling Defendants to cooperate with the Plaintiffs in the prosecution of the case against the non-settling Defendants by, *inter alia*, stipulating to authenticity, genuineness, and admissibility of certain evidence and by producing employees for depositions and/or testimony at trial.[45] The settling Defendants' alleged conspiratorial conduct and sales remain in the case for purposes of proving liability and computing damages against the remaining Defendants.

These Settlements do not reduce the Classes' potential total recovery because they preserve the Classes' ability to recover additional damages from the remaining co-conspirator Defendants based on the Settling Defendants' conduct and sales under a joint and several liability theory, thus creating added incentive for the remaining Defendants to settle or allowing greater recovery for the Plaintiffs at trial."[46]  The results are also important because they likely encourage other settlements hereafter:

> The Court also notes that this settlement has significant value as an *'icebreaker'* settlement—it is the first settlement in the litigation—and should increase the likelihood of future settlements. An early settlement with one of many defendants can 'break the ice' and bring other defendants to the point of serious negotiations.[47] (emphasis added).

---

[44] *See,* Settlement Agreements attached to Motion for Preliminary Approval of Settlement

[45] *Id.*

[46] *In re Cathode Ray Tube (CRT) Antitrust Litig.,* No. 14-CV-2058 JST, 2015 WL 9266493, at *6 (N.D. Cal. Dec. 17, 2015) *(CRT II).*

[47] *In re Linerboard Antitrust Litig.,* 292 F. Supp. 2d at 643.

### 5.    The Extent of Discovery Completed and Stage of Proceedings

The fifth *Churchill* factor asks the Court to determine whether sufficient discovery has been completed and the proceedings have progressed so that the Plaintiffs are able to evaluate the value of their settlement. Here, discovery is essentially completed after years of depositions and millions of pages of documents being exchanged. Plaintiffs have submitted responses to hundreds of interrogatories, requests for production of documents, and requests for admissions. Altogether, Class Counsel reviewed, analyzed and indexed well over one million documents. Defendants also produced 262,071 audio wave files, containing recorded conversations of their natural gas traders' telephone lines, recorded between January 1, 2000 and October 31, 2002, to which Class Counsel has listened. Class Counsel has responded to dozens of contention interrogatories in which they identified all evidence collected throughout discovery, including documents, audio tapes, deposition testimony and information in the public domain supporting their claims. Counsel have also traveled to and appeared in monthly status hearings before this Court throughout these years.  The parties have prepared for and taken depositions and produced clients for depositions, for a total of more than 160 fact depositions.[48]

After all this, it is easy to state that this case is at a stage at which counsel has completed exhaustive discovery and thoroughly knows the strengths and weaknesses of their cases.  In the absence of approval of final settlement, these cases will proceed to trial and/or appeal with all the inherent risks of those stages to the class members.

### 6.    Experience and Views of Counsel

Plaintiffs have retained skilled counsel with extensive experience in prosecuting antitrust class actions. Class Counsel are fully prepared to fully prosecute these claims on behalf of all of

---

[48] *See* Motion for Approval of Settlement (ECF #2833).

the class members Polsinelli PC, Kohner Mann & Kailas SC, McCallister Law Group, LLC, Frieden, Unrein & Forbes LLP, and the Barry Law Firm LLC, have vigorously pursued the litigation on behalf of Plaintiffs and the proposed Classes. They have devoted substantial time, resources, and leadership necessary to prosecute this action, and will continue to prosecute these cases against the Non-settling Defendants.[49]

It is the opinion of these experienced class counsel that this final settlement is fair, reasonable and adequate and is in the best interests of the interested putative class members.[50]

### 7.    Presence of a Governmental Participant

There are no governmental participants either as a party plaintiff or a party defendant.  As such, this *Churchill* factor has no bearing.

### 8.    Reaction of the Class Members of the Proposed Settlement

This Court approved both long-form notices and short-form notices which were issued on March 31, 2017.  The Court set the following dates for responsive actions by putative class members:

    a.    Putative class members must submit requests for exclusion from the settlement no later than April 11, 2017; and

    b.    Putative class members must submit written objections to the terms of the settlement no later than April 11, 2017.

No requests for exclusion or written objections have been submitted by any putative class members.  Thus, this *Churchill* factor weighs in favor of approval of final settlement.

---

[49] *See* Declarations of each Class Counsel, Exhibits B to F, attached to Motion for Approval of Settlement (ECF #2833)..

[50] *Id.*

58158548.2

There is no doubt that these settlements are fair and reasonable and should be approved. The settlements were reached after years of hard-fought litigation, through arms-length negotiations involving experienced counsel, a skilled mediator, and actively involved Plaintiffs. The settlements total $42.8 million, a substantial sum under any measure. Counsel are seeking only half of their expenses advanced as of August 31, 2016, and fees that amount to less than 33% of the gross settlement funds, an amount that is very reasonable given the contingent nature of the representation and the attorneys' lodestars which are much larger than the fees being sought in these settlements. Most importantly, these settlements will result in close to $26 million being returned to commercial and industrial entities who bought natural gas during the period in which gas prices were being manipulated.

