

✓ FILED _____ RECEIVED
_____ ENTERED _____ SERVED ON
COUNSEL/PARTIES OF RECORD

AUG 2 2 2017

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

|  |  |
|---|---|
| In re WESTERN STATES WHOLESALE NATURAL GAS ANTITRUST LITIGATION | 2:03-cv-01431-RCJ-PAL<br>MDL No. 1566<br>**ORDER** |
| REORGANIZED FLI, INC. et al.,<br><br>  Plaintiffs,<br><br>  vs.<br><br>WILLIAMS COMPANIES. et al.,<br><br>  Defendants. | 2:05-cv-01331-RCJ-PAL |
| LEARJET, INC. et al.,<br><br>  Plaintiffs,<br><br>  vs.<br><br>ONEOK, INC. et al.,<br><br>  Defendants. | 2:06-cv-00233-RCJ-PAL |

SINCLAIR OIL CORP.,

             Plaintiff,

        vs.                                              2:06-cv-00267-RCJ-PAL

E PRIME INC. et al.,

             Defendants.

SINCLAIR OIL CORP.,

             Plaintiff,

        vs.                                              2:06-cv-00282-RCJ-PAL

ONEOK ENERGY SERVICES CO., L.P.,

             Defendant.

BRECKENRIDGE BREWERY OF
COLORADO, LLC et al.,

             Plaintiffs,

        vs.                                              2:06-cv-01351-RCJ-PAL

ONEOK INC. et al.,

             Defendants.

HEARTLAND REGIONAL MEDICAL
CENTER et al.,

             Plaintiffs,

        vs.                                              2:07-cv-00987-RCJ-PAL

ONEOK, INC. et al.,

             Defendants.

| | |
|---|---|
| ARANDELL CORP. et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | )      2:07-cv-01019-RCJ-PAL |
| | ) |
| XCEL ENERGY INC. et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| NEWPAGE WISCONSIN SYSTEM INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )      2:09-cv-00915-RCJ-PAL |
| | ) |
| CMS ENERGY RESOURCE MANAGEMENT CO. et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

These consolidated cases arise out of the energy crisis of 2000–2002. Plaintiffs (retail buyers of natural gas) allege that Defendants (natural gas traders) manipulated the price of natural gas by reporting false information to price indices published by trade publications and by engaging in "wash sales." Approximately forty motions are pending before the Court, including the final group of dispositive motions before remand to the transferor districts for trial.

## I.  PROCEDURAL HISTORY

In 2003, the Judicial Panel on Multidistrict Litigation ("JPML") transferred seven class action cases from various districts in California to this District under 28 U.S.C. § 1407 as Multidistrict Litigation ("MDL") Case No. 1566, assigning Judge Pro to preside. Since then, the JPML has transferred in several more actions from various districts throughout the United States. Between 2003 and 2015, Judge Pro ruled on many motions to remand, to dismiss, and for summary judgment. He also approved several class settlements. Several parties settled on their

1   own. One or more of the cases have been to the Court of Appeals twice and to the Supreme

2   Court once. In 2007, the Court of Appeals reversed several dismissals under the filed rate

3   doctrine and remanded for further proceedings. In 2013, the Court of Appeals reversed several

4   summary judgment orders, ruling that the Natural Gas Act did not preempt state law anti-trust

5   claims and that certain Wisconsin- and Missouri-based Defendants should not have been

6   dismissed for lack of personal jurisdiction. The Supreme Court granted certiorari as to

7   preemption under the Natural Gas Act and affirmed. The case was soon thereafter reassigned to

8   this Court when Judge Pro retired. The Court has issued several dispositive orders and has

9   denied class certification in applicable cases. Eight of the eighteen consolidated cases remain

10  open, the others having been variously settled, dismissed, or remanded to state courts.

11  ## II.      MOTIONS TO RECONSIDER

12          Plaintiff Sinclair Oil Corp. asks the Court to correct an alleged clerical error in the

13  Court's March 30, 2017 order. In the introduction to its ruling on cross-motions for summary

14  judgment on the issue of release, the Court wrote that material issues of fact remained as to

15  whether Sinclair Oil had received sufficient notice of the settlements in the NYMEX case. But

16  the Court thereafter closely analyzed the issue, finding that the release indeed precluded the

17  present claims and that there had been sufficient notice of the settlements. Defendant ONEOK

18  Energy Services Co., L.P. ("OESC") has responded that it has no objection to a clarification to

19  the effect that the Court misspoke in its introductory remarks but intended to grant its motion

20  (and the joinder thereto filed by Defendants e prime, inc. and Xcel Energy Inc.[1]), as indicated in

21  both the analysis following the introduction and the "conclusion" section of the order.