## II.   SUMMARY OF THE SETTLEMENT ADMINISTRATION AND DISTRIBUTION METHODOLOGY

### A.   Settlement Administration

As noted in the Preliminary Approval papers, Dahl Administration has handled the notice and response program. On February 15 and 21, 2017, Dahl mailed over 3,500 notices and, by the middle of March 2017, had provided nearly four million "impressions" on the World Wide Web about the settlements. The Post Office returned only a few hundred notices. There were more than 6,400 unique visits to the settlement website, www.naturalgasantitrustsettlement.com. The Publication Notice was published in the USA Today and seven other local newspapers. A nationwide press release was sent to 5,815 newspapers, television stations, radio stations and magazines. In addition press releases were sent to 5,400 websites and online databases, including all major search engines. There were 18 sets of correspondence sent and received (plus 12 emails) and 45 calls to the Helpline.

### B.      Settlement Distributions.

Once the Court gives final approval to the settlements, Dahl will again publish and send notices to all class members, asking them to submit claims containing information about the volume of their natural gas purchases during the class period.  Plaintiffs propose that the deadline for submitting claims should be June 30, 2017.  Distributions will be made on a *pro rata* basis in each state to those class members that submitted the required information.  As noted, assuming approval of the requested fees and expenses, counsel expects that approximately the following amounts will be available for distribution in each state: [51]

Wisconsin:  $12,654,642.59

Kansas: $8,611,775.95

Missouri: $4,823,537.22

There should be no need for any *cy pres* or other default procedure, as it is anticipated that all claimants will receive their pro rata share of the funds listed above, and because each claimant will provide contact information, there should be no or minimal issues with respect to uncashed checks.

Assuming timely approval, counsel expects that all distributions from this first tranche of settlements should be completed by July 31, 2017.

## III.   CONCLUSION

For the foregoing reasons, and in the interests of justice, Plaintiffs respectfully submit that the Court should enter an order granting final approval of the settlement as being fair,

---

[51] These maybe be reduced slightly depending on the costs of administration and the incentive awards, if any, that the Court approves.

58158548.2

adequate and reasonable.  Plaintiffs further pray for such other and further relief as this Court deems just and reasonable.


Dated:  April 24, 2017

*/s/ Russell S. Jones, Jr.*

Russell S. Jones, Jr.
Jennifer G. Bacon
Gregory M. Bentz
Andrew J. Ennis
POLSINELLI PC
900 W. 48th Place, Suite 900
Kansas City, MO 64112
Telephone:   (816) 753-1000
Facsimile:    (816) 753-1536

Von S. Heinz
LEWIS ROCA ROTHGERBER CHRISTIE LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
Telephone: (702) 949-8215
Facsimile: (702) 949-8351

*Counsel for Plaintiffs Learjet Inc., et al.,*
*Heartland Health, et al., Arandell Corp., et al,*
*and NewPage Wisconsin System, Inc., et al.*

Gary D. McCallister
MCCALLISTER LAW GROUP, LLC
120 North LaSalle Street, Suite 2800
Chicago, IL 60602
Telephone:   (312) 345-0611
Facsimile:    (312) 345-0612

Eric I. Unrein
FRIEDEN, UNREIN, FORBES & BIGGS, LLP
555 S. Kansas Ave., Suite 303
Topeka, KS 66603
Telephone:   (785) 354-1100
Facsimile:    (785) 354-1113

*Counsel for Plaintiffs Learjet, et al.*

16

Donald D. Barry
BARRY LAW OFFICES, LLC
5340 SW 17th Street
P.O. Box 4816
Topeka, KS 66604
Telephone:  (785) 273-3151
Facsimile:   (785) 273-5115

*Counsel for Plaintiffs Breckenridge Brewery,*
*et al., Learjet, Inc., et al., Arandell Corp.,*
*et al., NewPage Wisconsin System, et al.,*

Robert L. Gegios
Ryan M. Billings
Melinda A. Bialzik
Amy I. Washburn
KOHNER, MANN & KAILAS, SC
Barnabas Business Center
4650 N. Port Washington Road
Milwaukee, WI 53212
Telephone:  (414) 962-5110
Facsimile:   (414) 962-8725

*Counsel for Plaintiffs Arandell Corp., et al*
*and NewPage Wisconsin System, et al.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of April, 2017, a true and correct copy of the foregoing was electronically filed and served on counsel for all parties properly registered to receive notice via the Court's CM/ECF system.

     /s/ Russell S. Jones, Jr.

58158548.2