22

23

24
---
1 These two Defendants have filed a separate motion under Rule 60(a) to this effect.

Defendants are correct. The Court will amend the previous order under Rule 60(a) to remove the final sentence of the first paragraph of Part III.B.

## III.    SUMMARY JUDGMENT MOTIONS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court uses a burden-shifting scheme. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.

If the moving party fails to meet its initial burden, summary judgment must be denied and the court needn't consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). If the moving party meets its initial burden, the burden then shifts to the nonmoving party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v.*

1   *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute,

2   the nonmoving party need not establish a material issue of fact conclusively in its favor. It is

3   sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

4   parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

5   *Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid

6   summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor*

7   *v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the

8   assertions and allegations of the pleadings and set forth specific facts by producing competent

9   evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S.

10   at 324.

11       At the summary judgment stage, a court's function is not to weigh the evidence and

12   determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477

13   U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are

14   to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely

15   colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

16   Notably, facts are only viewed in the light most favorable to the nonmoving party where there is

17   a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). That is, even

18   where the underlying claim contains a reasonableness test, where a party's evidence is so clearly

19   contradicted by the record as a whole that no reasonable jury could believe it, "a court should not

20   adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

21       **A.    Motions Nos. 2745, 2764**

22       Responses to these motions are due two weeks after completion of depositions of certain

23   expert witnesses. (*See* Orders, ECF Nos. 2786, 2797). Those depositions were expected to have

24   been completed by March 10, 2017. (*See* Order No. 2786). No responses to Motions Nos. 2745

or 2764 appear to have been filed, however. The Court will therefore deny those motions without prejudice at this time.

### B. Motion No. 2740

Defendants in the '233 Case have moved for summary judgment against the "full consideration" remedy under Kansas law. Defendants note that the Kansas Restraint of Trade Act ("KRTA") was amended in 2013 to replace the "full consideration" measure of damages with a triple damages remedy. *Compare* Kan. Stat. Ann. § 50-115 (repealed), *with id.* § 50-161(b) (2013). The question is whether the amendment applies retroactively to claims arising before the amendment. Defendants are correct that under Kansas law, changes to substantive rights apply only prospectively, but changes to remedies alone apply retroactively:

> It is the law of this state that a statute which merely changes a remedy is not invalid, as there are no vested rights in any particular remedy. While generally statutes will not be construed to give them retroactive application unless it appears that such was the legislative intent, nevertheless when a change of law merely affects the remedy or law of procedure, all rights of action will be enforced under the new procedure without regard to whether they accrued before or after such change of law and without regard to whether or not the suit has been instituted, unless there is a saving clause as to existing litigation.

*Jones v. Garrett*, 386 P.2d 194, 199 (Kan. 1963); *accord Nitchals v. Williams*, 590 P.2d 582, 587 (Kan. 1979). Defendants note that two courts to address the retroactivity of the repeal of the "full consideration" remedy have found that the repeal is retroactive under Kansas law. *See In re Polyurethane Foam Antitrust Litig.*, 998 F. Supp. 2d 625, 640 (N.D. Ohio 2014); *Assoc. Wholesale Grocers, Inc. v. United Egg Producers*, No. 10-cv-2171, at 4 (Kan. Dist. Ct., Wyandotte Cnty. Oct. 3, 2013).

Plaintiffs respond that the amendment to KTRA disclaimed any retroactive effect, i.e., that it contains a saving clause of the type mentioned by the *Jones* Court. The Court disagrees. The saving clause applies only to causes of action themselves, not to remedies:

1   K.S.A. 50-163 and the amendments to K.S.A. 50-101 and 50-112 by this
    act shall be applied retroactively to any choses in action or defenses premised on
2   any provision of the Kansas restraint of trade act amended or repealed by this act,
    and any such choses in action or defenses that have accrued as of the effective date
3   of this act shall be abated, *but causes of action that were pending in any court before
    the effective date of this act, shall not be abated*. All other non-remedial provisions
4   of this section shall be applied prospectively.

5   Kan. Stat. Ann. § 50-164 (2013) (emphasis added).

6       The now-repealed "full consideration" remedy was formerly found at section 50-115.

7   Section 50-164 does not mention section 50-115. Section 50-164 provides that certain new

8   substantive standards for antitrust claims found in section 50-163, as well as the amended

9   substantive standards found in sections 50-101 and 50-112, apply retroactively (against the

10  default rule of prospective-only application of changes to substantive rights), but that any other

11  *non-remedial* changes shall be applied only prospectively (in accordance with the default rule).

12  Normally, no saving clause is required under Kansas law to rescue causes of action against

13  retroactive effect. In the case of the 2013 KRTA amendments, however, one was needed,

14  because the amendments were made retroactive to causes of action accrued but not yet pending.

15  But the saving clause under section 50-164 does not indicate that amendments to remedies (such

16  as the repeal of section 50-115) are to be applied only prospectively. That is enough to find the

17  repeal of section 50-115 to apply to pre-amendment claims under Kansas law. And the final

18  sentence of section 50-164 goes further, to avoid any confusion. In clarifying that all other "non-

19  remedial" provisions of § 6 of KRTA are prospective, the amendment strongly implies that any

20  amendments to remedial provisions are to be applied retroactively in accordance with the default

21  rule under Kansas law.

22      Plaintiffs also argue that the language "causes of action that were pending in any court

23  before the effective date of this act, shall not be abated" means that the repeal of the "full

24  consideration remedy" does not apply to this case. *See id.* The Court disagrees. The non-

abatement clause of section 50-164 concerns the retroactivity of claims, not remedies. It provides that claims that were substantively viable only under the previous versions of the relevant statutes *and which were pending before the 2013 amendments* remain viable, whereas claims that were substantively viable only under the previous versions of the relevant statutes and which accrued before the 2013 amendments, *but which were not pending at the time of the 2013 amendments*, are retroactively nonviable. Section 50-164 discusses only the retroactivity of changes to substantive standards governing antitrust claims under KRTA. It does not discuss the retroactivity of remedies under the 2013 KRTA amendments. Its silence on the retroactivity of remedies plus the default rule under *Jones* is enough to decide the issue, and as noted, section 50-164 provides a further (unnecessary) implication that amendments to remedial provisions are to be applied retroactively by qualifying the catch-all provision with the term "non-remedial."

Plaintiffs also argue that however this Court may interpret the effects of the amendments, the Kansas Court of Appeals has held that the repeal of section 50-115 was not retroactive. The Court disagrees. The first opinion cited is unpublished and is therefore not precedential under Kansas law. It is still potentially persuasive, but the opinion turned on whether a Kansas district court had properly decertified a class and only briefly mentioned section 50-115, not addressing the issues the Court has addressed directly, *supra. See generally O'Brien v. Leegin Creative Leather Prods., Inc.*, No. 188,908, 2014 WL 1362657 (Kan. Ct. App. Apr. 4, 2014). The next case is published, but that case does not address the retroactivity of the repeal of the "full consideration" remedy. *See generally Smith v. Philip Morris Cos., Inc.*, 335 P.3d 644 (Kan. Ct. App. 2014). Although the *Smith* court briefly addressed the amendments and noted that the pre-2013 KRTA applied to that case because it had been pending before the amendments, those facts are only briefly mentioned, and the issue is not discussed, i.e., the relevant issues do not appear to have been litigated. *See id.* 652–63.

There being no binding authority addressing the issue directly, the Court finds that the best interpretation of Kansas law is that the 2013 repeal of the "full consideration" remedy under KRTA is retroactive to all cases. A contrary conclusion would require the Court to read words into section 50-164 and ignore other words therein, or to countermand the law distinguishing the retroactivity of rights versus remedies as clearly stated by the Kansas Supreme Court. Accordingly, the Court grants the motion for summary judgment on this issue.

### C. Motion No. 2741

The remaining Defendants in the '1019 and '915 Cases move for summary judgment based on res judicata and/or release against Arandell Corp. and NewPage Wisconsin System, Inc. (collectively, "Hedged Plaintiffs") based on release under a settlement agreement reached in a consolidated class action brought in the Southern District of New York ("the NYMEX Case"). The Amended Consolidated Class Action Complaint ("ACCAC") in the NYMEX Case alleged that the defendants had manipulated the prices of natural gas futures and options on the New York Mercantile Exchange ("NYMEX") between January 1, 2000 and December 31, 2002 by reporting inaccurate, misleading, and false trading information, including artificial volume and price information, to trade publications that compile and publish such information. The Complaints here make the same allegations within the NYMEX relevant time period. (*Compare* Second Am. Compl. ¶¶ 1–9, ECF No. 190 in Case No. 2:07-cv-1019, *and* Compl. ¶¶ 1–9, ECF No. 39-3, at 13 in Case No. 2:09-cv-915, *with* Am. Consol. Class Action Compl. ¶¶ 5, 60–70, ECF No. 2300-1). Several movants were also defendants under the ACCAC.[2] The plaintiff

---

2 A comparison of the remaining Defendants to the defendants in the NYMEX action indicates that Williams Merchant Services Co., LLC; Dynegy Illinois, Inc.; DMT GP, LLC; Dynegy GP, Inc.; El Paso Corp.; Northern States Power Co.; and Xcel Energy Inc. were not defendants in the NYMEX Case. (*Compare* Mot. Summ. J. 2 n.1, ECF No. 2741, *with* Ex. A to Am. Consol. Class Action Compl., ECF No. 2300-1). These Defendants are therefore not entitled to summary

class in the NYMEX Case was defined as persons who had bought or sold natural gas futures or options on NYMEX during the relevant times. Hedged Plaintiffs were part of the NYMEX class because they directed their agent Kaztex to purchase NYMEX natural gas contracts during the relevant time period. (*See* Treis Dep. 144–45, 148, 167 & Exs. 112, 115, ECF No. 2741-8 (showing NYMEX natural gas contracts purchases by Arandell for each month between November 2001 and December 2002, except April 2002); Krolikowski Dep 53–54, ECF No. 2743 (testifying that NewPage Wisconsin System bought NYMEX natural gas contracts purchases through Stora Enso Financial Services during the relevant time period)).

On May 24, 2006, the court in the NYMEX Case entered a Final Judgment and Order of Dismissal ("the First Settlement Order") with an expanded plaintiff class definition reaching back to June 1, 1999. The first group of settling class members was to receive a total of nearly $73 million. On June 15, 2007, the court in the NYMEX Case entered a Final Judgment and Order of Dismissal ("the Second Settlement Order") with a similarly defined plaintiff class. The second group of settling class members was to receive a total of nearly $28 million. Paragraph 6 of the First Settlement Order and Paragraph 5 of the Second Settlement Order provided for releases of the parties from further litigation:

> The Released Parties are finally and forever released and discharged from any manner of claims . . . and causes of action in law, admiralty, or equity, whether class, individual, or otherwise in nature . . . whether known or unknown, suspected or unsuspected, whether concealed or hidden, or in law, admiralty, or equity, that the Representative Plaintiffs and other members of the Class who have not timely opted out of the settlement and excluded themselves from the Class ("Settling Plaintiffs"), or any of them, individually, or as a class (whether or not they make a claim upon or participate in the Settlement Funds), ever had, now have or hereafter can, shall or may have, against the Released Parties arising from or relating in any way to trading in NYMEX Natural Gas Contracts (including purchasing, selling, or

---

judgment under the res judicata or release theories of the present motion. These Defendants may move to reconsider if they have evidence of relationships to released NYMEX defendants, e.g., via succession or merger.

holding any NYMEX Natural Gas Contract, or taking or making delivery of physical natural gas pursuant to any NYMEX Natural Gas Contract, or any combination thereof, whether as a hedger or speculator), whether or not asserted in the Action, including without limitation, claims which (a) arise from *or relate in any way to any conduct complained of in any complaint filed in the Action*, (b) have been asserted or could have been asserted in any state or federal court or any other judicial or arbitral forum against the Released Parties or any one of them, (c) arise under *or relate to any federal or state commodity price manipulation law, any state or federal unfair or deceptive business or trade practices law, or other law or regulation, or common law, including, without limitation, the Commodity Exchange Act, 7 U.S.C. § 1 et seq., the federal antitrust laws (as that term is defined in 15 U.S.C. § 12), or state antitrust laws* and/or (d) the claims brought in this Action. The Settling Plaintiffs, and each of them, are hereby enjoined from asserting any such claims against the Released Parties.

(First Settlement Order ¶ 6(a), at 4–6, ECF No. 2300-5 (emphases added; footnote omitted)). The omitted footnote defines "Released Parties" as, *inter alia*, the settling defendants and their predecessors and successors. (*See id.* 4 n.3, at 4–5). The release language of the Second Settlement Order is the same in relevant respects. (*See* Second Settlement Order ¶ 5(a), at 4–5, ECF No. 2300-7).

As the Court has ruled previously, these releases bar the present claims against those movants who were defendants in the NYMEX Case as against any Plaintiffs who were members of the settlement class, received sufficient notice, and did not opt out. The NYMEX court found that notice to the class had been sufficient and that the settlements were fair and reasonable, and movants provide evidence that the NYMEX Case claims administrator mailed notices to Hedged Plaintiffs' NYMEX broker, Kaztex. (*See* Glenn Aff. & Exs. 1, 5, ECF No. 2741-11). There is no evidence that Hedged Plaintiffs opted out of the class.

Hedged Plaintiffs argue that they cannot have received sufficient notice via "pass through" notice to Kaztex. Unlike Sinclair Oil Co. previously argued, Hedged Plaintiffs do not appear to deny that they had a relationship with Kaztex when the notice was given to Kaztex. The question is whether notice to Kaztex was a constitutionally reasonable attempt at notice. A

broker has a fiduciary duty to notify parties like Hedged Defendants of such matters. Hedged

Plaintiffs argue that movants have adduced no evidence that they made any attempt in the

NYMEX litigation to identify the customers behind Kaztex's trades, and that their failure to do

so but merely to rely on notice to the broker itself was constitutionally unreasonable. But the

NYMEX court explicitly found that Rule 23 and due process had been satisfied with respect to

class member notification. "Normally we will satisfy ourselves that the party received the

requisite notice, opportunity to be heard, and adequate representation by referencing the state

court's findings." *Hesse v. Sprint Corp.*, 598 F.3d 581, 588 (9th Cir. 2010) (citing *Epstein v.

MCA, Inc.*, 179 F.3d 641, 648 (9th Cir. 1999) (noting that certifying courts' determinations on

such issues are not subject to collateral review) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S.

797, 809 (1985))). Hedged Plaintiffs' remedy is to move to intervene in the NYMEX action for

the purpose of filing a Rule 60(b) motion as to the notice issue. Only if such a motion were

granted could this Court reexamine the notice issue in the present context.

The Court has rejected the argument that the NYMEX Case concerned harm to natural

gas *futures traders* via Defendants' acts, i.e., the artificial inflation of futures prices via reporting

false prices and engaging in wash trades, whereas the present case concerns harm to natural gas

*consumers* due to those acts. The release language of the Settlements is broad enough to

preclude the present claims. The release clause releases OESC and other settling defendants

from "any manner of claims . . . and causes of action" by settling plaintiffs:

> *relating in any way* to trading in NYMEX Natural Gas Contracts . . . *including
> without limitation, claims which . . . relate in any way to any conduct complained
> of in any complaint filed in the Action* [or which] *arise under or relate to any* federal
> or state commodity price manipulation law, any state or federal unfair or deceptive
> business or trade practices law, or other law or regulation, or common law,
> including, without limitation . . . *state antitrust laws.*

(First Settlement Order ¶ 6(a), at 4–6 (emphases added; footnote omitted)).  The language of the release is of course broader than the natural release as a matter of law that would have resulted from the settlement under ordinary principles of claim preclusion, otherwise the release would serve no purpose.  And the language of the release here is extremely broad.  It releases Defendants from the present claims, because they arise out of alleged conduct relating to conduct complained of in the NYMEX Case.  The Court now rejects Hedged Plaintiffs' similar argument that they did not purchase NYMEX natural gas contracts because they simply participated in a Kaztex hedging program under which Kaztex did so.  The release is broad enough to cover Hedged Plaintiffs' claims, and the evidence noted, *supra*, shows that Kaztex purchased natural gas contracts on behalf of Hedged Plaintiffs.  Plaintiffs' argument is further undermined by their own argument in opposition to Motion No. 2744 that they were direct purchasers of natural gas or natural gas contracts for the purposes of Wisconsin's "full consideration" statute despite using Kaztex or others as middlemen.

### D.      Motions Nos. 2744, 2754

The Williams Cos., Inc.; Williams Merchant Services Co, LLC; and Williams Gas Marketing, Inc. move for summary judgment in the '1019 and '915 Cases because they sold no natural gas (or natural gas contracts) directly to any Plaintiffs during the relevant time period.  Movants note that the Court of Appeals upheld Judge Pro's ruling in this case that Wisconsin law permits a "full consideration" remedy only where a plaintiff directly purchased the commodity.  *See In re W. States Wholesale Natural Gas Litig.*, 715 F.3d 716, 745–47 & n.28 (9th Cir. 2013) (citing Wis. Stat. § 133.14 and finding the result too clear to certify to the Wisconsin Supreme Court) ("We agree with the district court's conclusion that the statutory text at issue is unambiguous. . . . There is no provision authorizing recovery by indirect purchasers or other non-parties to the voided contract.").  But even assuming movants have satisfied their initial

burden, Plaintiffs have adduced evidence of movants' sales of natural gas to Plaintiffs through their purchasing agents such as Kaztex. It is largely the same evidence, such as the Krolikowski deposition, that movants adduced in support of their summary judgment motion based on res judicata and release to show that Plaintiffs *had* in fact purchased natural gas from them, in order to show that Plaintiffs were member of the NYMEX class.

In reply, movants argue that Plaintiffs do not deny that movants did not sell natural gas to any Plaintiff during the relevant time period, but only to purchasing agents such as Kaztex. But that does not appear to be Plaintiffs' argument. Plaintiffs argue (contrary to their argument in opposition to Motion No. 2741) that the sales to Kaztex and WPS were not *to* those brokers but *through* them to Plaintiffs. The evidence is unclear enough to be interpreted that way by a reasonable jury. Assuming that a jury believed that the nature of the transactions between movants and Plaintiffs were sales directly between them that were simply facilitated by an agent such as Kaztex or WPS—the Court cannot rule this out based on the evidence—the Court of Appeals' ruling requiring a direct sale does not preclude the full consideration remedy under Wisconsin law.

### E.    Motion No. 2746

Defendants in the '233, '987, '1019, '915, and '1351 Cases move for summary judgment for failure to establish an antitrust conspiracy. An antitrust conspiracy under the Clayton Act requires an agreement. But an agreement need not be explicit. The Supreme Court has noted that coincidental changes in price structures at the same time by multiple competitors with no legitimate explanation may be enough to imply an agreement in restraint of trade under the Clayton Act. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.4 (2007). Although "lawful parallel conduct fails to bespeak unlawful agreement," *id.* at 556, and parallel conduct may just as easily indicate competitive behavior as anticompetitive behavior, *see In re Musical*

1    *Instruments & Equip. Antitrust Litig.*, 789 F.3d 1186, 1193 (9th Cir. 2015), parallel conduct is

2    not irrelevant to showing a conspiracy. An antitrust plaintiff may show a conspiracy via parallel

3    conduct combined with "plus factors" under the totality of the circumstances. *Id.* at 1194 (citing

4    *In re Citric Acid Litig.*, 191 F.3d 1090, 1102 (9th Cir. 1999)) ("Whereas parallel conduct is as

5    consistent with independent action as with conspiracy, plus factors are economic actions and

6    outcomes that are largely inconsistent with unilateral conduct but largely consistent with

7    explicitly coordinated action."). Examples of economic activity that tends to imply an agreement

8    include extreme action against self-interests, decisions made closely enough in time that

9    agreement is more likely than coincidence or market-based reaction, or agency reports finding

10   the relevant type of agreement. *See id.* at 1194–98.

11       The Court first rejects Plaintiffs' argument that Defendants' behavior, i.e., wash trading

12   and churning, was "inherently conspiratorial." It may have been inherently wrongful under the

13   antitrust laws as to each individual Defendant, but only an actual agreement to do something

14   unlawful with another party is inherently conspiratorial. Defendant companies cannot have

15   individually "conspired" with themselves. Only an agreement between the companies

16   constitutes a conspiracy. But the evidence of wash trades *between Defendants*—which

17   Defendants do not appear to dispute—implies an antitrust conspiracy. That is more than isolated

18   parallel conduct. Plaintiffs correctly note that all that is required is a "conscious commitment to

19   a common scheme designed to achieve an unlawful objective." *Monsanto Co. v. Spray-Rite Serv.

20   Corp.*, 465 U.S. 752, 764 (1984). The concept of "wash trades" or "churning," i.e., artificial

21   price manipulation by a seller, is totally contrary to the goal of market competition. Unlike

22   parallel *lawful* activity, at best, the present case involved parallel *unlawful* activity. Parallel

23   unlawful activity strongly implies a "conscious commitment to a common scheme designed to

24   achieve an unlawful objective." *See id.* In such a case, each competitor benefits from both his

1  own and his competitors' anticompetitive behavior. Indeed, in wash trades between competitors,
2  they do so via a series of collusive trades. Plaintiffs have produced a summary diagram on page
3  61 of their opposition that neatly illustrates the "web of conspiracy" between Defendants based
4  on wash trades. The Court will not grant summary judgment for failure to adduce evidence of
5  any explicit agreement. It is virtually impossible that industry members such as Defendants did
6  not realize the anticompetitive effects of the wash trades they were engaging in with one another.

7  **F.    Motion No. 2748**

8  Defendants in the '233, '987, '1019, '915, and '1351 Cases move for summary judgment
9  based on lack of "antitrust standing," i.e., proximate cause under § 4 of the Clayton Act.
10 Movants argue that damages must be limited to those arising out of direct purchases of natural
11 gas from movants, not any purchases from third-party suppliers. The Court disagrees that the
12 doctrine of proximate cause under the Clayton Act is so stringent. The Supreme Court has ruled
13 that although the text of 15 U.S.C. § 15 could be read so broadly as to permit actions for
14 damages no matter how remotely connected to an antitrust violation, the purpose of the Clayton
15 Act was to protect consumers from paying excessive prices due to monopolistic behavior in
16 accordance with common law principles, and a court must therefore "evaluate the plaintiff's
17 harm, the alleged wrongdoing by the defendants, and the relationship between them" in light of
18 those principles, particularly the principle of "proximate cause." *Associated Gen. Contractors of*
19 *Cal., Inc. v. Cal. State Council of Carpenters ("AGC")*, 459 U.S. 519, 529–36 (1983).
20 Accordingly, there is no "black-letter rule that will dictate the result in every case," *id.* at 536;
21 rather, a court must bear in mind that "the Sherman Act was enacted to assure customers the
22 benefits of price competition, and our prior cases have emphasized the central interest in
23 protecting the economic freedom of participants in the relevant market," *id.* at 538.

In *AGC*, the plaintiff "was neither a consumer nor a competitor in the market in which trade was restrained," and it was "not clear whether the [plaintiff's] interests would be served or disserved by enhanced competition in the market." *Id.* at 539. Here, by contrast, it is indisputable that Plaintiffs were consumers in the market that Defendants allegedly manipulated, and that Plaintiffs' interests would have been better served by enhanced competition in that market, i.e., without Defendants' alleged manipulative practices that artificially increased prices.

Also, the "chain of causation" here is not attenuated, as it was in *AGC*. *Id.* at 540. There, a labor union claimed harm to its "vaguely defined . . . business activities" based on the defendant's coercion of landowners to divert business to nonunion contractors. *Id.* at 540–41. The loss of potential union dues due to contractors' disincentive to unionize (or employees' disincentive to join union shops) due to the coercion against the landowners was held to be too remote. *Id.* at 541 & n.46. Only the coerced landowners themselves potentially had any harm direct enough to implicate antitrust standing. *Id.* at 541. Here, by contrast, even if Plaintiffs did not purchase directly from Defendants—a genuinely disputed issue—they purchased natural gas at a price that had been inflated by Defendants' alleged anticompetitive practices. That kind of harm is not so attenuated so as to break the chain of proximate cause required under § 4. *See, e.g., Reiter v. Sonotone Corp.*, 442 U.S. 330, 342 (1979) ("The essence of the antitrust laws is to ensure fair price competition in an open market. Here, where petitioner alleges a wrongful deprivation of her money because the price of the hearing aid she bought was artificially inflated by reason of respondents' anticompetitive conduct, she has alleged an injury . . . under § 4 [of the Clayton Act]."). The Court denies the motion.

### G. Motions Nos. 2761 and 2762

All remaining Defendants in the '987 and '233 Cases have moved for summary judgment under the respective statutes of limitations. Defendants argue Plaintiffs brought their claims

1 more than four and three years, respectively, after the alleged misconduct. *See* Mo. Rev. Stat.

2 § 416.131(2); Kan. Stat. § 60-512(2). Defendants note that the original complaint in the '987

3 Case was filed on March 22, 2007, but that Plaintiffs have never alleged that the injury occurred

4 any later than October 2002, and they currently allege the latest date of injury as February 2002.

5 Absent equitable tolling, therefore, the claims are time-barred under Missouri law. Defendants

6 note that the original complaint in the '233 Case was filed on September 26, 2005, but that

7 Plaintiffs allege the latest date of injury as February 2002. Absent equitable tolling, therefore,

8 the claims are time-barred under Kansas law.

9 Because the statute of limitations is an affirmative defense, Defendants have the burden

10 of proving it, so in the context of summary judgment they must produce evidence that would

11 entitle them to a directed verdict if unrebutted at trial. They adduce approximately 100 pre-

12 March 22, 2003 and pre-September 26, 2002 newspaper articles, press releases, and other

13 publicly available materials indicating the controversy over manipulative, Enron-style "wash

14 trading" and other practices, including a Federal Energy Regulatory Commission ("FERC")

15 order from February 2002 indicating the opening of an investigation into the manipulation of

16 electricity and natural gas prices by Enron or any other company. The other newspaper articles

17 indicate that many other companies, including many of the Defendants in this case, were being

18 investigated by the SEC for this kind of behavior.

19 Plaintiffs respond that they filed their respective lawsuits within four and three years of

20 when the offending conduct could have been reasonably discovered, because FERC's report

21 concerning the alleged antitrust violations was not published until March 26, 2003. The Court

22 finds that Plaintiffs have satisfied their shifted burden (even assuming the burden has shifted to

23 them) to create a genuine issue of material fact as to when they should reasonably have known of

24 the underlying conduct in this case. The March 26, 2003 FERC report was the first indication

that Defendants had in fact conspired to make false reports of trades to manipulate prices. Moreover, Defendants had withheld information and given misleading responses during the investigation to hide their activities, in some cases being fined for it by FERC. Prior to that, Plaintiffs might have only been guessing based on newspaper articles. A reasonable jury could decide the issue in Plaintiffs' favor, and the Court therefore denies the motions.

## IV.     MOTION FOR HEARING AND MOTION TO SEVER

Reliant Energy, Inc. and Reliant Energy Services, Inc. (collectively, "Debtors") have filed a notice of bankruptcy. Debtors are Defendants in four of the remaining eight cases (Nos. 2:06-cv-233, 2:07-cv-987, 2:07-cv-1019, and 2:09-cv-915). In each of those four cases, additional Defendants remain. Those remaining Defendants have asked the Court for a hearing to determine how those four cases should proceed. No separate hearing is necessary to resolve this issue. The automatic stay under 11 U.S.C. § 362 presumably prevents any continued litigation by or against Debtors until further action by the Bankruptcy Court, but it does not prevent continuing litigation by or against other Defendants. Nor is there any utility in formally severing the claims against Debtors.

///

///

///

///

///

///

///

///

///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motions to File Supplemental Briefs (ECF Nos. 2798, 2824, 2828) and the Motions to Strike (ECF Nos. 2710, 2818) are DENIED as moot.

IT IS FURTHER ORDERED that the Motion for Order Limiting Defendants' Seriatim Filing of Dispositive Motions (ECF No. 2689), the Motion to Defer State Specific Rulings and Remand Cases to Transferor Courts (ECF No. 2843), the Motions to Strike (ECF Nos. 2901, 2909), the Motion for Hearing (ECF No. 2921), and the Motion to Sever (ECF No. 2915) are DENIED.

IT IS FURTHER ORDERED that the Motions to File Surreply (ECF No. 2836, 2866, 2900), the Motion for Leave to File Excess Pages (ECF No. 2849), and the Motion to Extend Time and Exceed Page Limits (ECF No. 2879) are GRANTED.

IT IS FURTHER ORDERED that the Motions to Seal (ECF Nos. 2738, 2742, 2749, 2750, 2854, 2857, 2860, 2864, 2889) are GRANTED.

IT IS FURTHER ORDERED that the Motions to Reconsider (ECF Nos. 2839, 2840, 2841) are DENIED, and the Motion to Reconsider (ECF No. 2852) is GRANTED. The Order (ECF No. 2832) is AMENDED under Rule 60(a) to remove the final sentence of the first paragraph of Part III.B.

IT IS FURTHER ORDERED that the Motion for Summary Judgment (ECF No. 2740) is GRANTED.

IT IS FURTHER ORDERED that the Motion for Summary Judgment (ECF No. 2741) is GRANTED IN PART and DENIED IN PART. The motion is granted, except as to Williams Merchant Services Co., LLC; Dynegy Illinois, Inc.; DMT GP, LLC; Dynegy GP, Inc.; El Paso Corp.; Northern States Power Co.; and Xcel Energy Inc.

IT IS FURTHER ORDERED that the Motions for Summary Judgment (ECF Nos. 2744, 2746, 2748, 2754, 2761, 2762) are DENIED.

IT IS FURTHER ORDERED that the Motions for Summary Judgment (ECF Nos. 2745, 2764) are DENIED without prejudice.

IT IS FURTHER ORDERED that the parties shall file a joint status report within fourteen (14) days addressing: (1) the refiling, mootness, waiver, etc. of Motions Nos. 2745 and 2764; and (2) any matters (apart from motions to reconsider anything in the present order) that remain to be addressed in this Court before remand to the transferor courts.

IT IS SO ORDERED.

Dated this 2~~2nd~~ day of ~~July~~ *August*, 2017.

_____
ROBERT C. JONES
United States District Judge